**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| GARY WASHINGTON, | Case No. 1:19-cv-02473-GLR |
| Plaintiff | |
| v. | Judge Stephanie Gallagher |
| BALTIMORE POLICE DEPARTMENT, *et al.,* | **JURY TRIAL DEMANDED** |
| Defendants | |

# EXHBIT C

```
 1                   UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                        SOUTHERN DIVISION

 3    GARRETH PARKS,                   Civil No.  TDC-18-03092

 4            Plaintiff,

 5         v.                          Greenbelt, Maryland

 6    BALTIMORE POLICE DEPARTMENT,  September 6, 2019
      et al.,
 7
                      Defendants.       9:30 a.m.
 8    -------------------------/

 9                   TRANSCRIPT OF MOTIONS HEARING
                BEFORE THE HONORABLE THEODORE D. CHUANG
10                   UNITED STATES DISTRICT JUDGE

11    APPEARANCES:

12    For the Plaintiff:      Loevy & Loevy
                              By: GAYLE HORN, ESQUIRE
13                                RENEE SPENCE, ESQUIRE
                                  KATHERINE ROCHE, ESQUIRE
14                            311 N Aberdeen
                              Third Floor
15                            Chicago, Illinois 60607

16    For the Defendants:     Baker Donelson
                              By: CHRISTOPHER DAHL, ESQUIRE
17                                NEIL DUKE, ESQUIRE
                              100 Light Street, NW
18                            Baltimore, Maryland 21202

19                            Baltimore City Law Department
                              By:  KARA LYNCH, ESQUIRE
20                                 ALEXA ACKERMAN, ESQUIRE
                                   NATALIE AMATO, ESQUIRE
21                                 JUSTIN CONROY, ESQUIRE
                              100 N. Holliday Street, Suite 101
22                            Baltimore, Maryland 21202

23                            Nathan & Kamionski LLP
                              By: SCHNEUR NATHAN, ESQUIRE
24                            33 W. Monroe
                              Suite 1830
25                            Chicago, IL  60603
```

1

1

2       Court Reporter              Lisa K. Bankins RMR FCRR RDR
                                    United States District Court
                                    6500 Cherrywood Lane
3                                   Greenbelt, Maryland 20770

4

5       Proceedings recorded by mechanical stenography,
        transcript produced by notereading.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2            THE CLERK:  The matter now pending before this
 3     Court is Civil Number TDC-18-3092, Parks versus Baltimore
 4     Police Department, et al.  We're here today for a motions
 5     hearing.  Counsel, please identify yourself for the
 6     record.
 7            MS. HORN:  Your Honor, Gayle Horn, H-O-R-N, on
 8     behalf of the plaintiff, Mr. Parks.
 9            THE COURT:  Good morning.
10            MS. SPENCE:  Good morning.  Renee Spence on
11     behalf of the plaintiff, Mr. Parks.
12            MS. ROCHE:  Good morning, Your Honor.  Katie
13     Roche on behalf of the plaintiff, Garreth Parks.
14            THE COURT:  Good morning.
15            MR. DAHL:  Good morning, Your Honor.
16     Christopher Dahl, Baker Donelson.  I am joined by Neil
17     Duke, who is seated behind me.  Together, we represent 16
18     of the individual defendants, Blane Vucci, Gordon Carew,
19     Joseph Mueller, Kimberly Parks, Todd Tugya, Paul Dean --
20            (The court reporter asked Mr. Dahl to slow
21     down.)
22            MR. DAHL:  Sure.  Blane Vucci, Gordon Carew --
23            THE COURT:  Can I just ask that counsel stand
24     when they address the Court, please?
25            MR. DAHL:  Sure.  Blane Vucci, Gordon Carew,
```

1   Joseph Mueller, Kimberly Parks, Todd Tugya, Paul Dean,

2   Jennifer Grant, personal representative of the estate of

3   Barry Grant, Joseph Jefferson, Brian Horton, Tom Pfeiler,

4   Brian Ford, Kevin Buie, John Riddick, Joseph Phelps, Ray

5   Laslett and Donald Watson.

6           THE COURT:  Okay.  Good morning.  And the other

7   counsel -- just for the record, do I have all the names of

8   counsel on the record or not?

9           MS. LYNCH:  I believe so, Your Honor.  I'm Kara

10  Lynch on behalf of the Baltimore Police Department.

11          THE COURT:  Okay.

12          MR. NATHAN:  My name is Shneur Nathan.  I

13  represent the same individual defendants that Mr. Dahl

14  mentioned and also the estate of Mr. Hagee.

15          THE COURT:  Okay.  So we're here for a motion --

16  a hearing on the motion to dismiss -- motions to dismiss.

17  I think there's a number of issues here.  We do have

18  arguments on behalf of the individual defendants.  We also

19  have the argument by the department.

20          I also have this letter regarding another

21  proposed motion and we may be able to discuss this at the

22  end of the hearing.  But given how far we have moved

23  through the issues -- at least I have moved through the

24  issues on the motion, I plan to address these issues

25  separately.  I think there's no reason why we couldn't

1   even rule on the motions that are pending without

2   prejudicing any argument that might be made in this

3   separate letter.  So we'll take these things one at a

4   time.

5           We'll start with the motions.  I have some

6   questions for the parties.  But I know that you may have

7   other things you want to offer.  So I'll ask the moving

8   parties, in this case the defendants to go first, give the

9   plaintiffs roughly equal time and then some very brief

10  opportunity for rebuttal.

11          I would ask since there is multiple issues that

12  when I say equal time, that collectively all the issues

13  for the defendants collectively would be both sides would

14  have equal time.

15          And so notionally, I am thinking about 20

16  minutes a side.  Don't know how you want to divide that or

17  if you want to divide that.  If I go over because I have

18  additional questions, then obviously, I'll try to give the

19  other side equal time as well.  So who would like to go

20  first?

21          MR. DAHL:  Your Honor, for the record,

22  Christopher Dahl.  I'll go first for the moving individual

23  defendants.

24          THE COURT:  Okay.  And so I take it then that

25  you're prepared to talk about the issues in that motion.

1    But if I have questions about the Monell claim or this

2    issue about the Eleventh Amendment, I should save that for

3    who?

4             MS. LYNCH:  Kara Lynch, Your Honor --

5             THE COURT:  Okay.

6             MS. LYNCH:  -- from the Baltimore Police

7    Department.

8             THE COURT:  Okay.  Great.  So go ahead, Mr.

9    Dahl.

10            MR. DAHL:  Thank you, Your Honor.  As I stated

11   earlier, I represent 16 of the current retired and in one

12   case, deceased officer of the Baltimore Police Department,

13   who are among those collectively referred to as the

14   individual defendants in the complaint.

15            This action as the Court is aware arises from a

16   homicide and nonfatal shooting on July 16, 1999 for which

17   the plaintiff was convicted.  Sixteen years later, he was

18   granted a new trial and eventually, the charges were

19   dismissed and subsequently, the plaintiff has brought suit

20   against apparently every officer known to be at the scene

21   or otherwise involved in the investigation and has done so

22   on three theories.

23            The first and primary theory is the existence or

24   the discovery of the so-called Mueller report, which is a

25   document that we have attached as part of the Plaintiff's

1   Petition for Writ of Actual Innocence at ECF 51-2,

2   specifically page 27, secondly, a two-sentence allegation

3   that one or more of the officers buried the gun or guns

4   used in the crime and third, a collective allegation of

5   witness intimidation of the several witnesses identifying

6   Mr. Parks as the shooter in this crime.

7          We need to dismiss for several reasons, but the

8   principal one which I'll move to first is judicial

9   estoppel as to the Mueller report and failure to plead

10   with the requisite level of plausibility as to the balance

11   of the plaintiff's claims.

12          THE COURT:  So on judicial estoppel, one of the

13   requirements is bad faith.

14          MR. DAHL:  Yes, Your Honor.

15          THE COURT:  And, first off, what in the

16   complaint indicates there's bad faith and/or how is that

17   established at the motion to dismiss stage?

18          MR. DAHL:  It's established at a motion to

19   dismiss stage through the use of judicial notice of the

20   Mueller report and of the plaintiff's characterization of

21   the Mueller report in the Plaintiff's Petition For Writ of

22   Actual Innocence before the Circuit Court for Baltimore

23   City.  It is a material difference in the world of Brady,

24   particularly, the world of Section 1983 Brady-based claims

25   who withheld the document.  If the document is withheld by

1  a police officer, then the police officer is personally

2  liable for any incarceration under a theory of malicious

3  prosecution.  If it's withheld instead by the prosecutor,

4  well, then the prosecutor had it, the police officer's job

5  is done.  And that was -- been recently set forth by the

6  Fourth Circuit in the Owens case.  And at the time of this

7  crime notably had been recently set forth as a matter of

8  absolute immunity by the Fourth Circuit in Jean v.

9  Collins.  That was subsequently vacated and then

10  reinstated as a softer concurrence.  But that was the law

11  at the time and it remains the law today.

12         The plaintiff was quite clear when he was the

13  criminal defendant seeking release that the Mueller report

14  assuming authenticity says what it means.  There's a note

15  at the bottom reading "per Ms. Costley, this report is not

16  to be released; please contact State's Attorney at

17  410-545-6433."  And the plaintiff went above and beyond in

18  order to paint Ms. Costley as a --

19         THE COURT:  Well, factually speaking, if it had

20  been the officers or if the officers had been colluding or

21  involved in this alleged withholding, wouldn't that also

22  have provided a basis for the conviction to be vacated?

23         MR. DAHL:  Collusion would not under these

24  circumstances, Your Honor.  I would disagree respectfully

25  for two reasons.

1          First and foremost, it's not what the plaintiff

2    pleaded.  The plaintiff did not plead a collusion case

3    where the prosecutor was in on it and the police officers

4    participated in that.  But secondly, under the more recent

5    opinion of Evans v. Chalmers, the Fourth Circuit has made

6    it very clear that the independent acts of a prosecutor,

7    even if the police were in on that act, act to cut off

8    liability under Section 1983 is a matter of but for and

9    proximate causation.  Quite plainly, unless it has been

10   pleaded, which it has not, that the officers misled the

11   prosecutor or unduly pressured the prosecutor, the actions

12   of the prosecutor from which the plaintiff is judicially

13   estopped from pleading the contrary --

14          THE COURT:  I guess the question I have is if

15   the argument on the petition, the innocence petition had

16   centered around the officers, wasn't there still a viable

17   way to convince the Court to vacate the conviction?  This

18   isn't a situation where having officers who are

19   withholding a report or is somehow engaged in improper

20   conduct would have been entirely detrimental to his claim,

21   would it?  I mean if there are officers who are bearing

22   these reports as you said, isn't there still a path to get

23   your conviction vacated?

24          I guess I'm asking whether it really is that the

25   plaintiff was acting in bad faith when whoever was

1    potentially at fault for this, he still had an argument to

2    make.

3            MR. DAHL:  Your Honor, to be quite clear, it's

4    not necessarily our position that the plaintiff was acting

5    in bad faith before the Circuit Court for Baltimore City.

6    Our position --

7            THE COURT:  Isn't that what you need for

8    judicial estoppel?

9            MR. DAHL:  It is not.  The plaintiff is acting

10   in bad faith today by pleading contrarily to his positions

11   taken in the circuit court case.  And my authority for

12   that is Lowery v. Stovall.  That's what the Fourth Circuit

13   found in its central case.  Not that the plaintiff had

14   misled the circuit court by pleading guilty to a crime.

15   But the plaintiff had misled the U.S. District Court and

16   later, the Fourth Circuit by attempting to argue and plead

17   contrary to the position that he had taken in the

18   underlying matter and essentially prevailed on.

19           We have that case.  We in fact have a stronger

20   case than Lowery v. Stovall on judicial estoppel in that

21   way because this is not a case where -- like Lowery v.

22   Stovall, this is an adopted set of state of facts.  These

23   are the facts that the plaintiff took, put before the

24   Circuit Court for Baltimore City, argued painstakingly

25   over dozens of pages that this was a notoriously corrupt

1     prosecutor who suborned perjury by allowing witnesses to

2     testify that Burgess was not the shooter.  That's a

3     serious statement.  That means that the prosecutor had

4     this document in advance.  Factually is that true?  Don't

5     know.  It doesn't matter for judicial estoppel --

6               THE COURT:  Okay.  Let's move on to the statute

7     of limitations thing because we have limited time.

8               MR. DAHL:  That's fine.

9               THE COURT:  So is it your argument then that

10    there are -- why isn't this covered more by a situation of

11    Heck in which we need to wait until we actually know that

12    these convictions are vacated and that there's no

13    potential prosecution coming forward in terms of how I

14    find the date on which the clock begins to run?

15              MR. DAHL:  Absolutely.  Well, for statute of

16    limitations to be clear, there is only one federal count,

17    a federal count to which Heck would apply and which we

18    have moved in our papers.  That's Count Three for unlawful

19    detention.  And that is covered by Wallace v. Kato.  Okay.

20    The statute of limitations --

21              THE COURT:  So you're not arguing -- well, maybe

22    it's the City, I'm not sure or the department.  But you

23    are not arguing for a statute of limitations or dismissal

24    based on statute of limitations except on Count Three?

25              MR. DAHL:  We have not so moved, Your Honor.

```
 1              THE COURT:  Okay.

 2              MR. DAHL:  We didn't move on Count One or Count

 3    Two.  Those are malicious prosecution based counts.  And

 4    as this Court is likely aware, this summer in McDonough v.

 5    Smith, United States Supreme Court held that a

 6    fabrication-based claim sounding essentially in malicious

 7    prosecution accrues at the date of the nol pros.

 8              THE COURT:  Okay.

 9              MR. DAHL:  We had expected that to be the case.

10    We highlighted that the case was on cert.  It didn't come

11    down our way.  Such is life.

12              THE COURT:  Okay.

13              MR. DAHL:  But no.  We are --

14              THE COURT:  Well, Count Three is a false arrest

15    effectively argument.

16              MR. DAHL:  It is.

17              THE COURT:  So you are trying to date that from

18    the date of the arrest.

19              MR. DAHL:  We are trying to date that from the

20    date that the arrest became subject to legal process,

21    which under Wallace v. Kato, which is the date of the

22    arraignment.  But even stretching it out, if we were to

23    apply the more liberal rule, supply the false arrest

24    claims under Maryland law for whatever reason --

25              THE COURT:  Um-hum.
```

1          MR. DAHL:  -- that would stretch out to the date

2     of the release which is March 23, 2015.  So says the

3     court's docket and that date is also recited in the

4     plaintiff's LGTCA notice which is attached as Exhibit C to

5     our motion to dismiss.

6          THE COURT:  Okay.

7          MR. DAHL:  So it's the matter of two different

8     seizures.  There's the seizure that occurred at the scene.

9     That's the false arrest claim.

10         THE COURT:  Count Three.

11         MR. DAHL:  Count Three.  And that may not even

12    be frankly subject to the Heck bar.  The Wallace v. Kato

13    case says if it's subject to the Heck bar, if a challenge

14    on that, incarceration would attack the validity of the

15    eventual conviction.  It's conditional.  It's entirely

16    possible he could have brought that claim before his

17    conviction.  It's entirely possible he could have brought

18    his claim after his conviction.  He can't bring it now.

19    It became time barred on March 23rd, 2018.  It is too

20    late.  And that's a very short -- it's a claim that

21    relates to a very short --

22         THE COURT:  So I understand that.  But are you

23    arguing for a statute of limitations on any other counts

24    such as Counts Four and Nine or no longer are you pursuing

25    those?

1          MR. DAHL:  Count Four.  Yes.  I'm sorry.  We

2     have argued for Count Four.  Count Nine is a state law

3     claim which would not be a Heck bar situation.  We argued

4     on Count Four because there is no case law in this state

5     and the plaintiff has cited no case law in any other

6     jurisdiction stating that a failure to intervene claim

7     gets the same rule of deferred accrual as a malicious

8     prosecution claim.

9          We have cited reported authority from the

10    Northern District of New York.  In response, the plaintiff

11    has cited no case.  We think that the Northern District of

12    New York is right on the issue.  The statute of

13    limitations are always a balancing test.  That's

14    elucidated in or the application arises from a balancing

15    test as a matter of public policy.  That is elucidated in

16    the Wallace v. Kato case.  That there are interests in

17    getting -- having claims brought promptly.  And someone

18    who is accused of failure to intervene for having been at

19    the scene is differently positioned, particularly on a

20    30-year-old claim, from someone who is intimately involved

21    or alleged to have been intimately involved in the actual

22    investigation and malicious prosecution.

23          THE COURT:  So isn't a failure to intervene

24    comparable to accomplice liability?

25          MR. DAHL:  It is a matter of bystander liability

1   and I would not -- I would be loathed to borrow from the

2   criminal law on the accrual of statute of limitations.

3   The --

4           THE COURT:  And why should it be a different

5   rule?

6           MR. DAHL:  It should be a different rule --

7           THE COURT:  Other than just the general

8   principle you want to get these things over with.  But

9   again if you are accepting a malicious prosecution goes

10  out to a certain date, why wouldn't it be the same rule?

11          MR. DAHL:  It wouldn't be the same rule for the

12  same policy reasons that say that unlawful detention under

13  a Wallace v. Kato claim doesn't go out to the --

14          THE COURT:  If I'm not mistaken, the failure to

15  intervene is not necessarily about the arrest.  It's about

16  this whole episode.  Correct?

17          MR. DAHL:  It's not incredibly clearly pleaded

18  what it's about.

19          THE COURT:  Fair point.

20          MR. DAHL:  So we are granting the plaintiff

21  every possible interpretation.

22          THE COURT:  Isn't that what I'm supposed to do

23  on a motion to dismiss?

24          MR. DAHL:  And that's what we're doing in

25  response in so moving to dismiss.

```
 1                THE COURT:  Okay.  Okay.  Now just to make sure

 2      there's enough time for the -- for Baltimore City, I'm

 3      trying to see what other issues we have.

 4                There are -- on your LGTC -- are you -- let me

 5      just make sure about this.  Who is arguing the LGTCA?  Is

 6      that you?

 7                MR. DAHL:  That is me.

 8                THE COURT:  Okay.  So I guess I'm trying to

 9      understand the argument here.  Is it that they moved too

10      early or they gave notice too early in some fashion or is

11      it that the notice was insufficient in some way or both?

12                MR. DAHL:  Well, it's either depending on which

13      count it relates to.  Our argument is that it came too

14      early as to one of the counts.  That being the count for

15      state law and malicious prosecution.  State law and

16      malicious prosecution had not yet accrued at the time that

17      the notice was sent because it doesn't accrue until the

18      date of the nol pros, until the date of the dismissal.

19      This predated it.  It was never renewed.

20                But as to both malicious prosecution and all of

21      the other state law counts, there's no allegation, no

22      reasonably specific allegation that could reasonably

23      contemplate time, place and cause under CJP 5-304 against

24      any of the officers to whom I represent.  The only officer

25      who is named in the LGTCA notice is Joseph Mueller and all
```

1    that's said about Joseph Mueller is that he gave false

2    testimony.  Well, false testimony is not the subject of a

3    1983 claim.  He's immune for that.  Briscoe v. LaHue.  So

4    a municipality receiving this document would look at that

5    and so conclude.

6           And the municipality would also look and see

7    that there were some allegations about documents being

8    withheld, information being withheld.  It doesn't say by

9    whom.  It just says -- makes reference to a petition for

10   writ of actual innocence.  So I mean is the municipality

11   looking at that?  And I can't speak for what the

12   municipality actually did.  I don't represent them.  But

13   would have walked down Fayette Street, taken a right up

14   Calvert Street, gone to the courthouse, pulled a petition

15   and read a very compelling story about how a crooked

16   prosecutor withheld a document and reasonably concluded

17   that the officers had done nothing wrong.

18          The municipality was not on notice of these

19   claims.  The officers were not on notice of these claims

20   until they were sued and it's too late and that applies to

21   all of the state law claims.

22          THE COURT:  Okay.  So I think we have

23   approximately six minutes left for the City.  Should we go

24   to them?

25          MR. DAHL:  I will yield and rest on my papers as

1    to the balance of the arguments, Your Honor.

2          THE COURT:  Thank you.  So, Ms. Lynch, one thing

3    I wanted to ask at the outset is are you or are you not

4    pursuing this Eleventh Amendment theory?  You didn't raise

5    it in your opening brief.  I think that to some degree is

6    grounds even to just reject the argument outright.  But it

7    was responded to in the surreply.  So I think I have at

8    least heard from both sides on that issue.  Are you

9    pursuing that or not?

10         MS. LYNCH:  We certainly are pursuing that, Your

11   Honor.  Eleventh Amendment immunity is jurisdictional.  It

12   is subject matter jurisdiction --

13         THE COURT:  Under what case?

14         MS. LYNCH:  Under Cunningham versus General

15   Dynamics, 888 F.3d 640 and that's a 2018 Fourth Circuit

16   case wherein the Fourth Circuit stated that sovereign

17   immunity is a jurisdictional bar to suit.

18         THE COURT:  Sovereign immunity or Eleventh

19   Amendment immunity?

20         MS. LYNCH:  Eleventh Amendment immunity.  But

21   they use the term sovereign immunity.

22         THE COURT:  Was it an Eleventh Amendment case?

23         MS. LYNCH:  Yes.  I believe so.

24         THE COURT:  Okay.

25         MS. LYNCH:  It was actually --

1          THE COURT:  What was it again?

2          MS. LYNCH:  888 F.3d 640.

3          THE COURT:  So I guess what I'm wondering is I

4    know you've cited one of the cases from Judge Hollander

5    from this year.  But that appears to be in my view an

6    outlier, particularly since it did not go through the type

7    of analysis that the Fourth Circuit has asked for.  It

8    basically assumed because a case -- an entity is a state

9    agency for purposes of state sovereign immunity that it is

10   for the Eleventh Amendment and that's not been the test

11   historically.  So what am I missing?

12         MS. LYNCH:  I don't think outlier is necessarily

13   a fair characterization.  Judge Hollander issued two

14   decisions both in March of 2019 stating that BPD is a

15   state agency since 1867 and is, therefore, not subject to

16   Monell liability --

17         THE COURT:  That's one of the four-part tests

18   that it -- the State views it as a state agency and I

19   don't think anybody disputes that that's true.  But what

20   about the other elements of the test?

21         MS. LYNCH:  As to the other elements of the

22   test, admittedly there was a practice in the federal

23   district courts based on Chief Judge Kaufman's opinions in

24   the 1980's that the City and/or the BPD could be sued

25   under 1983 because the BPD and the City were viewed as

1    being two connected.

2            Since the time of those decisions, there has

3    been a shift in the law and I don't mean exclusively the

4    Hollander cases, although there was another Judge Russell

5    case, Garner v. Hope, which is cited in our pleadings and

6    there was another reported decision from I believe Judge

7    Williams of this court which was Dixon versus Baltimore

8    Police Department and that's 345 F.Supp. 2D 512.

9            But since Judge Kaufman's decisions, the law

10   changed in that in 2002, the Supreme Court in Federal

11   Maritime versus South Carolina State Ports Authority,

12   that's 535 U.S. 743 said that the central purpose of

13   sovereign immunity of Eleventh Amendment immunity is not

14   to protect the state's purse, but is to protect the

15   dignity of the sovereign.

16           Reading the Supreme Court precedent, the Fourth

17   Circuit in 2012 and then again in 2015 in the Oberg line

18   of cases found that given the Supreme Court's statement,

19   the impact on the state treasury is no longer dispositive,

20   not only is it no longer dispositive, but it must be given

21   equal weight with the other factors.

22           And as to those other factors, Your Honor, the

23   court in Strohman v. Anderson, which is cited in our

24   papers, found that this perceived connection between the

25   City and the BPD did not exist and in fact Judge Russell

1   said that there's mountains of law, decades of facts and

2   statutes which show that that connection simply is not

3   there.  As to the --

4          THE COURT:  But the State is actually running

5   and operating this police department?  It's one thing to

6   say that they are -- have independence from the City, but

7   it's another thing to say that they are basically being

8   operated by the State.

9          MS. LYNCH:  Absolutely, they are, Your Honor.

10  The public local laws actually are laws passed by the

11  general assembly.  They are passed by the State.  The

12  State under those laws vested the commissioner with powers

13  just as the State would with any other state agency had.

14  It's indisputable that the commissioner is ahead of the

15  state agency.  The police department was --

16         THE COURT:  Can I just ask generally?  I mean

17  you're saying the law changed in 2002 because of a Supreme

18  Court case which sounds somewhat unconnected to me.  If

19  the law changed 17 years ago, why was this argument not

20  even in your opening brief?

21         MS. LYNCH:  Your Honor, we have --

22         THE COURT:  This department, it's not as if it

23  never gets sued.

24         MS. LYNCH:  We would have never fully abandoned

25  this argument.  It has always been --

1          THE COURT:  But what triggered it?  Just tell

2     me.  Is it the Hollander case?  What made you bring this

3     up -- dredge this up when, you know, in 17 years you

4     didn't -- maybe you did assert it.  I don't know, but you

5     certainly didn't get any ruling saying, you know, from a

6     controlling authority that you have immunity here.

7          And again I find some of these other cases such

8     as the Hollander case as completely not -- basically

9     relying on the conclusion that because it's a state

10    agency, that Eleventh Amendment immunity applies, which I

11    just don't agree with.  So again why bring this up now?

12         MS. LYNCH:  Well, to be candid, the Hollander

13    cases did lead us to reexamine this issue.  But it has --

14         THE COURT:  So why should it be decided now when

15    you basically didn't raise it in your opening brief?  I'm

16    not sure why -- again I don't agree that this is

17    jurisdictional, although I'll look at your case again.

18    But generally Eleventh Amendment is not the same thing.

19    And so why should we even entertain this eleventh-hour

20    argument?

21         MS. LYNCH:  Well, if it's Eleventh Amendment

22    immunity, I do believe that it is jurisdictional.  It's

23    subject matter jurisdiction and it can be raised at any

24    time.

25         THE COURT:  Let me look at this case now.  What

```
 1    is it again?  888 F.3rd --
 2              MS. LYNCH:  888 F.3rd 640.
 3              THE COURT:  What page are you looking at?
 4              MS. LYNCH:  The pin cite I believe is 649 and --
 5              THE COURT:  I'm still trying to understand how
 6    this is Eleventh Amendment and not some other form of
 7    sovereign immunity.  Help me out.
 8              MS. LYNCH:  Well --
 9              THE COURT:  This is under the Telephone Consumer
10    Protection Act.  It's a federal sovereign immunity
11    argument I believe.  It doesn't seem to have anything to
12    do with the Eleventh Amendment.  But I'm just looking at
13    it now for the first time.  So point me to the part where
14    this is about the Eleventh Amendment.
15              MS. LYNCH:  I think the analysis is analogous I
16    guess for sovereign immunity purposes.  It has a
17    coincidence of scope.  And candidly, I don't have that
18    case in front of me, Your Honor.  But what I do have in
19    front of me is a --
20              THE COURT:  This is your whole argument is
21    subject matter jurisdiction.  I can decide it at any time.
22    I must decide it at any time.  And you don't even have the
23    case in front of you.
24              MS. LYNCH:  I apologize.
25              THE COURT:  Where it seems to me like it's being
```

1    mis-cited.

2          MS. LYNCH:  Well, I do have another case in

3    front of me, which is Van Story versus Washington County

4    Health Department and that was just decided on July 25,

5    2019 and I only have the --

6          THE COURT:  Okay.  Give me that cite.

7          MS. LYNCH:  I have the Westlaw citation for

8    this.

9          THE COURT:  So it's an unpublished case or it's

10   a brand new case?

11         MS. LYNCH:  I think it is -- it's a brand new

12   case.  There's nothing on here that indicates that it has

13   been selected for publication or that it has not been

14   selected.

15         THE COURT:  Okay.  Give me the citation then.

16         MS. LYNCH:  It's 2019 WL-3340656.  And if I

17   could direct the Court's attention to page 3 of that

18   opinion?  Directly above the Subpart 2 that says Rule

19   12(b)(6), there is a paragraph which explains the -- this

20   is an Eleventh Amendment immunity case and there's a

21   paragraph that explains the Fourth Circuit's reiteration

22   that defense of sovereign immunity is a jurisdictional

23   bar.

24         THE COURT:  I'm still not seeing where it

25   references the Eleventh Amendment.

1          MS. LYNCH:  In the Van Story case?

2          THE COURT:  Yes.

3          MS. LYNCH:  The Van Story case is an Eleventh

4    Amendment immunity case.  Let me see if I can -- on page 7

5    of the opinion under subsection, Sovereign Immunity and

6    then the second paragraph, the court begins the Eleventh

7    Amendment analysis.  Under the Eleventh Amendment states

8    generally enjoy immunity from suits brought in federal

9    court by their own citizens and continues from there.

10          Certainly, Your Honor, if the Court would find

11   post-argument briefing helpful, that's something that we

12   would be more than willing to provide.

13          THE COURT:  So anyways, your best case on all of

14   this is Van Story on the subject matter jurisdiction

15   question.  But then on the merits of your argument about

16   the Eleventh Amendment is what?

17          MS. LYNCH:  Our argument about the Eleventh

18   Amendment is -- excuse me -- well, as far as the four

19   factors that the Court is required to consider, the state

20   treasury being one of them, but not being the predominant

21   factor, whether the agency exercises autonomy, whether

22   there are state or local concerns and the classification

23   pursuant to state law, I think that the classification

24   pursuant to state law is, you know, sort of a slam dunk

25   for us.  I don't think that's contested.

1          We do admit that at this point in time that
2     judgments are paid from the City.  So that admittedly is
3     not all the way in our favor at this time.  As to the --
4          THE COURT:  Or at all in your favor?
5          MS. LYNCH:  It's not in our favor at this time,
6     Your Honor.
7          As to the second and third arguments, the state
8     versus local concerns, in the Owens case, which the Fourth
9     Circuit decided in 2014, which is cited in the briefs, the
10    court there didn't pass upon it, but it did recognize that
11    the district court found that the State's Attorney, the
12    Office of the State's Attorney had Eleventh Amendment
13    immunity and they are a similar agency to the Baltimore
14    Police Department in prosecuting laws that occur in the
15    state -- I'm sorry -- prosecuting state laws in Baltimore
16    City.  The public local laws again are enacted by the
17    general assembly and install the commissioner as the head.
18    He has the authority to --
19         THE COURT:  I guess I'm not quite sure I'm
20    understanding that argument.  Doesn't every police
21    department in the state enforce state laws?
22         MS. LYNCH:  Yes.
23         THE COURT:  Prince George's County which is
24    where we are sitting right now --
25         MS. LYNCH:  The.

```
1            THE COURT:  Unfortunately, for whatever reason,

2    the U.S. Attorney here brings a lot of cases started by

3    the Prince George's County Police Department.  So we're

4    very familiar with them.  And I'm pretty confident that

5    most of the laws they are enforcing are state laws.

6            So again I don't -- but they are clearly subject

7    to Monell.  So I guess I'm trying to understand why the

8    fact that they are enforcing state laws makes their

9    matters a statewide purview for the department --

10           MS. LYNCH:  Well, it's just a factor of the

11   analysis, Your Honor.  There is also the fact that

12   Baltimore is a large city where people come to work who

13   are not Baltimore citizens.  They use Baltimore City

14   services.  We have Oriole Park, concerts and events at

15   First Mariner Arena that draw --

16           THE COURT:  Why don't we move on to a different

17   issue?  So I think I can figure out the Eleventh Amendment

18   issue from what I've heard.

19           What about the Monell argument?  Tell me what

20   your position is there.

21           MS. LYNCH:  The plaintiff's Monell claim fails

22   as a matter of law and I want to emphasize at the outset

23   because I think with all the complexities and minutia of

24   the case law, it's obvious but it can be sometimes easy to

25   lose sight of the fact that in order to properly plead a
```

1    Monell claim, there must be facts in the complaint that

2    make it plausible, not just possible, but plausible that

3    the municipality through deliberate indifference caused

4    the constitutional violation.  And in order to do that,

5    plaintiffs have put forth several theories, one of which

6    is the failure to train theory.

7            And the Supreme Court in Connick v. Thompson

8    said that when a complaint rests on a failure to train

9    theory, a policy of inadequate training, it is at its most

10   tenuous.  In order to show this, the plaintiff must allege

11   facts that make it plausible and identify the nature of

12   the training, which they have not done.  The policymakers

13   which they have not identified had notice that the

14   omission caused the constitutional violation and made a

15   choice to retain that program in light of that knowledge

16   and that's also the Connick case at pages 61 and 62.  And

17   then of course, they have to put forth facts that if

18   proven would show that the training deficit caused the

19   constitutional violation.

20           And with respect to the nature of the training,

21   I'd refer the Court to page 12 of our motion and page 6 of

22   our reply in the McDougal and McDowell cases which were

23   decided fairly recently by Judge Hollander and Judge

24   Russell respectively and those cases cite other cases such

25   as Hall versus Fabrizio and the Peters case.

1          In those cases, the plaintiff claimed that there

2     was insufficient training in the areas of arrest without

3     or probable cause to arrest and improper searches.  And

4     the court held that that was bare bones absent any factual

5     material -- factual allegations about the type of training

6     that the officers actually received.  It's not enough.  In

7     Canton v. Harris, the Supreme Court said that a general

8     laxness of training or an allegation, you know, that more,

9     better, different training could have prevented the

10    constitutional violation is simply not enough.

11         With respect to the second element that must be

12    supported in the pleadings, the policymakers had notice

13    that the omission caused the violation of constitutional

14    rights.  That's missing as well.  First, there's no

15    factual material in the complaint to identify the

16    policymaker who actually was responsible for the training

17    program at issue.

18         There are five incidents that are in the

19    complaint which I'm sure the plaintiffs will mention.  All

20    of those incidents postdate the constitutional violation

21    in this case.  There's nothing in the complaint that shows

22    that in 1999, there would have been notice of a

23    constitutional violation that -- I'm sorry -- that some

24    deficit with the training was causing a constitutional

25    violation, let alone that in light of that knowledge, the

1    policymaker was deliberately indifferent to the fact that

2    this lack of training was violating people's

3    constitutional rights and just chose not to change it.

4         If anything, the Tabeling Report, which also

5    postdates which is referenced shows that --

6         THE COURT:  What time period does that report

7    cover though?

8         MS. LYNCH:  The Tabeling Report?  It does cover

9    prior to 2000.  But the report was not issued until 2000.

10   So it would not have been able to put the policymaker on

11   notice of anything.

12        With respect also to -- they identify -- the

13   type of training is just some sort of nebulous failure to

14   adequately train on Brady and failure to take training on

15   proper investigatory steps.  And with respect to that,

16   there has to be a connection as to how that training would

17   have caused an officer to do things like destroy or bury

18   guns, to coerce witnesses into making up a false narrative

19   and then burying a document that didn't agree with the

20   false narrative because those are the constitutional

21   violations at issue in this case.

22        And if the Court looks to Connick, again in that

23   case, the court -- the Supreme Court held that the State's

24   Attorney's Office couldn't have been on notice that there

25   was a failure to train on Brady because the cases that the

1    plaintiff relied on in the complaint, which were cases

2    that were years prior, not years subsequent as we have in

3    this case.  But they were a different type of Brady

4    violation.  So the court found that wasn't enough.

5              As to the condemnation theory of liability and a

6    lot of the arguments here overlap with the arguments for

7    failure to train as far as deliberate indifference goes

8    and how that has not been shown.  For condemnation, a

9    plaintiff must show the policymakers knew, in this case in

10   1999, that there was a practice so widespread and

11   persistent, so firmly entrenched and established that it

12   had the force of law, the force of law.  And that is

13   simply missing from this complaint.  Again all of the --

14             THE COURT:  So that's the condemnation theory.

15   What about just the widespread practice?  Is the standard

16   the same or different in terms of what the leadership

17   needed to know at that point in time?

18             MS. LYNCH:  Yes.  My understanding is that --

19   when I say condemnation, what I mean is the widespread

20   practice.

21             THE COURT:  I see.  Okay.

22             MS. LYNCH:  The widespread practice of which

23   there had to be notice, actual or constructive notice and

24   for which there had to be a failure to correct it, not as

25   a matter of negligence, not as a matter of gross

1    negligence, but as a matter of deliberate indifference.

2    And there has to be something in the complaint that shows

3    that, that that's plausible, not just possible, but

4    plausible.  And perhaps that's a high hurdle.  It is a

5    high hurdle.  The court has called it a high hurdle.

6              With respect to another theory, which is a

7    little bit ambiguous from the pleadings --

8              THE COURT:  Can I ask since we're short on time

9    here, I wanted to get this question in because it seemed

10   like Mr. Dahl was acknowledging at this point that the

11   malicious prosecution claims are not time barred.  I

12   believe my notes show that the City was also making that

13   argument.  Are you in agreement with Mr. Dahl or do you

14   have a different position on that?

15             MS. LYNCH:  Your Honor, since the Supreme Court

16   decided McDonough v. Smith, we would agree with Mr. Dahl

17   that we are no longer presenting that argument.  However,

18   we do join in Mr. Dahl's motion with respect to the

19   statute of limitation argument as to the remainder of the

20   counts.

21             THE COURT:  Right.  Three, Four and Nine I

22   think.

23             MS. LYNCH:  Yes.  Oh, in particular, Count

24   Three, which is the federal claim because the state law

25   claims and I don't believe this is contested aside from

1    indemnification, BPD has sovereign immunity for state law

2    claims under Cherkes v. Baltimore Police Department.

3              THE COURT:  Okay.

4              MS. LYNCH:  And I think that's not contested and

5    that's well established.

6              THE COURT:  You had one more issue you wanted to

7    raise and then I'd like to go to the plaintiffs.

8              MS. LYNCH:  With respect to indemnification,

9    that's a state law claim that the plaintiffs I think

10   believe that sovereign immunity does not apply to it, this

11   claim fails as a matter of law because the case law is

12   unequivocal that plaintiff doesn't have standing to bring

13   it at this time because the BPD does have sovereign

14   immunity.

15             The Court of Special Appeals was clear in

16   Johnson v. Francis.  That's cited in our brief, but it's

17   239 Maryland App. 530 in 2018.  That a plaintiff may not

18   pursue a municipality unless and until judgment is entered

19   against the employee and it is established that the

20   employee was acting within the scope of employment.  And

21   that's the case because of the Local Government Tort

22   Claims Act which waives Baltimore Police Department's

23   immunity only to the limited extent of the duties the

24   defendant indemnifies.  So until those preconditions are

25   met, that claim is premature.  BPD has sovereign immunity

1    and it must be dismissed.

2         THE COURT:  So you're asking us to sort of

3    dismiss it, but then potentially if those items are shown,

4    have us amend the complaint and later on, de-burden to the

5    case.  Is that what you are asking for?

6         MS. LYNCH:  No.  Not necessarily, Your Honor.

7    In the Johnson v. Francis complaint, for example, the

8    plaintiffs later brought an enforcement action.  So there

9    are other mechanisms through which the plaintiff can do

10   that rather than bringing it in their case in chief, which

11   they are not able to do because the Baltimore Police

12   Department has sovereign immunity and the pre-conditions

13   of the Local Government Tort Claims Act must be met.  The

14   Local Government Tort Claims Act does not authorize a

15   direct suit against a governmental entity.

16        THE COURT:  Okay.  Why don't we hear then from

17   Ms. Horn?

18        MS. HORN:  Thank you, Your Honor.

19        This case involves a 16-year old who was the

20   victim of a robbery who was later arrested and prosecuted

21   for a murder when all along, the defendants knew that the

22   real killer had confessed.  That information was withheld

23   from him throughout his criminal proceedings.  And as a

24   result, he was wrongfully convicted of a crime that he did

25   not commit and spent many years in prison for that crime.

1          I know we have limited time.  So I do want to

2    jump to some of the arguments that the defendants have

3    made to try to dismiss this case in its entirety and since

4    the individual defendants started with judicial estoppel,

5    I'll start there as well.

6          As this Court is aware, in order for a judicial

7    estoppel to apply, all three of the elements of judicial

8    estoppel have to be met.  It's a conjunctive test and

9    that's because judicial estoppel was meant to be applied

10   sparingly.  It was meant to be the exception rather than

11   the rule.  And I want to start with the elements --

12         THE COURT:  How do you interpret the -- how

13   things were handled on the petition -- at the petition

14   phase?  Mr. Dahl raises the point that the focus was on

15   the prosecutor and one can infer from that that now that

16   it's taking a contrary position now that the -- there is

17   basically intentional misleading of the Court.

18         So other than saying that they've changed

19   courses, you are -- I don't know if you were involved

20   before, but that the plaintiff has changed course along

21   the way for its own advantage, how else could I look at

22   that record if at all?

23         MS. HORN:  Yes, Your Honor.  I think that --

24   certainly, there was -- and we're not going to dispute the

25   writ of actual innocence says what it says.  The

1    statements in it say what they say.  But I think the thing

2    that's really important to keep in mind when you're

3    looking at this is that for purposes of the criminal case,

4    it didn't matter whether the prosecutor withheld the

5    document or whether the police withheld the document.

6    All --

7         THE COURT:  I'm not sure Mr. Dahl agreed with

8    that.  So why don't you tell me how -- if this had been

9    the officer, how the argument would have gone and why the

10   plaintiff would have prevailed anyways?

11        MS. HORN:  Because, Your Honor, the Brady

12   violation is a violation that's committed by the State and

13   Kyles versus Whitley says that information in the hands of

14   a law enforcement officer is imputed to the prosecutor.

15   They are one in the same for purposes of Brady.

16        It's only when you get into the civil litigation

17   universe and I think even Mr. Dahl acknowledged that, that

18   the spheres of liability matter.  It matters in the civil

19   context whether it was the police that withheld the

20   document -- and information in the document or whether it

21   was the prosecutor.

22        But in the post-conviction universe where

23   Mr. Parks had to prove that the document was newly

24   discovered, that it couldn't have been discovered sooner

25   without due diligence, all that mattered was that it was

1   withheld by the State and the State is -- under Kyles and

2   under well-established case law, the State is the police

3   and the prosecutor.

4          THE COURT:  But why focus so heavily on the

5   prosecutor?  Why not make some sort of broader argument or

6   argument in the alternative if your side honestly believes

7   that this could have just been the officers and not just

8   the prosecutor?

9          MS. HORN:  Your Honor, there were statements in

10  the petition or, sorry, the writ.  I keep calling it a

11  petition.  I apologize.  The writ that discussed the State

12  having withheld evidence and the State having not produced

13  documents or produce the Mueller report.

14         What Banks versus Dretke, a Supreme Court case

15  says is that Brady is a matter of prosecutorial

16  misconduct.  And in that case, you describe the Brady as a

17  matter of the prosecutor withholding the document because

18  even though the courts have imputed information in the

19  hands of the police officer to the prosecutor for purposes

20  of Brady, it's ultimately the prosecutor that has to turn

21  it over.  I mean Banks calls Brady Brady prosecutorial

22  misconduct.  Even though in the Banks case, the person who

23  withheld the document was in fact a police officer.

24         THE COURT:  So what part of your complaint lays

25  out the facts or tell me the theory under which this

1    really was the officers which would be somewhat different

2    than what was offered on the writ?  What are the factual

3    allegations you can make now and where do those

4    allegations come from that gives you the ability to make a

5    different argument now?

6           MS. HORN:  Your Honor, I believe the factual

7    allegations are that as it's described starting at "police

8    suppress Burgess' statement and other evidence" around

9    paragraph 32, that Officer Mueller goes and speaks with

10   Burgess, he takes his statement and that statement isn't

11   disclosed.  It's not in the prosecutor file which is pled

12   later on.

13          So if you look at paragraphs 53 and 54,

14   Mr. Parks got the prosecutor file.  The Mueller report was

15   not in it and during the writ of actual innocence also

16   made an MPIA request for the prosecutor's file and it

17   wasn't in it then either.

18          So, Your Honor, I think the allegations are that

19   the document that we're describing, that we're talking

20   about is not in the prosecutor's file.  There's no reason

21   to suggest that the prosecutor had it.

22          THE COURT:  What about the notation on the

23   document?

24          MS. HORN:  Well, Your Honor, Mr. Dahl suggested

25   that this Court could take judicial notice of that note

1    and certainly, this Court can take judicial notice that

2    the document exists and that the note is on the document

3    and the writing is there.

4          But to try to take judicial notice of what that

5    actually means, I think is improper at this pleading stage

6    and that is really what Mr. Dahl is asking you to do in

7    this judicial estoppel argument and in other arguments.

8    He's asking this Court to say when it says per Ms.

9    Costley, don't turn over this report -- I'm

10   paraphrasing -- that this Court should interpret that to

11   mean that that is exactly what happened.  And that's not

12   proper at this stage because that is a disputed issue.

13         THE COURT:  But isn't that what your predecessor

14   counsel argued on the writ, that the prosecutor had made

15   that determination?

16         MR. DAHL:  Well, Your Honor, I think what the

17   prosecutor argued or, sorry, what our predecessor counsel

18   argued at the writ stage was that the prosecutor didn't

19   turn it over.  And I know I sound like a broken record.  I

20   mean certainly, there is a statement in the writ of actual

21   innocence that the report states X, Y and Z from -- it

22   said per Ms. Costley.  The document speaks for itself.  It

23   states that.  Nobody is disputing that basic fact.

24         But again for purposes of the writ, the

25   prosecutor is the one who is supposed to turn over

 1   material.  That is the prosecutor's job.  And information

 2   that may only be in the hands of the police department is

 3   still imputed to the prosecutor under a long line of Brady

 4   case law starting with Kyles.  And so I don't think that

 5   that issue is dispositive in this case.

 6          And I would also like to if this Court will

 7   indulge me, one of the other factors that's required for

 8   judicial estoppel to apply is that the court relied on and

 9   actually adopted this version of events.  That the court

10   made some kind of finding that it was the prosecutor as

11   opposed to the police officer that had this document.  And

12   there really is no evidence whatsoever of that.

13          In their reply, the defendants cited to the

14   order suggesting that the order somehow gave this argument

15   credence.  But what the order actually says is "upon

16   consideration of the writ -- of the petition for writ of

17   actual innocence and there being no opposition by the

18   State and for the reasons set forth at the hearing" --

19          THE COURT:  What page are you on?

20          MS. HORN:  I'm actually on Document 63-1, which

21   I believe is Exhibit A to the individual defendants'

22   reply.

23          THE COURT:  Okay.  Go ahead.

24          MS. HORN:  What the order actually says is that

25   the reasons why the court was granting the writ were the

1    reasons set forth at the hearing in the above-captioned

2    case on March 3, 2015.  And if you go to the hearing

3    document which was attached to our response, all that's

4    said at the hearing is the State represents that it's

5    conducted a thorough investigation, that Officer Mueller

6    has authenticated the handwriting on his own report and

7    that the State believes that --

8              THE COURT:  What page are you on for this?

9              MS. HORN:  Sure, Your Honor.  It is -- I believe

10   it is Exhibit A to Plaintiff's --

11             THE COURT:  58-1?

12             MS. HORN:  58-1.  Yes, Your Honor.

13             THE COURT:  And where are you referring to?

14             MS. HORN:  I'm looking at page 4 specifically.

15   Pages 3 and 4 I suppose where Mr. Gioia is speaking.

16             THE COURT:  Which part?

17             MS. HORN:  Sure.  Your Honor, what Mr. Gioia

18   says --

19             THE COURT:  And who is Mr. Gioia again?

20             MS. HORN:  He's the State's Attorney.

21             THE COURT:  Okay.

22             MS. HORN:  What he says is that the -- and this

23   is on page 3 -- he says "the State has carefully gone over

24   the material" at line 17 and 18.  At line 19, he says "the

25   State has conducted an extremely thorough investigation in

1    this case, including interviewing witnesses, most

2    importantly, a Baltimore police officer who offered a

3    report that was attached as an exhibit to the petition"

4    and then he goes on to say that "the officer is present in

5    court, he has authenticated that document partially, he

6    has authenticated his handwriting and his signature."  And

7    then in the next paragraph that follows at lines 2 through

8    12 --

9              THE COURT:  Who is he referring to?  He's

10   referring to --

11             MS. HORN:  Officer Mueller, Your Honor.

12             THE COURT:  Okay.

13             MS. HORN:  He says that had -- I'm starting at

14   line 5.  "Frankly, had the jury had, had Mr. -- the

15   nonfatal shooting Mr. Burgess been impeached with a police

16   report or by the testimony of a police officer in this

17   case, I think it would have created a significant or

18   substantial possibility of a different result as it would

19   have cast -- it would have supported the self-defense that

20   was raised by Mr. Burgess in this case -- I'm sorry --

21   Mr. Parks, excuse me, and then he says for that reason,

22   we're agreeing."  And the court literally just says "okay,

23   all right, well, thank you very much, Mr. Gioia; I assume

24   there is no opposition to that, Ms. Sansone; is that

25   right?"  And she says no.

1        So the reason why Mr. Parks' writ of actual

2  innocence was granted is not because the court adopted

3  wholesale the arguments in Mr. Parks' writ of actual

4  innocence nor is there any indication whatsoever that the

5  court ever made a determination about who was at fault for

6  not turning over the Mueller report.  What the court does

7  is agree with the State's assessment that had the report

8  been turned over, there's a substantial possibility of a

9  different trial.

10        THE COURT:  So the State didn't really contest

11  the ultimate result.  Correct?

12        MS. HORN:  The State -- that is correct, Your

13  Honor.

14        THE COURT:  So it didn't insist on a factual

15  finding on exactly how we got there?  Is that your

16  argument?

17        MS. HORN:  That is correct, Your Honor.  There

18  was no factual finding made by any party, not by the State

19  or by the court or even by Mr. Parks himself.

20        And so ultimately, regardless of whether there

21  was inconsistencies in the factual statements, the

22  defendants can't meet the prong of judicial estoppel that

23  requires the court to have relied on or adopted this

24  alleged inconsistent factual position and so estoppel is

25  out the door.

1           THE COURT:  Let me ask you about your conspiracy

2     counts.

3           MS. HORN:  Sure.

4           THE COURT:  And the defendants say everyone in

5     this is part of the department with the possible exception

6     of the prosecutor and you don't really give any specific

7     facts in the complaint that explain how this prosecutor

8     was involved in this alleged conspiracy.  So what detail

9     is there to meet the low, but still significant bar to get

10    you past this motion?

11          MS. HORN:  Sure, Your Honor.  I think that the

12    argument essentially -- but the argument that was raised

13    by the defendants in their brief was that because of

14    judicial estoppel, we could not -- well, there's an

15    intracorporate conspiracy doctrine that precludes

16    plaintiff from proceeding just against BPD.  We don't

17    dispute that.  We agree with that.

18          What we're saying is if you accept the

19    defendant's argument that this Court should take judicial

20    notice of this document that's referenced in plaintiff's

21    complaint and attached to the defendant's motion to

22    dismiss and make a factual determination about the meaning

23    of that note on the document, then there still is a viable

24    conspiracy claim because what the allegations are in the

25    conspiracy count is that there is a conspiracy between BPD

1   and another --

2          THE COURT:  I guess I'm saying -- you're asking

3   me basically to adopt something from the defendant's brief

4   as being part of the complaint.  I guess I'm trying to ask

5   where in the complaint does it say that you have some

6   factual allegations to show that it was the prosecutor and

7   these officers who were colluding or conspiring.  You are

8   just saying, well, they've sort of acknowledged this in

9   their complaint, although even then, it's not clear they

10  are acknowledging a conspiracy.  At most, they are

11  acknowledging facts to support a individual violation by

12  the prosecutor who is not the defendant.  So they're not

13  even acknowledging that there was some sort of group

14  effort here.

15         MS. HORN:  I understand, Your Honor.  And in

16  candor, there aren't specific facts in the complaint that

17  lay out this alternate conspiracy theory where the

18  prosecutor tells them don't turn this over and they all

19  conspire to do that.

20         I suppose the argument was made in the

21  alternative.  To the extent that the Court is going to

22  adopt the defendant's version of this case, then there can

23  be still be a viable claim --

24         THE COURT:  But their version is that to use the

25  old adage with conspiracies, that the prosecutor was

1   acting alone, isn't it?

2          MS. HORN:  Well, I'm not sure of that, Your

3   Honor.  I mean certainly --

4          THE COURT:  Well, they're not acknowledging that

5   their clients were doing anything wrong I don't think.

6          MS. HORN:  Certainly they're not acknowledging

7   that their clients were doing anything wrong.  But their

8   argument was essentially we turned the document over to

9   the prosecutor so we've washed our hands.

10          And all that I was trying to say and to the

11   extent that this court would permit us to leave to replead

12   facts to support this claim, is that even if under these

13   circumstances, the police officers disclosed this document

14   to the prosecutor and the prosecutor said to them, don't

15   turn that over, there still can be a conspiracy claim

16   because they knew -- they weren't turning it over to a

17   competent authority.  They knew they were violating

18   defendant's rights.  They knew she said don't turn it

19   over, don't give it to me, don't give it to the defendant.

20          THE COURT:  So are these additional facts you

21   have at your disposal now or do you really need discovery

22   to develop those kinds of facts?

23          MS. HORN:  I think we need further discovery to

24   develop those kinds of facts.  But I do think we could

25   replead.  To the extent that this Court is going to give

1    credence to this note on the document and have it mean

2    what the defendants say it means, I think that there is

3    still a universe in which a conspiracy count can exist

4    because you can't discharge your obligation by turning a

5    document over to somebody who says, hey, hey, that may be

6    a smoking gun, but don't disclose it.

7            THE COURT:  Okay.  Why don't we go briefly to

8    the Eleventh Amendment argument that I spent some time

9    with with Ms. Lynch about.

10           MS. HORN:  Sure.  I do want to preface that I

11   haven't had an opportunity to read the case law that she

12   cited.  This is all new -- these are new arguments to us

13   and we would and we have argued waiver.  So I just want to

14   preface that I can't speak to those specific claims that

15   she made regarding the jurisdictional -- the specific

16   cases she talked about.

17           What I can say is this.  That the cases that

18   they cite for the proposition that the Baltimore Police

19   Department should have sovereign immunity don't actually

20   conduct any analysis of the four-factor test.  And

21   regardless of whether there's a Supreme Court case that

22   suggests that there is, you know, now less of a primacy

23   placed on the treasury or the deep pockets, there still

24   are these four factors that the Court has to analyze and I

25   didn't hear her suggest that there had been some

1    jettisoning of that particular test.

2            And I think if you look at that test and we

3    cited a case, Alderman, the test really points towards

4    BPD's not having Eleventh Amendment immunity for purposes

5    of a Monell claim.  As they've conceded, the City pays the

6    judgments.

7            The second factor, the autonomy from the State,

8    there is -- although the -- I think that there is some

9    confusion.  I mean there is a connection between the City

10   and the Baltimore Police Department and that certainly

11   suggests that the City is separate from the State.

12           But there is also no evidence that I've seen or

13   no pleading, no allegations that the State somehow

14   controls the Baltimore Police Department other than

15   setting it up as an agency.  And we sort of describe some

16   of the ways in which the City and the Baltimore Police

17   Department are linked.  The City appoints and removes the

18   police commissioner.  They collaborate on the budget.

19   They authorize a number of Baltimore Police departments

20   they can hire, set employee salaries, the commissioner

21   apprises the Mayor and the City Council of information.

22   So I think that that factor, the autonomy from the State

23   cuts in the direction of finding that BPD does not have

24   Eleventh Amendment immunity.

25           The third factor, whether it has a local versus

1      state concerns, I agree with the Court that simply saying

2      that they enforce state laws doesn't cut it.  Their

3      jurisdiction is local.  Their jurisdiction is the City of

4      Baltimore.  They serve the citizens of the City of

5      Baltimore.  I think that the Alderman case actually

6      discussed this argument that because they are enforcing

7      criminal law, they somehow have, you know, serve the State

8      and rejected it.  And for good reason as this Court has

9      recognized that all police departments are enforcing laws

10     that were created by the State.

11          The last factor of how it's classified under the

12     state law, certainly we aren't disputing that BPD has been

13     created as this anomaly as a state agency.  But we would

14     submit that there are instances where it is not treated

15     completely as a state agency and I think the Local

16     Government Tort Claims Act is one of them.  You know, they

17     are considered a local government for purposes of that act

18     including for indemnification as counsel discussed

19     earlier.

20          So, you know, from our perspective, this is

21     actually a fairly straightforward application of the

22     four-part test leads to the conclusion that BPD should not

23     have Eleventh Amendment immunity.  And relying on these

24     cases that simply say because it's a state agency that has

25     immunity doesn't cut it because it doesn't actually

1    analyze the factors.

2           The other argument -- I don't know if you have

3    any specific questions --

4           THE COURT:  Well, not really.  You had raised

5    the LGTCA.  So I wanted to ask you about that.  If there

6    is something else you want to add on immunity though?

7           MS. HORN:  No, Your Honor.

8           THE COURT:  Okay.  So then there is the question

9    of timing here and does it make a difference whether you

10   file your notice before the action accrues?  Obviously,

11   you've argued when the action accrues for purposes of

12   other claims.  You are really kind of stuck with that

13   time.  Why isn't that a problem?  This statute does -- is

14   very prescriptive about timing requirements, isn't it?

15          MS. HORN:  Your Honor, certainly, we aren't

16   disputing the time that when a claim accrues,

17   specifically, when the malicious prosecution claim

18   accrued.

19          Our argument is that there was substantial

20   compliance because the facts underlying that claim are all

21   there in the notice.  The notice identifies the case

22   number.  It identifies the crime.  It identifies the fact

23   that he -- I mean I think it goes through a number of

24   labels, some different potential causes of action that he

25   might have.

1          And the case that the defendants cited is this

2     court's case, the Edwards case.  And I think that Edwards

3     is very different from the facts that we have here.  In

4     Edwards, the two incidents where the plaintiff had alleged

5     that she had been denied proper accommodation actually

6     happened well before the constructive notice, let's say,

7     had even been given.  So that the fact -- the jurisdiction

8     couldn't even investigate those incidents because they

9     hadn't happened yet.

10          The malicious prosecution claim is very

11    different because the underlying set of facts, that

12    investigation and the prosecution had already occurred.

13    All that hadn't happened yet was that was the prosecutor

14    dismissed the charges against Mr. Parks.

15          THE COURT:  What about the failure to reference

16    the various defendants in our case?

17          MS. HORN:  Sure.  I would also argue substantial

18    compliance and I think that the Burgess versus this

19    Baltimore Police Department case is instructive on this.

20    In that instance, a number of defendants were added to the

21    case and there was an argument that because their names

22    weren't specifically listed, somehow that made the notice

23    improper.  And what the court found was no, there was

24    substantial compliance because the police department could

25    still investigate the claims.

1            I mean at the end of the day, what the Watson

2   case says about substantial compliance is that the police

3   or the municipality have the opportunity to actually

4   investigate and that opportunity was provided in this

5   particular case.  It does say Officer Mueller and others.

6   We recognize that.  We aren't disputing that.  But I think

7   that under the case law of substantial compliance, that is

8   sufficient.

9            THE COURT:  Okay.  What about the Monell

10  argument then?  So which theory are you pursuing here?  Is

11  it failure to train?  Is it a widespread practice?  What

12  is your argument here?

13           MS. HORN:  We are pursuing both, Your Honor.  We

14  are pursuing a failure to train on Brady obligations and

15  we are also pursuing a widespread practice of withholding

16  and fabricating evidence.

17           And what I heard counsel say was, you know,

18  it's -- I think her words were specifically it's a high

19  hurdle.  But the Owens case actually says the opposite.

20  What Owens says is it's not hard to plead a Monell claim.

21  What it's hard to do is to prove it.  And I think that

22  what counsel repeatedly referenced the Connick case in her

23  discussion of our claims.  Well, Connick was a case that

24  arose after a verdict.

25           Certainly, we don't dispute that through

1    discovery, we have to prove each of the elements of a

2    Monell claim, including things like identifying a

3    policymaker, proving deliberate indifference.  But that's

4    very different from what we have to do at the pleading

5    stage.  And I think that Owens really controls this case.

6           And if you look at Owens and you look at the

7    allegations in Owens, we've far surpassed what Owens did.

8    Owens said there were "reported and unreported cases" and

9    that there had been successful motions.  That was the sum

10   total of the allegations that the Fourth Circuit found

11   sufficient.

12          THE COURT:  So Ms. Lynch makes a -- I don't

13   think she said this entirely explicitly.  But I infer from

14   it that she says that to the extent you can plead that

15   there are incidents similar to this or incidents of

16   withholding evidence if they happen after your events,

17   that they are not helpful on this point because -- not

18   necessarily arguing that there is no pattern, but it

19   hadn't been established at the time of the incidents in

20   question in your case.  So what is your response to that?

21          MS. HORN:  Sure, Your Honor.  What the

22   allegations were is that during this timeframe, the

23   relevant operative period, there were incidents, similar

24   incidents of due process violations that occurred in other

25   cases.  And then we provided five examples.

1          Now all of the withholding or due process

2    violations that occurred in those cases occurred in the

3    operative time period, occurred prior to Mr. Parks'

4    arrest, prosecution -- arrest, investigation and

5    prosecution.  What I believe counsel is getting at --

6          THE COURT:  Which paragraphs are you referring

7    to?  She seemed to say that they were after.  I don't know

8    if that's --

9          MS. HORN:  Well, what I believe she is referring

10   to is that the exonerations were after and that's

11   certainly not in dispute.  The exonerations of these

12   gentlemen who served decades in prison occurred after

13   Mr. Parks' conviction.  But I don't think that's kind of

14   neither here nor there for these purposes.  Again we're at

15   the pleading stage.  So these examples provide examples of

16   just as Owens required of reported and unreported cases

17   where there were due process violations.

18         THE COURT:  So it looks like at least the way

19   you've pleaded it that these -- the alleged withholding

20   which presumably would have happened prior to the

21   convictions happened in the '80s and '90s.  But then the

22   exonerations as you said occurred in the 2010's for the

23   most part.

24         MS. HORN:  That is correct, Your Honor.

25         THE COURT:  Okay.

1          MS. HORN:  And my concern is that I think that

2     counsel is trying to graft onto these Monell cases

3     requirements for pleading that just simply don't exist.

4     There may be individual district court cases that have

5     asked plaintiffs to identify the policymaker or some such

6     thing, but that's really not what the Fourth Circuit has

7     said.  The Fourth Circuit has said in Owens, it's easy to

8     plead these cases.  The high hurdle comes when you have to

9     prove them.  I think that between the Tabeling Report and

10    the examples that we have given, we are far past the issue

11    of whether we have pled sufficient facts to get over the

12    Rule 12 hump.

13         I would like an opportunity if this Court will

14    indulge me to discuss the Heck issue on the Manuel claim.

15         THE COURT:  On the which claim?

16         MS. HORN:  On the unlawful detention claim.

17         THE COURT:  Yes.  Go ahead.

18         MS. HORN:  Count Three, Your Honor.  The

19    McDonough case that was issued this summer by the Supreme

20    Court talks about the fact -- and McDonough involved there

21    was initially a mistrial and then subsequently after the

22    mistrial, he was retried and he was acquitted and the

23    allegation in McDonough was fabrication of evidence.

24         And what McDonough said when trying to decide

25    about when the statute of limitations for a fabricated

1       evidence claim like the one McDonough had where he was

2       subsequently acquitted, it doesn't begin to run until the

3       criminal proceedings against the defendant have terminated

4       in his favor.

5               And what the McDonough case basically explains

6       is it's not just -- Heck doesn't just bar you from

7       bringing a suit where there's a conviction.  It also bars

8       you from bringing a suit where that suit would impugn the

9       validity of ongoing criminal proceedings.  It says there's

10      not a complete and present cause of action to bring a

11      fabricated evidence challenge to criminal proceedings

12      while those proceedings are ongoing.

13              And while we recognize that --

14              THE COURT:  How does that spin out here?  I mean

15      I don't think that's that much of an extension of Heck if

16      it is one.  But why is this, the lawfulness of this

17      detention --

18              MS. HORN:  Because, Your Honor, I think --

19              THE COURT:  -- going to affect the validity of

20      the conviction here?

21              MS. HORN:  Well, for two reasons.  First, the

22      same evidence was used to detain him pretrial as was used

23      at the actual trial.  So were he to bring a claim for

24      unlawful detention during his, you know, when the

25      detention began or even upon his release in March of 2015,

1    he would be Heck barred because the very proof of that

2    unlawful detention would be the same proof that would be

3    used to attack his criminal conviction.  It was the same

4    evidence.  So he couldn't bring it until it had terminated

5    completely in his favor.  What McDonough says is you can't

6    bring a claim that would impugn the validity of criminal

7    proceedings.

8            So from March of 2015 all the way until his

9    conviction was overturned in October or, sorry, the

10   charges were dismissed in October of 2015, he still had

11   criminal proceedings pending.  He was still under

12   indictment.  He was still subject to a retrial.  And so

13   that period of time can't -- he can't have been required

14   to have brought a claim for unlawful detention in that

15   period of time because to do so would civilly attack or

16   collaterally attack the same evidence that was being used

17   to prosecute him.

18           And McDonough has some language that talks not

19   only about the legal problems with using civil litigation

20   to collaterally attack the criminal proceeding, but also

21   that talks about some of the policy concerns.  So the

22   concern with avoiding parallel litigation, avoiding a

23   collateral attack, avoiding in this case the untenable

24   choice between letting a claim expire or filing the civil

25   suit against a person who is involved in prosecuting him.

1          And so I think that the same concerns that

2     animate McDonough require a finding that the Manuel claim

3     did not actually accrue until the proceedings were

4     terminated in my client's favor.

5          THE COURT:  So you're saying the claim is that

6     the false arrest or detention was based on the fact that

7     at that point they knew about this other confession and

8     therefore, had no probable cause to arrest?

9          MS. HORN:  Your Honor, to be clear, we're not

10    claiming false arrest.  So we're simply --

11         THE COURT:  Or detention for how long?

12         MS. HORN:  It's a seven-month pretrial detention

13    from the time he was held over pursuant to legal process

14    until the time of his trial.  That's the time that Manuel

15    covers.

16         THE COURT:  But then what's your theory on at

17    what point in that they may have understood that they had

18    no basis to hold him?

19         MS. HORN:  Your Honor, I mean I believe our

20    theory that there was no probable cause -- I mean we don't

21    have a false arrest claim because that is time barred.

22    But our position is there was no probable cause.  They

23    knew who the real perpetrator was and that the evidence

24    that they generated to pin the crime on my 16-year-old

25    client was either fabricated or was the evidence that he

1      needed to prove his innocence was withheld from him.

2              And so what we're alleging is the same evidence

3      that was used to hold him over for trial is the same

4      evidence that was presented at trial.  And therefore, he

5      could not have brought his claim until the proceedings

6      completely terminated in his favor.

7              THE COURT:  I'm still trying to understand

8      whether this is the same or different than a standard Heck

9      argument.  Did the court rely on anything that -- I mean

10     normally what you're looking at is, for example, a

11     suppression issue whether there's evidence that the or

12     there's -- you're going to challenge a search or something

13     like that and that the underlying search was basically

14     upheld in the criminal proceedings.  So you would be

15     contradicting effectively the court's ruling unless the

16     conviction is vacated and so forth.  So you are not making

17     that argument.

18             MS. HORN:  No, Your Honor.

19             THE COURT:  Or you're just saying the evidence

20     is the same --

21             MS. HORN:  Well, the evidence --

22             THE COURT:  -- and therefore -- finish it for

23     me.

24             MS. HORN:  No.  I didn't want to interrupt you.

25             THE COURT:  Yes.

1          MS. HORN:  The evidence that was used -- the

2     evidence that was generated during the investigation, the

3     statements of the witnesses, the statements of the real

4     perpetrator that was withheld from him, that's the same

5     evidence that was used at trial.

6          For example, Mr. Burgess, the victim, testifies

7     at trial that my client did it.  That's the same evidence

8     that was created during the criminal investigation.

9          And so our claim is essentially that if you

10    required our client to bring this claim either at the time

11    of his, you know, original detention or I think I heard

12    counsel offer at the time that he was released from

13    custody, his claim would be an unlawful detention without

14    probable cause and the allegation would be they had no

15    probable cause because they knew who the real perpetrator

16    was and the remainder of the evidence that pointed towards

17    my client was fabricated.  That would be what he would

18    have to prove in his Manuel claim.  That's the same thing

19    that he would have to prove to prove, for example, his due

20    process claim which there is no dispute --

21         THE COURT:  So do you have a case that spins out

22    this theory -- I know that the McDonough case is new.  So

23    maybe it doesn't exist yet.  But anything else you can

24    point to?

25         MS. HORN:  I don't have a case on point, Your

1    Honor.  We believe that McDonough applies via analogy and

2    the Supreme Court did decline to address the statute of

3    limitations when it heard Manuel.

4              THE COURT:  Okay.  Well, anything else you'd

5    like to add on any other theory?

6              MS. HORN:  No, Your Honor.

7              THE COURT:  Okay.  So I believe the defendants

8    had more time than the plaintiffs did.  So to the extent

9    there's any rebuttal, let's make it one or two points if

10   any and only on things that were raised by Ms. Horn.

11             MR. DAHL:  Just a moment, Your Honor.

12             THE COURT:  Yes.

13             (Pause.)

14             MR. DAHL:  Thank you, Your Honor.  I'd like to

15   speak first to Ms. Horn's characterization of the circuit

16   court's acceptance of the document.  Ms. Horn argued that

17   it was irrelevant for Mr. Parks at that time to argue who

18   had withheld the document and further challenge acceptance

19   by the court based on the proffer made by Assistant

20   State's Attorney Tony Gioia during his presentation to the

21   court at the hearing.

22             THE COURT:  So as part of that, can you tell me

23   whether you agree or disagree with her assertion that

24   there was no actual finding as to who -- what had actually

25   happened with this document, whether the prosecutor had

1    withheld it, whether the police had done anything wrong,

2    that it didn't get to that level of detail.  Is that

3    correct or not?

4            MR. DAHL:  I would disagree, Your Honor.  I

5    think implicitly, strongly implicitly and necessarily --

6            THE COURT:  Not implicitly.  Like where is it in

7    the record that the court either wrote down or said I'm

8    finding that this was all the prosecutor's fault or

9    something to that effect?

10            MR. DAHL:  The court opened its order with upon

11    consideration of the petition for writ and the court would

12    have had to have made findings as to two elements, two

13    elements of the petition for writ of actual innocence --

14            THE COURT:  So the answer is no.  It's not

15    written down.  It's by inference.

16            MR. DAHL:  It was necessary because there were

17    only facts as to the second element that related to the

18    prosecutor withholding --

19            THE COURT:  What was the second element again?

20            MR. DAHL:  The second element under 8-301(a)(2)

21    of the petition for writ of actual innocence statute is

22    that the evidence could not have been discovered in time

23    to move for new trial under Maryland Rule 4-331.  Thus

24    notwithstanding Mr. Gioia's, you know, alternative

25    presentation or concession as to whether the document

1    could have led to a substantial or significant possibility

2    that the result may have been different.

3            The only facts before the court, because the

4    only facts that Mr. Parks put before the court was that

5    the prosecutor withheld the document in court; that is why

6    I could not have moved for a new trial earlier.

7            THE COURT:  So the argument though was it was

8    not in the prosecutor's file.  Is that correct factually?

9            MR. DAHL:  The argument factually was that it

10   was not turned over to the defense because the prosecutor

11   withheld it.  That was the argument that Mr. Parks made

12   before the Circuit Court for Baltimore City and it's the

13   only one that he made before the Circuit Court for

14   Baltimore City.

15           THE COURT:  Okay.

16           MR. DAHL:  And it must have been accepted by --

17   for the court or else the court just let someone out of

18   prison, a convicted murderer serving 80 years because the

19   Assistant State's Attorney said we don't have a problem

20   with this.  The Assistant State's Attorney doesn't have

21   pardon power.  It doesn't have the power to grant

22   reprieves.  The court had to look at the document and the

23   order says I looked at the document upon consideration of

24   the petition --

25           THE COURT:  Okay.  I understand the argument.

1          MR. DAHL:  Okay.  And then secondly, might

2    follow the Court's instruction to leave it to two points.

3    Ms. Horn argued that this Court alternatively might grant

4    leave to amend on conspiracy so that she could replead

5    that the prosecutors -- the prosecutor and the police were

6    in it together.  On that, I would simply cite Evans v.

7    Chalmers, 703 F.3d. 636, pin cite 649, year 2012.  This is

8    another case where it was alleged based on a bad

9    prosecutor who was disbarred for his actions in the case

10   that the police and the prosecutor acted on it together to

11   fabricate and conceal evidence and the Fourth Circuit said

12   no, this is not possible.  "It is contrary to the purpose

13   of qualified immunity to extend personal liability to

14   police officers who have assertedly conspired with, but

15   neither misled nor unduly pressured the prosecutor."

16   Concluding "thus, we hold today that an alleged officer or

17   prosecutor conspiracy does not alter the rule that a

18   prosecutor's independent decision to seek an indictment

19   breaks the causal chain unless the officer has misled or

20   unduly pressured the prosecutor."  But because of the

21   Fourth Circuit's recent holding on this very issue, we

22   would say that on the conspiracy counts, Ms. Horn's

23   request for leave to amend would be futile.

24          THE COURT:  Okay.

25          MR. DAHL:  And thank you --

1          THE COURT:  Thank you.

2          MR. DAHL:  -- for your consideration, Your

3     Honor.

4          THE COURT:  Ms. Lynch, anything?

5          MS. LYNCH:  Just a few small points, Your Honor.

6          THE COURT:  Well, Mr. Dahl was gracious enough

7     to keep it to two.  Even though I had said one or two, but

8     he read that broadly.

9          MS. LYNCH:  Thank you, Your Honor.  Turning

10    first to the Eleventh Amendment immunity argument, Your

11    Honor asked a lot of questions about subject matter

12    jurisdiction and the standard of review there.  There's

13    another case where the Fourth Circuit has been unclear on

14    whether a dismissal of Eleventh Amendment grounds is a

15    dismissal for failure to state a claim under 12(b)(6) or

16    lack of subject matter jurisdiction under 12(b)(1).

17         THE COURT:  Is this Hutto?

18         MS. LYNCH:  This is Andrews v. Daw, which is 201

19    F.3d. 521 (Fourth Circuit 2000).  However --

20         THE COURT:  My understanding from Hutto, which

21    is 2014 is that it isn't a hundred percent crystal clear,

22    but the Fourth Circuit has said it's not a hundred percent

23    crystal clear, but they are treating it as something

24    that's effectively an affirmative defense and so I read

25    that as meaning they're not finding it's subject matter

```
1    jurisdiction, even though they've had that opportunity.

2    So it sounds like this is consistent with that.  You're

3    saying that it's saying that it's unclear.

4              MS. LYNCH:  That it's unclear.  However --

5              THE COURT:  Which is different than what you

6    said before which is --

7              MS. LYNCH:  I think that the 2018 case which

8    I've cited --

9              THE COURT:  Which has nothing to do with

10   sovereign immunity.  Cunningham?

11             MS. LYNCH:  Yes.

12             THE COURT:  I mean nothing to do with the

13   Eleventh Amendment.

14             MS. LYNCH:  It does have to do with sovereign

15   immunity and --

16             THE COURT:  Nothing to do with the Eleventh

17   Amendment though.  Right?

18             MS. LYNCH:  Well, it was not decided on the

19   Eleventh Amendment immunity grounds, but it was sovereign

20   immunity and --

21             THE COURT:  The defendant was -- are you talking

22   about Cunningham or the unpublished district court case?

23             MS. LYNCH:  The General Dynamics versus

24   Cunningham.  However, the Fourth Circuit in --

25             THE COURT:  Where in this does the Eleventh
```

1    Amendment even come up?  Is there a state defendant in

2    this or -- I guess I'm missing it.  Again I admit that I

3    hadn't read the case because I didn't think it was

4    relevant.  But in just in looking at it, I don't see where

5    the State is even a party.

6              MS. LYNCH:  Well, to the extent, Your Honor,

7    that it would be a 12(b)(6) or a 12(b)(1) motion in Roche

8    versus West Virginia Regional Authority --

9              THE COURT:  Maybe we don't need to discuss this

10   because I don't think the analysis is going to be any

11   different whether it's subject matter jurisdiction or not.

12             MS. LYNCH:  Okay.

13             THE COURT:  I just have a problem with attorneys

14   coming in and saying this is jurisdictional, here's the

15   case and then you cite a case that doesn't even mention

16   the Eleventh Amendment and they are very different.

17             MS. LYNCH:  Your Honor, I --

18             THE COURT:  And I just have a problem with that.

19             MS. LYNCH:  Okay.

20             THE COURT:  But again I don't think it's going

21   to affect the decision because I think the analysis is

22   basically the same.  But, you know, the Supreme Court

23   recently said I think in Davis in a different context that

24   jurisdiction is not a word to be thrown around lightly in

25   ruling on Title VII issues.  And lawyers do that all the

1    time.  They come in here and say this is subject matter

2    jurisdiction, this is subject matter jurisdiction.  And

3    when it's not, I find that misleading.  So why don't you

4    move on to the next issue?

5            MS. LYNCH:  Sure.  In order for the Court to

6    find that there is Eleventh Amendment immunity, the public

7    local laws really explain that.  That the general assembly

8    established -- the commissioner is the State for purposes

9    of this analysis.  He takes the same oath that other state

10   officials take under the Maryland constitution.  The

11   public local laws do not delegate the authority of this

12   State to any other -- to the city or to anyone else.  In

13   fact in Public Local Law Section 16(2)(b), the Baltimore

14   Police Department is given powers to exercise its police

15   powers outside of the city in areas that the Baltimore

16   Police Department owns -- I'm sorry -- that Baltimore City

17   owns.

18           As far as the plaintiff said that there's some

19   inconsistency in how the police department is classified

20   as to state law and I think that that is just not true.

21   There is a chance to make -- and the Court can take

22   judicial notice of this fact -- there's a chance to make

23   the Baltimore Police Department a city agency.  There was

24   a bill put forward and it was rejected.

25           The fact that the Supreme Court has called the

1    protection of the State's sovereign dignity as a paramount

2    concern, I think -- although all of the factors must be

3    given, you know, no one factor is given preeminence, I

4    think that leads to the conclusion that the State's

5    classification of the BPD as a state agency is highly

6    relevant.

7            As to the Monell argument, Owens doesn't say

8    that pleading Monell is easy.  It says that proving it is

9    difficult, but pleading it by definition is easier.  This

10   case is different from Owens.  We're still on the

11   complaint.  It can't be that just because a cause of

12   action was made out in Owens, it would be here.  We still

13   need to look at the pleadings filed in this case to see if

14   they meet the Iqbal Twombly standard.

15           Also in Owens, that was a different type and

16   this goes back to the Connick v. Thompson case.  It was a

17   different type of violation.  It was inconsistent witness

18   statements I believe.  That isn't an issue in this case

19   which is things like burying guns, destroying evidence,

20   fabricating a false narrative and all that type of thing.

21   Unless Your Honor has any other questions, I would submit

22   on the papers.

23           THE COURT:  Thank you.

24           MS. LYNCH:  Thank you.

25           THE COURT:  So we went a lot longer than I

1    thought we would, although that doesn't sound unusual.

2    Let's take a brief ten-minute recess.  I may be able to

3    give you some guidance on where we stand now.  We may then

4    talk about the recent letter filed.  Thank you.

5             (Recess.)

6             THE COURT:  I know this motion has been pending

7    for quite some time and that's not ideal for the life of a

8    case.  It is the reality of the competing cases that we

9    need to focus on.  But we are addressing it now.  I do in

10   part because of that, but also because I believe that all

11   the important issues have been resolved based on the

12   papers and the argument.  I am prepared to rule on the

13   motion to dismiss now.

14             First, on the issue or as a threshold issue,

15   there were a large volume of materials attached to the

16   motions and ordinarily on a motion to dismiss, I don't

17   consider outside materials.  There are some exceptions to

18   that rule.  And in this case, I will consider the Petition

19   for Writ of Actual Innocence and based on judicial notice

20   because it's another court proceeding.  I will also

21   consider the Local Government Tort Claims Act Notice which

22   was at least largely referenced in the complaint.  I find

23   that to be integral to the complaint.  Otherwise, I will

24   not be considering other attachments submitted under Rule

25   12(d) which prevents me from doing that except if the

1    motions turn into a motion for summary judgment.

2              As a threshold issue because the claims of the

3    City, Baltimore City Police Department are interspersed

4    throughout the issues here, I want to discuss the Eleventh

5    Amendment immunity issue.  The Baltimore City Police

6    Department asserted that as an agency of the state, it is

7    immune to suit under Section 1983 based on the Eleventh

8    Amendment.  Although there was some discussion about this,

9    the Court finds that under Hutto versus South Carolina

10   Retirement Systems, 773 F.3rd. 536, (Fourth Circuit 2014),

11   that this is not a subject matter jurisdiction issue.

12   Sovereign immunity under that case is in the nature of an

13   affirmative defense.  So the police department has the

14   burden of demonstrating it.  And as has been said, I don't

15   think either the Fourth Circuit or other courts have been

16   completely explicit on this issue.  But in Hutto, the

17   Fourth Circuit does note that this is not something that

18   they have found as subject matter jurisdiction.  So I will

19   not so find.

20             I will note as we've discussed, I don't think it

21   makes any difference to the analysis.  It may have made a

22   difference on whether I should be considering it at this

23   point, but I think in the interest of judicial economy for

24   later purposes, I will consider it now.

25             And so under either subject matter jurisdiction

1   or under Rule 12(b)(6), I think the analysis will largely

2   be the same.

3            Under Ram Ditta versus Maryland National Capital

4   Park and Planning Commission, 822 F.2nd. 456 (Fourth

5   Circuit 1987) whether an entity is entitled to Eleventh

6   Amendment immunity is a question of federal, not state

7   law.  In Ram Ditta, the Fourth Circuit set out factors for

8   this analysis.  The first and most important was whether

9   the state treasury would be responsible for paying the

10  judgment.  Under Harter versus Vernon, 101 F.3rd. 334

11  (Fourth Circuit 1996), that factor is generally

12  determinative.  Additional factors include whether the

13  entity exercises a significant degree of autonomy from the

14  state, whether it is involved with local rather than the

15  statewide concerns and how it is treated as a matter of

16  state law.  To the extent that the importance or

17  significance of any of those factors may have been

18  adjusted or arguably could be adjusted over the course of

19  time, I will look at them all without giving primacy to

20  any particular factor.

21           Based on a consideration of those factors, I

22  conclude that the Baltimore City Police Department is not

23  entitled to Eleventh Amendment immunity to suit under

24  Section 1983.  The reasoning is very similar to what was

25  set forth in Alderman versus Baltimore City Police

1    Department, 952 F. Supp. 256 (District of Maryland 1997).

2    The court notes that here as in Alderman, the Baltimore

3    City Police Department had provided no evidence

4    establishing that the state, not Baltimore City, would be

5    responsible for paying any potential judgment and the

6    Baltimore City effectively conceded that point and

7    Baltimore City Police Department also has significant

8    autonomy from the State with control primarily coming from

9    Baltimore City which appoints the police commissioner.

10   Baltimore City Police Department's functions are local

11   primarily, not statewide.  I don't find persuasive the

12   arguments that there may be some stray areas where there's

13   some jurisdiction beyond the city limits or that they

14   enforce state laws.

15        The only factor that weighs in favor of immunity

16   is that pursuant to Mayor and City Council of Baltimore

17   versus Clark, 944 A.2nd. 1122 from the Court of Maryland

18   2008, the State of Maryland does view the Baltimore City

19   Police Department as a state entity based on Maryland

20   statutes for purposes of immunity from state law torts,

21   but that does not apply to federal constitutional claims.

22        In looking at all these factors together under

23   any weighting of these particular factors, that

24   designation does not outweigh the other factors,

25   particularly the payment of the judgment, the lack of

1    statewide impact of the department and the issue of

2    control by either the state or city or autonomous control.

3           Notably, the Maryland Court of Appeals

4    specifically stated in the context of Section 1983 that

5    the classification of BCPD as a state agency is not

6    controlling.  It said that in Clea v. City of Baltimore,

7    541 A.2nd. 1303 (1988).  Also I would note that in Blades

8    versus Woods, 667 A 2nd. 917, the Court of Special Appeals

9    expressly held that whatever state immunities Baltimore

10   City Police Department may have, they do not extend to

11   suits under 1983.

12          As a result, courts that have considered this

13   distinction since Clark have reaffirmed the finding that

14   Baltimore City Police Department is not subject to

15   Eleventh Amendment immunity including Rockwell versus

16   Mayor and City Council of Baltimore, 2014 Westlaw 949859

17   from 2014.  The cases that have referenced otherwise as

18   stated do not go through the four-part analysis that we've

19   discussed.  So the Court, therefore, concludes that as has

20   been the case for many years, the Baltimore City Police

21   Department does not have Eleventh Amendment immunity from

22   suit.  So we will consider the claims made by both

23   defendants regarding the motion.

24          On the issue of statute of limitations, the

25   defendants have acknowledged now or have conceded that

1    their position changes as a result of McDonough versus

2    Smith, the recent Supreme Court case from June of 2019.

3    So they are no longer arguing that Counts One and Two are

4    subject to dismissal based on the statute of limitations.

5    They do argue Counts Three, Four and Nine should still be

6    subject to dismissal.

7            With respect to Count Three, the detention

8    without probable cause, the plaintiffs have argued that

9    McDonough still can be construed as applying to that case

10   and extending the date of which the statute of limitations

11   begins to run to the same date that would apply for Counts

12   One and Two.  I don't find that reasoning to be laid out

13   in McDonough.  McDonough does distinguish in talking about

14   Wallace versus Kato, 549 U.S. 384 (2007), a distinction

15   between false arrest claims such as in Wallace and

16   malicious prosecution claims as in McDonough.  And in this

17   instance, the detention claim although perhaps expounded

18   upon by the plaintiff beyond what's actually written in

19   the complaint is much closer to a false arrest claim than

20   it is to a malicious prosecution claim.  It focuses on the

21   period of detention.  It is not focused on the actual

22   prosecution of the case.  And so the Court finds that it

23   is still governed by Wallace.  That the claim becomes ripe

24   as soon as the individual is held pursuant to process

25   here.  Mr. Parks was arrested in 1999, proceeded to trial

1      in 2000.  So he was held pursuant to process beginning in

2      2000.  And therefore, his claim in 2018 was untimely.  So

3      Count Three will be dismissed based on the statute of

4      limitations.

5                  Counts Four and Nine are a different analysis.

6      In Count Four, a Section 1983 claim for failure to

7      intervene, in Randall versus Prince George's County, 302

8      F.3rd. 188 (Fourth Circuit 2002), the Fourth Circuit

9      equated bystander liability, another term for failure to

10     intervene to have parallels to accomplice liability.  The

11     Court accordingly finds that a failure to intervene claim

12     accrues at the same time as the primary tort in which the

13     bystander defendants allegedly fail to intervene, which in

14     this case is the malicious prosecution claims which

15     accrued on October 9, 2015.

16                 So along the lines of how the Court would have

17     analyzed that claim before McDonough or certainly after

18     McDonough, I find that the failure to intervene claim

19     follows the same track and is timely at least as pleaded.

20     So the motion is denied as to Count Four.

21                 On Count Nine, the officer defendants move to

22     dismiss the or both sides -- both sets of defendants move

23     to dismiss the intentional infliction of emotional

24     distress claim.  Under Parish versus City of Elkhart, 614

25     F.3rd 677 (Seventh Circuit 2010), which is relied on in

1    Prince George's County versus Longtin, 19 A.3rd. 859

2    (Maryland 2011), a court should determine the date when an

3    intentional infliction of emotional distress claim accrues

4    by looking at the crux of the claim.  As in Parish, the

5    crux of the claim here is a wrongful conviction based on

6    withheld exculpatory evidence such that the tort was not

7    completed prior to the conviction.

8           Accordingly, the claim could not have been

9    brought by Mr. Parks before his conviction and the

10    possibility of future prosecution being disposed of

11    favorably along the same lines as the reasoning on Counts

12    One, Two and Four at least.  And so again the Court finds

13    the date of accrual to be October 9, 2015 and the motion

14    is denied on Count Nine.

15           As for the judicial estoppel argument, the

16    officer defendants are arguing that Mr. Parks should be

17    judicially estopped from proceeding in whole or in part on

18    the allegations relating to the withholding of the Mueller

19    report because his Petition for Writ of Actual Innocence

20    or in that petition, he expressly asserted that the

21    Mueller report was withheld by the prosecutors, not by

22    police officers.  Under Zinkand versus Brown, 478 F.3rd.

23    634 (Fourth Circuit 2007), judicial estoppel applies when

24    three criterior are met.  A party adopts a factual

25    position inconsistent with the stance taken in prior

litigation, the inconsistent factual position is accepted
by the court and the party intentionally misled the court
to gain an unfair advantage.  The last criterion is
particularly important because as the Fourth Circuit made
clear in Zinkand without bad faith, there can be no
judicial estoppel.

　　　　Here, the Court finds that even assuming that
the first two prongs were met, there are not the necessary
indicia of bad faith to dismiss these claims at this stage
of this case.  Mr. Parks' essential contention remains
consistent that there was material exculpatory evidence
that was withheld from him resulting in his unjust
conviction and incarceration.

　　　　It would not necessarily matter for purposes of
the petition whether the prosecutor or the police officers
were responsible factually for the ultimate withholding of
the exculpatory report.  So he did not gain any particular
unfair advantage in that prior proceeding by using the
factual approach regarding the prosecutor.

　　　　The inconsistency could be based on a number of
factors, including whether or not the -- whatever might
appear to be the argument that is at least most prevalent
in the facts or most likely to succeed in gaining
Mr. Parks' release, but that does not necessarily
establish based on the pleadings that there was bad faith

1    or is bad faith in the use of the factual argument that's

2    being made here.  Notably, the petition itself did not

3    characterize the police officer's role as innocent or

4    completely unrelated to the alleged misconduct.

5           So under the circumstances at the pleading

6    stage, I do find that there is no basis to conclude as a

7    matter of law that there was bad faith and so the Court

8    will not dismiss the complaint based upon judicial

9    estoppel.

10          There was in the motion, although we didn't

11   discuss it today, claims regarding qualified immunity.

12   The officer defendants moved to have all of the claims

13   dismissed on that basis.  As the brief makes clear, the

14   argument for qualified immunity hinges on the Court's

15   finding that Mr. Parks was judicially estopped from

16   arguing that they had withheld the Mueller report from the

17   prosecutor.  But where the Court has found no estoppel on

18   this point, the qualified immunity argument can't succeed

19   at this point because under Taylor versus Waters, 81

20   F.3rd. 429-436 (Fourth Circuit 1996), it was already

21   established that a police officer who withheld exculpatory

22   evidence from the prosecutor and therefore, deprived the

23   defendant of a fair trial had violated due process rights.

24          The determination as to qualified immunity is

25   made without prejudice as discovery may reveal facts

1    establishing that the police officers fulfilled the

2    clearly established disclosure obligations of which they

3    had reasonable notice.  But the motion will be denied at

4    this point.

5            On the issue of Local Government Tort Claims

6    Act, the officer defendants move to have all of the

7    claims -- state laws claims dismissed for failure to

8    strictly or substantially comply with that statute.  Under

9    Section 5-304(b)(2) of the act, a plaintiff must give

10   notice and writing of a potential tort claim by stating

11   the time, place and cause of the injury.  The notice must

12   be given within one year of the injury.  Here, the

13   complaint alleges and the attached document shows that a

14   letter was sent to the City Solicitor for Baltimore City

15   in June of 2015 that summarized the wrongful prosecution

16   and subsequent incarceration, which the Court finds

17   constitutes the necessary notice under the statute.

18           The argument that the notice was provided before

19   the injuries actually occurred or at least as a legal

20   matter were ripe does not change the result.  The point of

21   the one-year requirement is to enable local governments to

22   conduct their own investigations into tort claims while

23   the evidence is still fresh.

24           Here, the underlying facts had already occurred.

25   The Court, therefore, rejects the officer defendants'

1    argument that Mr. Parks' notice was untimely because it

2    was premature.  It was in keeping with the goals of the

3    statute and therefore, the Court finds that even if it was

4    deemed not strict compliance, it was substantial

5    compliance which is permissible under Faulk versus Ewing,

6    808 A.2nd. 1262 (Maryland 2002).

7          Also in terms of the content, this two or

8    three-page document, whether it mentions each individual

9    defendant or not, the Court finds does satisfy the

10   requirements of the particular statute.

11         On the broader arguments under 12(b)(6), first

12   with respect to the individual officers' claims about

13   improper group pleading, the Court will deny the motion on

14   that issue for reasons similar to those in Burgess versus

15   Baltimore City -- Baltimore Police Department, 2016

16   Westlaw 795975 (District of Maryland 2016).  Mr. Parks has

17   not yet had access to discovery.  So he is not in a

18   position to know what role various officers played in the

19   investigation into the murder for which he was convicted.

20   That is particularly true where the record shows some

21   level of evidence withholding potentially or problems with

22   record keeping and so the Court finds the allegations

23   sufficiently precise to proceed to the next step of this

24   case.

25         On the issue of the Monell allegations, there

1    are various theories under which this would proceed.  The

2    Court focuses though on the issue of whether there was

3    sufficient facts alleged to establish a widespread

4    practice of withholding evidence or fabricating evidence.

5              As another judge in this court found in Smith

6    versus Baltimore City Police Department, 2014 Westlaw

7    12675230 (2014), pre-discovery, the numerous accounts of

8    similar behavior are sufficient to establish a plausible

9    inference of Monell liability under the pleading standard

10   under the custom or widespread practice theory,

11   particularly when included with the allegations based on

12   the Tabeling Report.  These series of prior incidents are

13   based on facts occurring in the same timeframe including

14   before this particular incident here.  The report also

15   refers to that as well.  And so under 12(b)(6), the Monell

16   claim is sufficiently pleaded.

17             However, the Court will find that the federal

18   and state law conspiracy claims are barred by the

19   intracorporate conspiracy doctrine, which dictates that

20   officers and employees of the same entity acting in an

21   authorized manner do not constitute separate actors for

22   purposes of establishing a conspiracy.

23             The plaintiff doesn't seriously dispute that

24   concept, but argues instead that the prosecutor could be

25   deemed to be -- has been alleged to be a member of a

1    wider, extra corporate conspiracy.  But in the complaint,

2    the allegations are simply that the conspiracy extends to

3    other individuals known and unknown within and without the

4    BPD.

5            The argument now is that that includes or

6    focuses on the prosecutor.  For one thing, it's not in the

7    complaint.  But and therefore, that in and of itself is a

8    reason to dismiss those claims.  But the Court notes also

9    that where Mr. Parks' more recent theory of prosecutorial

10   involvement is in tension with this or even contrary to

11   this theory, the lack of any particular allegations to

12   spell this theory out, lead to the conclusion that the

13   allegations do not support an inference of conspiracy

14   outside the police department even if one were arguing it

15   in the alternative.

16           To the extent that discovery may reveal facts

17   that renders a conspiracy allegation viable, the complaint

18   can be amended at that point.  But for now, the Court will

19   dismiss the federal and state conspiracy claims.

20           Finally, on the issue of the indemnification

21   claim in Count Twelve because some of the claims against

22   the officer defendants remain viable, the issue is simply

23   this argument that was raised by the defendants, A, that

24   there might be sovereign immunity, also that there -- it

25   may be premature to make this assertion at this point.

1     First off, the waiver of immunity or the state sovereign

2     immunity is effectively waived for claims to -- of a duty

3     to defend or indemnify an employee under Baltimore Police

4     Department versus Cherkes, which is 780 A.2nd. 410.

5              And then in terms of whether we are now at the

6     point where this can be alleged, the Court disagrees with

7     the analysis offered regarding Johnson versus Francis, 197

8     A.3rd. 582, (Maryland Court of Special Appeals 2018).

9     That case does make clear that the or rejects the theory

10    that the officer must assign the claim before a plaintiff

11    can pursue a claim against the department directly.

12    Rather the case focuses on the notion that a plaintiff

13    must be able to recover from a local government without

14    the need to first obtaining an assignment from the

15    employee who wronged him or her.  And so the Court does

16    not accept the notion that there are predicates to an

17    indemnification claim that have yet to occur or have to

18    have been asserted obviously.  Again, evidence must be

19    established to lay out all of the different pieces that

20    would lead to an indemnification claim.  But the Court

21    will deny the motion on Count Twelve.

22             I believe that covers all the issues in the

23    motions.  There will be an order issued that memorializes

24    the various rulings on these various counts.

25             Ordinarily, we would move then to standard

1    discovery.  But we also have this letter that was

2    submitted on August 30th seeking to file a motion to

3    dismiss as a litigation sanction based on fabrication.

4         And I guess the question that I wanted to ask

5    was to the extent that this would be a basis to dismiss or

6    impose some other sanction, it seems as if it's a

7    fact-based issue that focuses on things such as whether a

8    document was fabricated, there's proffers that there's

9    expert testimony that would establish these facts.  How

10   does one dismiss a case that has a fact-based argument

11   until we develop the facts?

12        So let me ask whoever from the defense side

13   wants to raise this issue.  I certainly have no problem

14   with the idea of trying to proffer a theory, but is this

15   the right time at this point?

16        MR. NATHAN:  Your Honor, would you like me to

17   address the Court from the --

18        THE COURT:  Maybe, yes, because the -- either

19   that or pull the microphone closer.

20        MR. NATHAN:  Good morning.  To address your

21   question directly, I think there is some limited fact

22   discovery that does need to be -- does need to take place

23   and the parties have conferred after we sent the letter

24   over to plaintiff.

25        If I may just give a brief introduction to what

1   we believe the motion is going to show.  And we will be

2   attaching factual support for that and we anticipate that

3   the plaintiff will want to conduct some limited discovery

4   on that issue and we are going to want to conduct some

5   discovery on the issue as well.

6           As we heard this morning and the Court is well

7   aware at this point, the complaint -- the plaintiff

8   vacated his conviction primarily based on this Mueller

9   report or exclusively based on this Mueller report.  And

10  that's well established from the petition for writ of

11  innocence.

12          The plaintiff's complaint also strongly relies

13  on this Mueller report in numerous places and we've talked

14  about that this morning as well.

15          THE COURT:  So I mean the process here and I

16  understand only some but not all of the judges use the

17  process where we've laid out here with the letter.  Again

18  I'm really more concerned with timing.  This isn't an

19  opportunity to argue the merits of this motion and I can

20  obviously read the letter.  So I know what the contours of

21  it are.  So again you've said that both sides want

22  discovery on this.  So why would you file a motion now

23  until after that occurs?

24          MR. NATHAN:  Because we think that this is an

25  important enough issue that the Court should be made aware

1    of it, number one, and, number two, discovery should focus

2    preliminarily in this case on this issue first.

3              These types of cases tend to explode into 30, 40

4    depositions.  That could happen.  Thousands of pages of

5    discovery which is extremely costly.  And our strong

6    belief here is that the Court is going to view the two

7    experts that we have here as credible and that will be

8    establishing that this entirety case is based on a forged

9    document.  And therefore --

10             THE COURT:  That no one discovered during the

11   motion to vacate?

12             MR. NATHAN:  In this -- in state court?

13             THE COURT:  Yeah.  Again, I don't want to argue

14   the merits of this.  But it seems a little strange that

15   you have a convicted murderer and the state has a

16   detective who is accused of forging a -- of withholding a

17   report and he's involved and no one comes out and says

18   this must be a forgery?  It seems somewhat incredible that

19   the detective himself wouldn't have said I never wrote

20   this.

21             MR. NATHAN:  We were not a party to that

22   proceeding, Your Honor.

23             THE COURT:  Who is we?

24             MR. NATHAN:  The defendant police officers is

25   who I represent.  But the Baltimore Police Department was

1    also not a defendant in that proceeding.  However --

2              THE COURT:  Was Detective Mueller involved in

3    that in some way?

4              MR. NATHAN:  Your Honor is referencing Officer

5    Mueller.

6              THE COURT:  Officer Mueller.

7              MR. NATHAN:  And what I believe happened in that

8    proceeding is that that report, the so-called Mueller

9    report was presented to him and said is that your

10   signature and he looked at it and he said I have no

11   recollection of this document at all.  And he's not a

12   detective involved in the case.  He just responded to the

13   scene.  So it's not -- he didn't have an intimate

14   recollection of this event.  He says yes, that looks like

15   my signature and he maintains it looks like his signature

16   and the expert --

17             THE COURT:  But the whole time that this person

18   is trying to get out of prison for this murder conviction,

19   he never says, you know, I actually didn't interview this

20   person or whathaveyou, the contents are not accurate

21   whether I remember it or not.  I mean that didn't come up?

22             MR. NATHAN:  He did not testify and no, it

23   didn't come up.  He said he had no recollection of this at

24   all.  And he maintains that.  But what we're saying is

25   that it's not surprising at all that he would authenticate

1    his signature because it is in fact his signature --

2           THE COURT:  Okay.  Fine.  I understand the

3    point.  So again what I'm concerned about is you want to

4    file a motion with no discovery as you said.  And why

5    wouldn't we take the discovery first.  It sounds like

6    maybe what you're asking for is to sequence discovery in a

7    particular way such that at some point when you have

8    enough information on this issue, you could file a motion

9    and perhaps head off some of the other parts of the

10   case --

11          MR. NATHAN:  Whichever direction Your Honor

12   prefers would be fine with us.  Whether we should file the

13   motion to focus the issue first and then we can focus

14   discovery around that or I think we've already tendered

15   our two expert reports to plaintiff and I think we can

16   come up with a structured discovery without pre-filing the

17   motion.  That also I hear that as being a similarly

18   efficient way to deal with it because scope of the issues

19   may vary a little bit and then ripen for the Court.  So I

20   would be happy to proceed either way.

21          THE COURT:  Okay.  Let me hear from Ms. Horn.

22          MS. HORN:  Thank you.  Your Honor, I mean I'm

23   not going to go into the merits of this other than to say

24   that we vigorously contest any assertion that it's a

25   fraud.  What I will say is --

1          THE COURT:  You would agree it sounds like that

2     to the extent it's a factual issue, that discovery of some

3     kind would be needed before we --

4          MS. HORN:  Your Honor --

5          THE COURT:  -- resolve this question?

6          MS. HORN:  Absolutely.  First of all, the expert

7     reports that they did tender to us after we wrote to them

8     and said, hey, why don't you guys at least try to confer

9     with us, those expert reports were written in March of

10    2019.  Why there is this sudden urgency six months later

11    to come to court and say we've got to dismiss the whole

12    case or alternatively, we need to structure discovery to

13    address this issue is somewhat -- I don't understand it.

14         And to the extent that they're relying on expert

15    reports, that's a matter of expert discovery.  If they

16    want to present to a jury that their experts to the extent

17    that they pass the Daubert threshold are alleging that

18    parts of this document are a fraud, so be it.  But that's

19    really an issue for expert discovery.  And they can't

20    leapfrog the ordinary way in which discovery proceeds

21    simply by coming up with this motion.

22         I will say to the extent they want to structure

23    discovery, I think what's going to end up happening is

24    we're going to have fights over whether this discovery

25    actually goes to this issue of fraud or whether it goes to

1    something bigger, you know, some other issue in the case.

2    Just think about plaintiff's deposition.  Are they only

3    going to get to ask him questions about the particular

4    fraud?  Are they going to get to ask him questions more

5    globally about what he was doing on July 16, 1999?

6              So I think the idea of structuring discovery is

7    not well taken given the nature of what they are asking

8    for.  To the extent that they are relying on expert

9    reports, we can address that during expert discovery

10   and --

11             THE COURT:  Well, let me ask you this, Ms. Horn.

12   You would acknowledge at least that whether it's for some

13   separate motion to dismiss the case or just for the case

14   overall, if they want to make some argument or develop an

15   argument that the document was forged in some way, that

16   that's something they should be able to try to pursue in

17   discovery.  Correct?

18             MS. HORN:  Absolutely, Your Honor.  We're

19   certainly not saying that they can't pursue this defense

20   in discovery and it sounds like in particular in expert

21   discovery.

22             What we're saying is that it doesn't make sense

23   to structure discovery around this issue that they have

24   come up with and alleged as an emergency.  These expert

25   reports were done in March of 2019.  That was actually

1    during the briefing on the motions to dismiss if they

2    thought that this was such an imperative issue to raise to

3    the Court.

4            So I think we can take this issue up in

5    discovery just as we would any other issue or defense that

6    they want to raise.

7            THE COURT:  Well, what I would like to do I

8    think is -- as I said, ordinarily, we would talk very soon

9    about a schedule and there's a standard schedule and the

10   parties often want to adjust the schedule.  It's not

11   unusual for parties in certain cases to try to put some

12   structure around the schedule.  Sometimes there's

13   threshold issues or otherwise.  That's not an unusual

14   issue.

15           The nature of this type of case is such that as

16   has been said, the discovery may be somewhat extensive.

17   But that cuts both ways.  On the one hand, some can be

18   avoided if there's a reason to just pull the plug on the

19   case overall.  At the same time, if there is no reason,

20   then that will just extend the life of the case for a

21   very, very long time on a case where the facts are already

22   quite old to start with.

23           And so what I would propose is that we -- first

24   off, I don't see any reason or I don't see how this motion

25   is even ripe until we know what the facts are and both

1   sides seem to agree that there is some need for discovery

2   for that.  So I would ask that the motion not be filed

3   until after sufficient discovery has been had, that both

4   sides recognize that this issue can be teed up.

5           I don't conclude that it has to wait until

6   trial.  There may be a reason once enough information has

7   been developed for a motion of some kind to be filed along

8   these lines.  But I also don't want to hold up the rest of

9   the case over that.  So what I would suggest is we move

10  into discovery, this be one of the issues that's the

11  subject of discovery.  And when enough information has

12  been developed on this issue that both sides feel that it

13  can be properly litigated, even if the plaintiff's

14  position is that it should wait until the trial, I think

15  certainly you can renew the letter at some point once you

16  have what you need to prove this issue if you think you

17  can prove it and then we'll set a schedule for that at

18  that point.

19          Now Ms. Horn points out the significant

20  likelihood that the parties would be fighting it out over

21  what's the sequence of discovery.  That naturally, the

22  defendants would want to focus only on these issues first

23  even if it's not ordered by the Court.  But just as a

24  practical matter, there is limited band width and both

25  sides want to focus on what they care about the most and

1    the plaintiffs will probably try to resist that.  So I see

2    that as a potential problem.

3              I would ask the parties though to meet and

4    confer and try to develop a schedule that would

5    accommodate the potential for this issue to be addressed

6    separately before trial.  And so I think what that would

7    mean is that discovery on these issues should not be put

8    to the end.  They should be handled relatively early in

9    the process.  But at the same time, there needs to be some

10   accommodation for the fact that this is an old case

11   factually even if it's only been filed a year ago and that

12   other aspects of discovery need to move forward.  And so

13   making sure that both tracks are fairly being pursued, I

14   think is the appropriate way to go.

15             Obviously, if there are expansive times

16   consuming parts of discovery that the parties can agree

17   should wait until the end which would normally be the case

18   in almost any case regardless of this issue, that might be

19   a way to help determine what happens earlier.  But I think

20   we should proceed on both fronts with the understanding

21   that at some point if the facts break out the way that the

22   defendants want to, that they would then potentially file

23   a motion before we get to the end of discovery if -- or

24   all discovery, ideally at the end of discovery on this

25   issue to make the arguments they want to make.

1          MR. NATHAN:  Your Honor, may I respond?

2          THE COURT:  Yes.  Just pull the microphone

3     closer to you.

4          MR. NATHAN:  If it's okay, I'm just going to

5     stand here.

6          First, just to address that not charge of delay,

7     but that comment of the delay.  The reports were from

8     March.  As Your Honor can imagine, when we first saw the

9     case, this was an issue we looked at and you noted that

10    right away.  You said didn't anyone look at that and

11    that's exactly what happened when we said this.  Let's

12    look -- when we first saw the case, we said let's look at

13    these documents.

14         At the same time, it's a serious allegation to

15    be making.  We understand that and we wanted to fully vet

16    it.  And we were preparing to file a motion today or

17    tomorrow.  And we remain prepared to file that motion and

18    we needed to include other evidence in order to establish

19    the basis for that motion.  We anticipated that some

20    discovery may be necessary and that's why we shared the

21    reports with counsel and wanted to discuss with them what

22    type of discovery would be necessary for the Court to

23    fully understand the entire picture in order to make a

24    ruling.  Given --

25         THE COURT:  Wouldn't this likely require some

1    live testimony?  If you're really going to get the case

2    dismissed, am I really going to just decide based on a

3    written report without live testimony from experts and

4    perhaps contemporaneous witnesses to these events?

5            MR. NATHAN:  You're correct, Your Honor.  The

6    way that we wanted to proceed and I think we should

7    proceed is we should file our motion which we've prepared

8    for and that will lay out the scope of our allegations

9    relating to this document.

10           We can listen to the plaintiff's experts to

11   rebut that.  We can have maybe one or two interrogatories

12   or requests for production relating to these issues alone.

13   Maybe -- we could discuss whether this is necessary --

14   maybe a 30-minute to 45-minute deposition of the plaintiff

15   relating to only this issue and the Court after seeing the

16   briefing and the attachments here could decide if it

17   needed to hear live evidence on this.  It's an important

18   enough issue where this man was --

19           THE COURT:  Why isn't the complaint an important

20   enough issue?  This isn't the only issue in the case.

21   That's all I'm saying is why are we hijacking the whole

22   case over one issue?

23           MR. NATHAN:  Certainly, the --

24           THE COURT:  Again an issue that if it really --

25   I mean it should have been discovered back in -- 15 years

1    ago.  I mean I'm not saying that you can't prove it.  I'm

2    just saying that given the history of this case, I'm not

3    sure this is the kind of thing that we drop everything to

4    address given all the reasons why this could have been

5    dealt with many years ago.

6              MR. DAVIS:  Yes, Your Honor.  I may be out of

7    order and you'll let me know.  But with your indulgence,

8    I'd like to address the Court.  And I understand if you'd

9    rather not, but this is very important.

10             THE COURT:  I think to have the City Solicitor

11   who's not seated at counsel table take an issue that

12   counsel is already pursuing -- let me ask you, Mr. Amato,

13   is it or Mr. Conroy?

14             MR. NATHAN:  It's Shneur Nathan, Your Honor.

15             THE COURT:  Okay.  I'm sorry.  You're not on my

16   list.  But in any event, do you represent the individual

17   defendants or do you represent the City or both?

18             MR. NATHAN:  I represent the individual

19   defendants, Your Honor.

20             THE COURT:  Well, I will let the City be heard

21   on this issue.  It's one counsel per matter.  And I think

22   Ms. Lynch has been representing the City up to this point.

23   I only want to hear from any attorney who has entered an

24   appearance in this case.  Who is going to be heard from

25   the City on this issue, anyone who has entered an

1  appearance in this case if the City wants to be heard?

2        MR. NATHAN:  Your Honor, may I confer with

3  Mr. Davis for a moment?

4        MR. DAVIS:  Never mind.  I don't want to hold

5  things up, judge, and I respect the Court's ruling.  Never

6  mind.

7        THE COURT:  So, Ms. Lynch, do you want to add

8  anything on this point or --

9        MR. DAVIS:  No, Kara.  No, Kara.

10        MS. LYNCH:  No, Your Honor.

11        MR. NATHAN:  Your Honor, may I add one more

12  thing?

13        THE COURT:  Yes.

14        MR. NATHAN:  Your Honor noted that why wasn't

15  this brought up sooner back in 2015, I just wanted to --

16  15 years ago and I wanted to correct just the factual

17  point.  This document that we allege was completely

18  forged, we are saying it was forged when Mr. Parks brought

19  it out much later.  That's not 15 years ago.  He is

20  saying -- the question -- it is strange that he --

21        THE COURT:  Wait.  Say that again.  When was it

22  forged?

23        MR. NATHAN:  It was forged at the time that he

24  attached it to his petition for writ of innocence saying I

25  suddenly found this document.

1          THE COURT:  Right.

2          MR. NATHAN:  And he says that he got it by

3   issuing a Freedom of Information Act request to the

4   circuit court and received it in a stack of documents

5   sitting in his cell together with other police reports

6   which he -- so he says I didn't notice it for some time.

7   I think he says the particulars are about a year or so and

8   I'm being a little bit loose on that fact.  "Until oh, I

9   notice, a-ha, I have a document that shows -- that ticks

10  every box in my writ of petition for innocence that I need

11  to file."  And now we have two experts that are saying

12  this document is a forgery.  This is --

13         THE COURT:  Again where were these experts when

14  the man was being released?

15         MR. NATHAN:  We were not a party to the case,

16  Your Honor.  We had no say in that.  We did not hear it.

17  We had no opportunity to look at it.

18         THE COURT:  Officer Mueller was basically being

19  accused of being part of some sort of misconduct, wasn't

20  he?

21         MR. NATHAN:  Officer Mueller was interviewed by

22  someone from the State's Attorney's Office, some

23  representative without counsel and all he said was -- they

24  said is this your signature and he said, yeah, it is

25  because it is.  It's an --

1          THE COURT:  Okay.  I think I've basically ruled

2     on this issue.  Okay.  I mean I've set a -- we haven't set

3     a firm schedule.  I've said that this issue can be dealt

4     with before trial when it's ripe when the discovery has

5     occurred.  If you file a motion now, you are going to have

6     to amend your brief at some point anyways to incorporate

7     either new facts you gain in discovery or at least to

8     address the facts that the plaintiff elicits on discovery.

9          So rather than getting into multiple rounds of

10    briefing, the first preliminary round and then the post

11    discovery round, I think it's wise to do this all in one

12    fell swoop.

13          MR. NATHAN:  I'm not rearguing it.  I understand

14    that, Your Honor.  But the other proposal that I was

15    saying is that we would file the motion and we could have

16    an evidentiary hearing on it and there would be one issue

17    for the Court to resolve.

18          And we strongly feel that that is the correct

19    course because it's -- based on a forged document, if we

20    are forced to defend this entire case with essentially

21    millions of dollars of costs and fees involved, there's no

22    reason to prejudice the City of Baltimore like that.

23          MS. HORN:  Your Honor, may I?

24          THE COURT:  Yes.

25          MS. HORN:  I think what counsel, Mr. Nathan has

1   said just highlights that this is an issue of fact

2   discovery and actually an issue of expert discovery

3   because what he said is we are relying on two expert

4   reports that indicate that this document is a fraud.  And

5   we've reviewed them and we'll save our differing views of

6   what those expert reports say and the validity of them for

7   another day.

8          But I think the concern that we have with going

9   down the road that he's suggesting is that he has hijacked

10  this case that was properly pled so that they can pursue

11  their defense.

12         And what I anticipate happening in discovery is

13  objections to discovery that we take fights over who goes

14  first or what issues go first.  And because this is going

15  to require us to hire our own expert and we don't have

16  access to this other evidence that he's talking about that

17  purportedly shows that this document is a fraud, my strong

18  recommendation would be that we conduct discovery the way

19  discovery is normally conducted.  They, of course, can do

20  discovery on their defense as they would any other

21  defense.  We get through expert discovery where we have

22  the opportunity with all of the documents, the live

23  testimony, other reports by this officer to hire our

24  expert to counter theirs and this Court can make a

25  determination of whether it's just an issue of fact for

1    the jury, which the more he talks, the more it sounds like

2    to us.

3              THE COURT:  Okay.  So I don't want to hear any

4    more on this.  I think I am where I was before, which is

5    that you file a motion.  The answer is going to be we

6    don't have enough information to defend this and they're

7    right and so it's premature.  If you want to file it, you

8    can.  But the likely ruling will be it's premature and it

9    will be denied without prejudice.  And the amount of

10   resources on both sides to deal with a premature motion in

11   the courts is really not worth it if you ask me.

12             I would -- as I said, we'll proceed to

13   discovery.  This is an issue if after discovery on this

14   issue, it can be fully briefed and argued and/or if we

15   need an evidentiary hearing, we can do that in advance of

16   trial.  I'm not going to agree with Ms. Horn that this is

17   something that has to go to trial to be resolved depending

18   on what is found.  You may have an expert who agrees or

19   disagrees with their position.  We just don't know at this

20   point.  I don't know at this point.  And so this is

21   something that will be part of discovery and it will be

22   something that should be towards the front end of

23   discovery.  My point just being as I am sensitive of the

24   idea of someone just hijacking this case.

25             So the parties have to agree on a schedule that

1      accommodates discovery on this issue and other issues and

2      you can debate and discuss which issues are priorities to

3      the plaintiff and this is obviously an issue of priority

4      to the defense and that's where the first round will

5      occur.  And I would ask the parties to propose a schedule

6      in terms of expert issues regarding this issue and

7      anything else that can be laid out in the schedule.

8      Obviously, if there are disputes which there may be, then

9      the schedule can be adjudicated.  But I'd ask the parties

10     to try to meet and try to reach an accommodation in the

11     first instance.

12             And then again once the materials are pulled

13     together, whether your expert has been appropriately

14     deposed and whether Ms. Horn finds an expert and you've

15     had a chance to vet that expert and if there's any other

16     fact evidence that needs to be had regarding this, once

17     that's all compiled, then it would make sense at that

18     point to file a motion for whatever result you think is

19     appropriate at that point and we can address it then again

20     short of in advance of trial.

21             So if you want to get these facts discovered

22     quickly, then you can propose a quick schedule.  But you

23     will also have to be willing to work to give some

24     discovery to the plaintiffs on their most important issues

25     in the same timeframe and maybe that's ideal for everybody

1    because I think we always want to move these cases as

2    quickly as possible.

3         So I think the way this usually works is I issue

4    a scheduling order.  I don't think I'm prepared at this

5    point to negotiate and adjudicate discovery schedule

6    issues.  So I'll issue that with the standard

7    instructions.  But rather than having a conference which

8    is what we usually do at this stage to iron out minor

9    differences in the schedule because this schedule will

10   require a little more tinkering and discussion and I would

11   likely ask the parties to submit a joint status report in

12   let's say 14 days out to either submit a proposed new

13   schedule or if for some reason that can't be agreed to,

14   then laying out what the issues are from a scheduling

15   standpoint and then we can go from there.  Anything else

16   on that or other issues?

17        MS. HORN:  Nothing from the plaintiff, Your

18   Honor.

19        MR. NATHAN:  Nothing from the individual

20   defendants.

21        THE COURT:  Okay.  Thank you very much.

22        (Proceedings concluded.)

23

24

25

1            <u>CERTIFICATE OF REPORTER</u>

2

3            I, Lisa K. Bankins, an Official Court Reporter

4    for the United States District Court for the District of

5    Maryland, do hereby certify that I reported, by machine

6    shorthand, in my official capacity, the proceedings had

7    and testimony adduced upon the motions hearing in the case

8    of the Garreth Parks versus Baltimore City Police

9    Department, et al., Civil Action Number TDC-18-03092, in

10   said court on the 6th day of September, 2019.

11           I further certify that the foregoing 104 pages

12   constitute the official transcript of said proceedings, as

13   taken from my machine shorthand notes, together with the

14   backup tape of said proceedings to the best of my ability.

15           In witness whereof, I have hereto subscribed my

16   name, this 24th day of September, 2019.

17

18

19                           Lisa K. Bankins

20                           Lisa K. Bankins
                             Official Court Reporter
21

22

23

24

25

**MR. DAHL: [43]**
3/24 5/20 6/9 7/13 7/17 8/24
10/2 10/8 11/7 11/14 11/24
12/1 12/8 12/12 12/15 12/18
12/25 13/6 13/10 13/25 14/24
15/5 15/10 15/16 15/19 15/23
16/6 16/11 17/24 39/15 61/10
61/13 62/3 62/9 62/15 62/19
63/8 63/15 63/25 64/24 65/1
**MR. DAVIS: [3]** 97/5 98/3
98/8
**MR. NATHAN: [26]** 4/11 85/15
85/19 86/23 87/11 87/20
87/23 88/3 88/6 88/21 89/10
94/25 95/3 96/4 96/22 97/13
97/17 98/1 98/10 98/13 98/22
99/1 99/14 99/20 100/12
104/18
**MS. HORN: [54]** 3/6 34/17
35/22 36/10 37/8 38/5 38/23
40/19 40/23 41/8 41/11 41/13
41/16 41/19 41/21 42/10
42/12 43/11 43/16 44/2 44/10
45/14 46/1 46/5 46/22 47/9
50/6 50/14 51/16 52/12 53/20
54/8 54/23 54/25 55/15 55/17
56/17 56/20 58/8 58/11 58/18
59/17 59/20 59/23 59/25
60/24 61/5 89/21 90/3 90/5
91/17 100/22 100/24 104/16
**MS. LYNCH: [57]** 4/8 6/3 6/5
18/9 18/13 18/19 18/22 18/24
19/1 19/11 19/20 21/8 21/20
21/23 22/7 22/20 23/1 23/3
23/7 23/14 23/23 24/1 24/6
24/10 24/15 24/25 25/2 25/16
26/4 26/21 26/24 27/9 27/20
30/7 31/17 31/21 32/14 32/22
33/3 33/7 34/5 65/4 65/8
65/17 66/3 66/6 66/10 66/13
66/17 66/22 67/5 67/11 67/16
67/18 68/4 69/23 98/9
**MS. ROCHE: [1]** 3/11
**MS. SPENCE: [1]** 3/9
**THE CLERK: [1]** 3/1
**THE COURT: [179]**

---

**'**

**'80s [1]** 54/21
**'90s [1]** 54/21

---

**0**

**03092 [2]** 1/3 105/9

---

**1**

**100 [2]** 1/17 1/21
**101 [2]** 1/21 72/10
**104 [1]** 105/11
**1122 [1]** 73/17
**12 [12]** 24/19 28/21 42/8
55/12 65/15 65/16 67/7 67/7
70/25 72/1 81/11 82/15
**1262 [1]** 81/6
**12675230 [1]** 82/7
**1303 [1]** 74/7
**14 [1]** 104/12
**15 [3]** 96/25 98/16 98/19
**16 [5]** 3/17 6/11 6/16 68/13
91/5
**16-year [1]** 34/19
**16-year-old [1]** 58/24
**17 [3]** 21/19 22/3 41/24
**18 [1]** 41/24
**1830 [1]** 1/24
**1867 [1]** 19/15
**188 [1]** 76/8
**19 [2]** 41/24 77/1
**197 [1]** 84/7

---

**1980's [1]** 19/24
**1983 [9]** 7/24 9/8 17/3 19/25
76/1 76/2 77/22 78/1 78/4
**1987 [1]** 72/5
**1988 [1]** 74/7
**1996 [2]** 72/11 79/20
**1997 [1]** 73/1
**1999 [5]** 6/16 29/22 31/10
75/25 91/5

---

**2**

**20 [1]** 5/15
**2000 [5]** 30/9 30/9 65/19
76/1 76/2
**2002 [4]** 20/10 21/17 76/8
81/6
**2007 [2]** 75/14 77/23
**2008 [1]** 73/18
**201 [1]** 65/18
**2010 [1]** 76/25
**2010's [1]** 54/22
**2011 [1]** 77/2
**2012 [2]** 20/17 64/7
**2014 [7]** 26/9 65/21 71/10
74/16 74/17 82/6 82/7
**2015 [10]** 13/2 20/17 41/2
56/25 57/8 57/10 76/15 77/13
80/15 98/15
**2016 [2]** 81/15 81/16
**2018 [6]** 13/19 18/15 33/17
66/7 76/2 84/8
**2019 [9]** 1/6 19/14 24/5
24/16 75/2 90/10 91/25
105/10 105/16
**20770 [1]** 2/3
**21202 [2]** 1/18 1/22
**23 [1]** 13/2
**239 [1]** 33/17
**23rd [1]** 13/19
**24th [1]** 105/16
**25 [1]** 24/4
**256 [1]** 73/1
**27 [1]** 7/2
**2D [1]** 20/8
**2nd [1]** 74/8

---

**3**

**30 [1]** 87/3
**30-minute [1]** 96/14
**30-year-old [1]** 14/20
**301 [1]** 62/20
**302 [1]** 76/7
**304 [2]** 16/23 80/9
**3092 [1]** 3/3
**30th [1]** 85/2
**311 [1]** 1/14
**32 [1]** 38/9
**33 [1]** 1/24
**331 [1]** 62/23
**334 [1]** 72/10
**3340656 [1]** 24/16
**345 [1]** 20/8
**384 [1]** 75/14

---

**4**

**4-331 [1]** 62/23
**40 [1]** 87/3
**410 [1]** 84/4
**410-545-6433 [1]** 8/17
**429-436 [1]** 79/20
**436 [1]** 79/20
**45-minute [1]** 96/14
**456 [1]** 72/4
**478 [1]** 77/22

---

**5**

**5-304 [2]** 16/23 80/9
**51-2 [1]** 7/1
**512 [1]** 20/8

---

**521 [1]** 65/19
**53 [1]** 38/13
**530 [1]** 17/11
**535 [1]** 20/12
**536 [1]** 71/10
**54 [1]** 38/13
**541 [1]** 74/7
**549 [1]** 75/14
**58-1 [2]** 41/11 41/12
**582 [1]** 84/8

---

**6**

**60603 [1]** 1/25
**60607 [1]** 1/15
**61 [1]** 28/16
**614 [1]** 76/24
**62 [1]** 28/16
**63-1 [1]** 40/20
**634 [1]** 77/23
**636 [1]** 64/7
**640 [3]** 18/15 19/2 23/2
**6433 [1]** 8/17
**649 [2]** 23/4 64/7
**6500 [1]** 2/2
**667 [1]** 74/8
**677 [1]** 76/25
**6th [1]** 105/10

---

**7**

**703 [1]** 64/7
**743 [1]** 20/12
**773 [1]** 71/10
**780 [1]** 84/4
**795975 [1]** 81/16

---

**8**

**8-301 [1]** 62/20
**80 [1]** 63/18
**808 [1]** 81/6
**81 [1]** 79/19
**822 [1]** 72/4
**859 [1]** 77/1
**888 [4]** 18/15 19/2 23/1 23/2

---

**9**

**917 [1]** 74/8
**944 [1]** 73/17
**949859 [1]** 74/16
**952 [1]** 73/1
**9:30 [1]** 1/7

---

**A**

**a-ha [1]** 99/9
**A.2nd [4]** 73/17 74/7 81/6
84/4
**A.3rd [2]** 77/1 84/8
**a.m [1]** 1/7
**abandoned [1]** 21/24
**Aberdeen [1]** 1/14
**ability [2]** 38/4 105/14
**able [6]** 4/21 30/10 34/11
70/2 84/13 91/16
**about [50]** 5/15 5/25 6/1 6/2
15/15 15/15 15/18 16/5 17/1
17/7 17/15 19/20 23/14 25/15
25/17 27/19 29/5 31/15 38/20
38/22 43/5 44/1 44/22 47/9
52/9 55/0 50/14 51/15 52/2
52/9 55/20 55/25 57/19 57/21
58/7 65/11 66/22 70/4 71/8
75/13 81/12 86/14 89/3 91/2
91/3 91/5 92/9 93/25 99/7
101/16
**above [3]** 8/17 24/18 41/1
**above-captioned [1]** 41/1
**absent [1]** 29/4
**absolute [1]** 8/8
**Absolutely [4]** 11/15 21/9
90/6 91/18

**A**

accept [2] 14/18 80/16
acceptance [2] 61/16 61/18
accepted [2] 63/16 78/1
accepting [1] 15/9
access [2] 81/17 101/16
accommodate [1] 94/5
accommodates [1] 103/1
accommodation [3] 51/5 94/10 103/10
accomplice [2] 14/24 76/10
accordingly [2] 76/11 77/8
accounts [1] 82/7
accrual [3] 14/7 15/2 77/13
accrue [2] 16/17 58/3
accrued [3] 16/16 50/18 76/15
accrues [6] 12/7 50/10 50/11 50/16 76/12 77/3
accurate [1] 88/20
accused [3] 14/18 87/16 99/19
ACKERMAN [1] 1/20
acknowledge [1] 91/12
acknowledged [3] 36/17 45/8 74/25
acknowledging [6] 32/10 45/10 45/11 45/13 46/4 46/6
acquitted [2] 55/22 56/2
act [12] 9/7 9/7 23/10 33/22 34/13 34/14 49/16 49/17 70/21 80/6 80/9 99/3
acted [1] 64/10
acting [6] 9/25 10/4 10/9 33/20 46/1 82/20
action [8] 6/15 34/8 50/10 50/11 50/24 56/10 69/12 105/9
actions [2] 9/11 64/9
actors [1] 82/21
acts [1] 9/6
actual [18] 7/1 7/22 14/21 17/10 31/23 35/25 38/15 39/20 40/17 43/1 43/3 56/23 61/24 62/13 62/21 70/19 75/21 77/19
actually [27] 11/11 17/12 18/25 21/4 21/10 29/6 29/16 39/5 40/9 40/15 40/20 40/24 47/19 49/5 49/21 49/25 51/5 52/3 52/19 58/3 61/24 75/18 80/19 88/19 90/25 91/25 101/2
adage [1] 45/25
add [4] 50/6 61/5 98/7 98/11
added [1] 51/20
additional [3] 5/18 46/20 72/12
address [12] 3/24 4/24 61/2 85/17 85/20 90/13 91/9 95/6 97/4 97/8 100/8 103/19
addressed [1] 94/5
addressing [1] 70/9
adduced [1] 105/7
adequately [1] 30/14
adjudicate [1] 104/5
adjudicated [1] 103/9
adjust [1] 92/10
adjusted [2] 72/18 72/18
admit [2] 26/1 67/2
admittedly [2] 19/22 26/2
adopt [2] 45/3 45/22
adopted [4] 10/22 40/9 43/2 43/23
adopts [1] 77/24
advance [3] 11/4 102/15 103/20
advantage [3] 35/21 78/3 78/18

affect [2] 56/19 67/21
affirmative [2] 65/24 71/13
after [14] 37/18 54/24 54/25 54/7 54/10 54/12 55/21 76/17 85/23 86/23 90/7 93/3 96/15 102/13
again [29] 15/9 19/1 20/17 22/7 22/11 22/16 22/17 23/1 26/16 27/6 30/22 31/13 39/24 41/19 54/14 62/19 67/2 67/20 77/12 84/18 86/17 86/21 87/13 89/3 96/24 98/21 99/13 103/12 103/19
against [10] 6/20 16/23 33/19 34/15 44/16 51/14 56/3 57/25 83/21 84/11
agency [16] 19/9 19/15 19/18 21/13 21/15 22/10 25/21 26/13 48/15 49/13 49/15 49/24 68/23 69/5 71/6 74/5
ago [6] 21/19 94/11 97/1 97/5 98/16 98/19
agree [13] 22/11 22/16 30/19 32/16 43/7 44/17 49/1 61/23 90/1 93/1 94/16 102/16 102/25
agreed [2] 36/7 104/13
agreeing [1] 42/22
agreement [1] 32/13
agrees [1] 102/18
ahead [4] 6/8 21/14 40/23 55/17
al [3] 1/6 3/4 105/9
Alderman [4] 48/3 49/5 72/25 73/2
ALEXA [1] 1/20
all [49] 4/7 5/12 16/20 16/25 17/21 25/13 26/3 26/4 27/23 29/19 31/13 34/21 35/7 35/22 36/6 36/25 41/3 42/23 45/18 46/10 47/12 49/9 50/20 69/2 69/20 70/10 72/19 73/22 79/12 80/6 84/19 84/22 86/16 88/11 88/24 88/25 90/6 94/24 96/21 97/4 99/23 100/11 101/22 103/17
allegation [9] 7/2 7/4 16/21 16/22 29/8 55/23 60/14 83/17 95/14
allegations [20] 17/7 29/5 38/3 38/4 38/7 38/18 44/24 45/6 48/13 53/7 53/10 53/22 77/18 81/22 81/25 82/11 83/2 83/11 83/13 96/8
allege [2] 28/10 98/17
alleged [13] 8/21 14/21 43/24 44/8 51/4 54/19 64/8 64/16 79/4 82/3 82/25 84/6 91/24
allegedly [1] 76/13
alleges [1] 80/13
alleging [2] 59/2 90/17
allowing [1] 11/1
almost [1] 94/18
alone [3] 29/25 46/1 96/12
along [5] 34/21 35/20 76/16 77/11 93/7
already [6] 51/12 79/20 80/24 89/14 92/21 97/12
also [33] 4/14 4/18 4/20 8/21 13/3 17/6 27/11 28/16 30/4 30/12 32/12 38/15 40/6 48/12 51/17 52/15 56/7 57/20 69/15 70/10 70/20 73/7 74/7 81/7 82/14 83/8 83/24 85/1 86/12 88/1 89/17 93/8 103/23
alter [1] 64/17
alternate [1] 45/17

alternative [4] 37/6 45/21 62/24 83/15
although [9] 20/4 22/17 45/9 48/8 69/2 70/1 71/8 75/17 79/10
always [3] 14/13 21/25 104/1
am [7] 3/16 5/15 19/11 70/12 96/2 102/4 102/23
AMATO [2] 1/20 97/12
ambiguous [1] 32/7
amend [4] 34/4 64/4 64/23 100/6
amended [1] 83/18
Amendment [41] 6/2 18/4 18/11 18/19 18/20 18/22 19/10 20/13 22/10 22/18 22/21 23/6 23/12 23/14 24/20 24/25 25/4 25/7 25/7 25/16 25/18 26/12 27/17 47/8 48/4 48/24 49/23 65/10 65/14 66/13 66/17 66/19 67/1 67/16 68/6 71/5 71/8 72/6 72/23 74/15 74/21
among [1] 6/13
amount [1] 102/9
analogous [1] 23/15
analogy [1] 61/1
analysis [14] 19/7 23/15 25/7 27/11 47/20 67/10 67/21 68/9 71/21 72/1 72/8 74/18 76/5 84/7
analyze [2] 47/24 50/1
analyzed [1] 76/17
and/or [3] 7/16 19/24 102/14
Anderson [1] 20/23
Andrews [1] 65/18
animate [1] 58/2
anomaly [1] 49/13
another [13] 4/20 20/4 20/6 21/7 24/2 32/6 45/1 64/8 65/13 70/20 76/9 82/5 101/7
answer [2] 62/14 102/5
anticipate [2] 86/2 101/12
anticipated [1] 95/19
any [38] 5/2 8/2 13/23 14/5 16/24 21/13 22/5 22/23 23/21 23/22 29/4 43/4 43/18 44/6 47/20 50/3 61/5 61/9 61/10 67/10 68/12 69/21 71/21 72/17 72/20 73/5 73/23 78/17 83/11 89/24 92/5 92/24 94/18 97/16 97/23 101/20 102/3 103/15
anybody [1] 19/19
anyone [3] 68/12 95/10 97/25
anything [13] 23/11 30/4 30/11 46/5 46/7 59/9 60/23 61/4 62/1 65/4 98/8 103/7 104/15
anyways [3] 25/13 36/10 100/6
apologize [2] 23/24 37/11
App [1] 33/17
apparently [1] 6/20
Appeals [4] 33/15 74/3 74/8 84/8
appear [1] 78/22
appearance [2] 97/24 98/1
APPEARANCES [1] 1/11
appears [1] 19/5
application [2] 14/14 49/21
applied [1] 35/9
applies [4] 17/20 22/10 61/1 77/23
apply [7] 11/17 12/23 33/10 35/7 40/8 73/21 75/11
applying [1] 75/9
appoints [2] 48/17 73/9

## A

apprises [1] 118/21
approach [1] 78/19
appropriate [2] 94/14 103/19
appropriately [1] 103/13
approximately [1] 17/23
are [128]
areas [3] 29/2 68/15 73/12
aren't [4] 45/16 49/12 50/15 52/6
Arena [1] 27/15
arguably [1] 72/18
argue [6] 10/16 51/17 61/17 75/5 86/19 87/13
argued [12] 10/24 14/2 14/3 39/14 39/17 39/18 47/13 50/11 61/16 64/3 75/8 102/14
argues [1] 82/24
arguing [9] 11/21 11/23 13/23 16/5 53/18 75/3 77/16 79/16 83/14
argument [62] 4/19 5/2 9/15 10/1 11/9 12/16 9/16 16/13 18/6 21/19 21/25 22/20 23/11 23/20 25/11 25/15 25/17 26/20 27/19 32/13 32/17 32/19 36/9 37/5 37/6 38/5 39/7 40/14 43/16 44/12 44/12 44/19 45/20 46/8 47/8 49/6 50/2 50/19 51/21 52/10 52/12 59/9 59/17 63/7 63/9 63/11 63/25 65/10 69/7 70/12 77/15 78/22 79/1 79/14 79/18 80/18 81/1 83/5 83/23 85/10 91/14 91/15
arguments [12] 4/18 18/1 26/7 31/6 31/6 35/2 39/7 43/3 47/12 73/12 81/11 94/25
arises [2] 6/15 14/14
arose [1] 52/24
around [6] 9/16 38/8 67/24 89/14 91/23 92/12
arraignment [1] 12/22
arrest [16] 12/14 12/18 12/20 12/23 13/9 15/15 29/2 29/3 54/4 54/4 58/6 58/8 58/10 58/21 75/15 75/19
arrested [2] 34/20 75/25
as [135]
aside [1] 32/25
ask [21] 3/23 5/7 5/11 18/3 21/16 32/8 44/1 45/4 50/5 85/4 85/12 91/3 91/4 91/11 93/2 94/3 97/12 102/11 103/5 103/9 104/11
asked [4] 3/20 19/7 55/5 65/11
asking [8] 9/24 34/2 34/5 39/6 39/8 45/2 89/6 91/7
aspects [1] 94/12
assembly [3] 21/11 26/17 68/7
assert [1] 22/4
asserted [3] 71/6 77/20 84/18
assertedly [1] 64/14
assertion [3] 61/23 83/25 89/24
assessment [1] 43/7
assign [1] 84/10
assignment [1] 84/14
Assistant [3] 61/19 63/19 63/20
assume [1] 42/23
assumed [1] 19/8
assuming [2] 8/14 78/7
attached [8] 6/25 13/4 41/3 42/3 44/21 70/15 80/13 98/24
attaching [1] 86/2

## B

attachments [2] 70/24 96/16
attack [6] 13/14 57/3 57/15 57/21 57/22 57/23
attempting [1] 10/16
attention [1] 24/17
attorney [9] 8/16 26/11 26/12 27/2 41/20 61/20 63/19 63/20 97/23
Attorney's [2] 30/24 99/22
attorneys [1] 67/13
August [1] 85/2
August 30th [1] 85/2
authenticate [1] 88/25
authenticated [3] 41/6 42/5 42/6
authenticity [1] 8/14
authorize [2] 34/14 48/19
authorized [1] 82/21
autonomous [1] 74/2
autonomy [5] 25/21 48/7 48/22 72/13 73/8
avoided [1] 92/18
avoiding [3] 57/22 57/22 57/23
aware [5] 6/15 12/4 35/6 86/7 86/25
away [1] 95/10

## B

back [3] 69/16 96/25 98/15
backup [1] 105/14
bad [11] 7/13 7/16 9/25 10/5 10/10 64/8 78/5 78/9 78/25 79/1 79/7
Baker [2] 1/16 3/16
balance [2] 7/10 18/1
balancing [2] 14/13 14/14
BALTIMORE [61] 1/6 1/18 1/19 1/22 3/3 4/10 6/6 6/12 7/22 10/5 10/24 16/2 20/7 26/13 26/15 27/12 27/13 27/13 33/2 33/22 34/11 42/2 47/18 48/10 48/14 48/16 48/19 49/4 49/5 51/19 63/12 63/14 68/13 68/15 68/16 68/23 71/3 71/5 72/22 72/25 73/2 73/4 73/6 73/7 73/9 73/10 73/16 73/18 74/6 74/9 74/14 74/16 74/20 80/14 81/15 81/15 82/6 84/3 87/25 100/22 105/8
band [1] 93/24
Bankins [4] 2/1 105/3 105/19 105/20
Banks [3] 37/14 37/21 37/22
bar [7] 13/12 13/13 14/3 18/17 24/23 44/9 56/6
bare [1] 29/4
barred [5] 13/19 32/11 57/1 58/21 82/18
Barry [1] 4/3
bars [1] 56/7
based [29] 7/24 11/24 12/3 12/6 19/23 58/6 61/19 64/8 70/11 70/19 71/7 72/21 73/19 75/4 76/3 77/5 78/20 78/25 79/8 82/11 82/13 85/3 85/7 85/10 86/8 86/9 87/8 96/2 100/19
basic [1] 39/23
basically [11] 19/8 21/7 22/8 22/15 35/17 45/3 56/5 59/13 67/22 99/18 100/1
basis [6] 8/22 58/18 79/6 79/13 85/5 95/19
BCPD [1] 74/5
be [137]

## C

bearing [1] 9/21
became [2] 12/20 13/19
because [69] 6/5 10/21 11/7 14/4 16/17 19/8 19/25 21/17 22/9 27/23 30/20 30/25 32/9 32/24 33/11 33/13 33/21 34/11 35/9 36/11 37/17 39/12 43/2 44/13 44/24 46/16 47/4 49/6 49/24 49/25 50/20 51/8 51/11 51/21 51/24 53/17 56/18 57/1 57/15 58/21 60/15 62/16 63/3 63/10 63/18 64/20 67/3 67/10 67/21 69/11 70/10 70/10 70/20 71/2 77/19 78/4 79/19 81/1 83/21 85/18 86/24 89/1 89/18 99/25 100/19 101/3 101/14 104/1 104/9
becomes [1] 75/23
been [51] 8/5 8/7 8/20 8/20 9/9 9/20 14/18 14/21 19/10 20/3 21/25 24/13 24/13 29/22 30/10 30/24 31/8 36/8 36/24 37/7 42/15 43/8 47/25 49/12 51/5 51/7 53/9 53/19 57/13 62/22 63/2 63/16 65/13 70/6 70/11 71/14 71/15 72/17 74/20 77/8 82/25 84/18 92/16 93/3 93/7 93/12 94/11 96/25 97/4 97/22 103/13
before [24] 1/9 3/2 7/22 10/5 10/23 13/16 35/20 50/10 51/6 63/3 63/4 63/12 63/13 66/6 76/17 77/9 80/18 82/14 84/10 90/3 94/6 94/23 100/4 102/4
began [1] 56/25
begin [1] 56/2
beginning [1] 76/1
begins [3] 11/14 25/6 75/11
behalf [5] 3/8 3/11 3/13 4/10 4/18
behavior [1] 82/8
behind [1] 3/17
being [20] 14/6 14/17 17/8 20/1 21/7 23/25 25/20 25/20 40/17 45/4 57/16 77/10 79/2 89/17 94/13 99/8 99/14 99/18 99/19 102/23
belief [1] 87/6
believe [22] 4/9 18/23 20/6 22/22 23/4 23/11 32/12 32/25 33/10 38/6 40/21 41/9 54/5 54/9 58/19 61/1 61/7 69/18 70/10 84/22 86/1 88/7
believes [2] 37/6 41/7
best [2] 25/13 105/14
better [1] 29/9
between [6] 20/24 44/25 48/9 55/9 57/24 75/15
beyond [3] 8/17 73/13 75/18
bigger [1] 91/1
bill [1] 68/24
bit [3] 32/7 89/19 99/8
Blades [1] 74/7
Blane [3] 3/18 3/22 3/25
bones [1] 29/4
borrow [1] 15/1
both [19] 5/13 16/11 16/20 18/8 19/14 52/13 74/22 76/22 76/22 86/21 92/17 92/25 93/3 93/12 93/24 94/13 94/20 97/17 102/10
bottom [1] 8/15
box [1] 99/10
BPD [14] 19/14 19/24 19/25 20/25 33/1 33/13 33/25 44/16 44/25 48/23 49/12 49/22 69/5 83/4
BPD's [1] 48/4

**B**

**Brady [14]** 7/23 7/23 29/1
30/25 31/5 36/11 36/15 37/19
37/16 37/20 37/21 37/21 40/3
52/14
**Brady-based [1]** 7/24
**brand [2]** 24/10 24/11
**break [1]** 94/21
**breaks [1]** 64/19
**Brian [2]** 4/3 4/4
**brief [11]** 5/9 18/5 21/20
22/15 33/16 44/13 45/3 70/2
79/13 85/25 100/6
**briefed [1]** 102/14
**briefing [4]** 25/11 92/1
96/16 100/10
**briefly [1]** 47/7
**briefs [1]** 26/9
**bring [9]** 13/18 22/2 22/11
33/12 56/10 56/23 57/4 57/6
60/10
**bringing [3]** 34/10 56/7 56/8
**brings [1]** 27/2
**Briscoe [1]** 17/3
**broader [2]** 37/5 81/11
**broadly [1]** 65/8
**broken [1]** 39/19
**brought [11]** 6/19 13/16
13/17 14/17 25/8 34/8 57/14
59/5 77/9 98/15 98/18
**Brown [1]** 77/22
**budget [1]** 48/18
**Buie [1]** 4/4
**burden [2]** 34/4 71/14
**Burgess [7]** 11/2 38/10 42/15
42/20 51/18 60/6 81/14
**Burgess' [1]** 38/8
**buried [1]** 7/3
**bury [1]** 30/17
**burying [2]** 30/19 69/19
**bystander [3]** 14/25 76/9
76/13

**C**

**called [4]** 6/24 32/5 68/25
88/8
**calling [1]** 37/10
**calls [1]** 37/21
**Calvert [1]** 17/14
**came [1]** 16/13
**can [53]** 3/23 21/16 22/23
23/21 25/4 27/17 27/24 32/8
34/9 35/15 38/3 39/1 45/22
46/15 47/3 47/17 48/20 53/14
60/23 61/22 68/21 75/9 78/5
83/18 84/6 84/11 86/19 89/13
89/15 91/9 92/4 92/17 93/4
93/13 93/15 93/17 94/16 95/8
96/10 96/11 100/3 101/10
101/19 101/24 102/8 102/14
102/15 103/2 103/7 103/9
103/19 103/22 104/15
**can't [14]** 13/18 17/11 43/22
47/4 47/14 57/5 57/13 57/13
69/11 79/18 90/19 91/19 97/1
104/13
**candid [1]** 22/12
**candidly [1]** 23/17
**candor [1]** 45/16
**Canton [1]** 29/7
**capacity [1]** 105/6
**Capital [1]** 72/3
**captioned [1]** 41/1
**care [1]** 93/25
**carefully [1]** 41/23
**Carew [3]** 3/18 3/22 3/25
**Carolina [2]** 20/11 71/9
**case [143]**
**cases [27]** 19/4 20/4 20/18

22/7 22/13 27/2 28/22 28/24
28/24 29/1 30/25 31/1 47/16
47/23 50/5 50/7 52/23 54/8
54/16 55/2 55/4 55/8 70/8
74/17 87/3 92/1 104/1
**cast [1]** 42/19
**causal [1]** 64/19
**causation [1]** 9/9
**cause [11]** 16/23 29/3 56/10
58/8 58/20 58/22 60/14 60/15
69/11 75/8 80/11
**caused [5]** 28/3 28/14 28/18
29/13 30/17
**causes [1]** 50/24
**causing [1]** 29/24
**cell [1]** 99/5
**centered [1]** 9/16
**central [2]** 10/13 20/12
**cert [1]** 12/10
**certain [2]** 15/10 92/11
**certainly [18]** 18/10 22/5
25/10 35/24 39/1 39/20 46/3
46/6 48/10 49/12 50/15 52/25
54/11 76/17 85/13 91/19
93/15 96/23
**CERTIFICATE [1]** 105/1
**certify [2]** 105/5 105/11
**chain [1]** 64/19
**challenge [4]** 13/13 56/11
59/12 61/18
**Chalmers [2]** 9/5 64/7
**chance [3]** 68/21 68/22
103/15
**change [2]** 30/3 80/20
**changed [5]** 20/10 21/17
21/19 35/18 35/20
**changes [1]** 75/1
**characterization [3]** 7/20
19/13 61/15
**characterize [1]** 79/3
**charge [1]** 95/6
**charges [3]** 6/18 51/14 57/10
**Cherkes [2]** 33/2 84/4
**Cherrywood [1]** 2/2
**Chicago [2]** 1/15 1/25
**chief [2]** 19/23 34/10
**choice [2]** 28/15 57/24
**chose [1]** 30/3
**CHRISTOPHER [3]** 1/16 3/16
5/22
**CHUANG [1]** 1/9
**circuit [39]** 7/22 8/6 8/8
9/5 10/5 10/11 10/12 10/14
10/16 10/24 18/15 18/16 19/7
20/17 26/9 53/10 55/6 55/7
61/15 63/12 63/13 64/11
65/13 65/19 65/22 66/24
71/10 71/15 71/17 72/5 72/7
72/11 76/8 76/8 76/25 77/23
78/4 79/20 99/4
**circuit's [2]** 24/21 64/21
**circumstances [3]** 8/24 46/13
79/5
**citation [2]** 24/7 24/15
**cite [7]** 23/4 24/6 28/24
47/18 64/6 64/7 67/15
**cited [14]** 14/5 14/9 14/11
19/4 20/5 20/23 24/1 26/9
33/16 40/13 47/12 48/3 51/1
66/8
**citizens [3]** 25/9 27/13 49/4
**city [63]** 1/19 7/23 10/5
10/24 11/22 16/2 17/23 19/24
19/25 20/25 21/6 26/2 26/16
27/12 27/13 32/12 48/5 48/9
48/11 48/16 48/17 48/21 49/3
49/4 63/12 63/14 68/12 68/15
68/16 68/23 71/3 71/3 71/5
72/22 72/25 73/3 73/4 73/6

73/7 73/9 73/10 73/13 73/16
73/18 74/2 74/6 74/10 74/14
74/15 79/25 79/25 80/9 80/14
80/14 81/15 82/6 97/10 97/17
97/20 97/22 97/25 98/1
100/22 105/8
**civil [7]** 1/3 3/3 36/16
36/18 57/19 57/24 105/9
**civilly [1]** 57/15
**CJP [1]** 16/23
**claim [69]** 6/1 9/20 12/6
13/9 13/16 13/18 13/20 14/3
14/6 14/8 14/20 15/13 17/3
27/21 28/1 32/24 33/9 33/11
33/25 44/24 45/23 46/12
46/15 48/5 50/16 50/17 50/20
51/10 52/20 53/2 55/14 55/15
55/16 56/1 56/23 57/6 57/14
57/24 58/2 58/5 58/21 59/5
60/9 60/10 60/13 60/18 60/20
65/15 75/17 75/19 75/20
75/23 76/2 76/6 76/11 76/17
76/18 76/24 77/3 77/4 77/5
77/8 80/10 82/16 83/21 84/10
84/11 84/17 84/20
**claimed [1]** 29/1
**claiming [1]** 58/10
**claims [38]** 7/11 7/24 12/24
14/17 17/19 17/19 17/21
32/11 32/25 33/2 33/22 34/13
34/14 47/14 49/16 50/12
51/25 52/23 70/21 71/2 73/21
74/22 75/15 75/16 76/14 78/9
79/11 79/12 80/5 80/7 80/7
80/22 81/12 82/18 83/8 83/19
83/21 84/2
**Clark [2]** 73/17 74/13
**classification [4]** 25/22
25/23 69/5 74/5
**classified [2]** 49/11 68/19
**Clea [1]** 74/6
**clear [12]** 8/12 9/6 10/3
11/16 33/15 45/9 58/9 65/21
65/23 78/5 79/13 84/9
**clearly [3]** 11/17 27/6 80/2
**client [4]** 58/25 60/7 60/10
60/17
**client's [1]** 58/4
**clients [2]** 46/5 46/7
**clock [1]** 11/14
**closer [3]** 75/19 85/19 95/3
**coerce [1]** 30/18
**coincidence [1]** 23/17
**collaborate [1]** 48/18
**collateral [1]** 57/23
**collaterally [2]** 57/16 57/20
**collective [1]** 7/4
**collectively [3]** 5/12 5/13
6/13
**Collins [1]** 8/9
**colluding [2]** 8/20 45/7
**collusion [2]** 8/23 9/2
**come [10]** 12/10 27/12 38/4
67/1 68/1 88/21 88/23 89/16
90/11 91/24
**comes [2]** 55/8 87/17
**coming [4]** 11/13 67/14 73/8
90/21
**comment [1]** 95/7
**Commission [1]** 72/4
**commissioner [7]** 21/12 21/14
26/17 48/18 48/20 68/8 73/9
**commit [1]** 34/25
**committed [1]** 36/12
**comparable [1]** 14/24
**compelling [1]** 17/15
**competent [1]** 46/17
**competing [1]** 70/8
**compiled [1]** 103/17

## C

complaints [31] 19.6/10 24/6
28/1 28/8 29/15 29/19 29/21
31/1 31/13 32/2 34/4 34/7
37/24 44/7 44/21 45/4 45/5
45/9 45/16 69/11 70/22 70/23
75/19 79/8 80/13 83/1 83/7
83/17 86/7 86/12 96/19
complete [1]   56/10
completed [1]   77/7
completely [7]   22/8 49/15
57/5 59/6 71/16 79/4 98/17
complexities [1]   27/23
compliance [7]   50/20 51/18
51/24 52/2 52/7 81/4 81/5
comply [1]   80/8
conceal [1]   64/11
conceded [3]   48/5 73/6 74/25
concept [1]   82/24
concern [4]   55/1 57/22 69/2
101/8
concerned [2]   86/18 89/3
concerns [6]   25/22 26/8 49/1
57/21 58/1 72/15
concerts [1]   27/14
concession [1]   62/25
conclude [4]   17/5 72/22 79/6
93/5
concluded [2]   17/16 104/22
concludes [1]   74/19
Concluding [1]   64/16
conclusion [4]   22/9 49/22
69/4 83/12
concurrence [1]   8/10
condemnation [4]   31/5 31/8
31/14 31/19
conditional [1]   13/15
conditions [1]   34/12
conduct [6]   9/20 47/20 80/22
86/3 86/4 101/18
conducted [3]   41/5 41/25
101/19
confer [3]   90/8 94/4 98/2
conference [1]   104/7
conferred [1]   85/23
confessed [1]   34/22
confession [1]   58/7
confident [1]   27/4
confusion [1]   48/9
conjunctive [1]   35/8
connected [1]   20/1
connection [4]   20/24 21/2
30/16 48/9
Connick [6]   28/7 28/16 30/22
52/22 52/23 69/16
CONROY [2]   1/21 97/13
consider [6]   25/19 70/17
70/18 70/21 71/24 74/22
consideration [5]   40/16
62/11 63/23 65/2 72/21
considered [2]   49/17 74/12
considering [2]   70/24 71/22
consistent [2]   66/2 78/11
conspiracies [1]   45/25
conspiracy [21]   44/1 44/8
44/15 44/24 44/25 44/25
45/10 45/17 46/15 47/3 64/4
64/17 64/22 82/18 82/19
82/22 83/1 83/2 83/13 83/17
83/19
conspire [1]   45/19
conspired [1]   64/14
conspiring [1]   45/7
constitute [2]   82/21 105/12
constitutes [1]   80/17
constitution [1]   68/10
constitutional [11]   28/4
28/14 28/19 29/10 29/13
29/20 29/23 29/24 30/3 30/20

73/21
constructive [2]   31/23 51/6
consume [1]   37/25
Consumer [1]   23/9
consuming [1]   94/16
contact [1]   8/16
contemplate [1]   16/23
contemporaneous [1]   96/4
content [1]   81/7
contention [1]   78/10
contents [1]   88/20
contest [2]   43/10 89/24
contested [3]   25/25 32/25
33/4
context [3]   36/19 67/23 74/4
continues [1]   25/9
contours [1]   86/20
contradicting [1]   59/15
contrarily [1]   10/10
contrary [5]   9/13 10/17
35/16 64/12 83/10
control [3]   73/8 74/2 74/2
controlling [2]   22/6 74/6
controls [2]   48/14 53/5
convicted [5]   6/17 34/24
63/18 81/19 87/15
conviction [19]   8/22 9/17
9/23 13/15 13/17 13/18 36/22
54/13 56/7 56/20 57/3 57/9
59/16 77/5 77/7 77/9 78/13
86/8 88/18
convictions [2]   11/12 54/21
convince [1]   9/17
corporate [1]   83/1
correct [12]   15/16 31/24
43/11 43/12 43/17 54/24 62/3
63/8 91/17 96/5 98/16 100/18
corrupt [1]   10/25
Costley [4]   8/15 8/18 39/9
39/22
costly [1]   87/5
costs [1]   100/21
could [27]   13/16 13/17 16/22
19/24 24/17 29/9 35/21 37/7
38/25 44/14 46/24 51/24 59/5
62/22 63/1 63/6 64/4 72/18
77/8 78/20 82/24 87/4 89/8
96/13 96/16 97/4 100/15
couldn't [5]   4/25 30/24
36/24 51/8 57/4
Council [3]   48/21 73/16
74/16
counsel [18]   3/5 3/23 4/7
4/8 39/14 39/17 49/18 52/17
52/22 54/5 55/2 60/12 95/21
97/11 97/12 97/21 99/23
100/25
count [27]   11/16 11/17 11/18
11/24 12/2 12/2 12/14 13/10
13/11 14/1 14/2 14/2 14/4
16/13 16/14 32/23 44/25 47/3
55/18 75/7 76/3 76/6 76/20
76/21 77/14 83/21 84/21
counter [1]   100/24
counts [14]   12/3 13/23 13/24
16/14 16/21 32/20 44/2 64/22
75/3 75/5 75/11 76/5 77/11
84/24
County [5]   24/3 26/23 27/3
76/7 77/1
course [5]   28/17 35/20 72/18
100/19 101/19
courses [1]   35/19
court [141]
court's [9]   13/3 20/18 24/17
51/2 59/15 61/16 64/2 79/14
98/5
courthouse [1]   17/14
courts [5]   19/23 37/18 71/15

74/12 102/11
cover [2]   30/7 30/8
coverage [2]   11/18 11/19
covers [2]   58/15 84/22
created [4]   42/17 49/10
49/13 60/8
credence [2]   40/15 47/1
credible [1]   87/7
crime [8]   7/4 7/6 8/7 10/14
34/24 34/25 50/22 58/24
criminal [14]   8/13 15/2
34/23 36/3 49/7 56/3 56/9
56/11 57/3 57/6 57/11 57/20
59/14 60/8
criterion [1]   78/3
criterior [1]   77/24
crooked [1]   17/15
crux [2]   77/4 77/5
crystal [2]   65/21 65/23
Cunningham [4]   18/14 66/10
66/22 66/24
current [1]   6/11
custody [1]   60/13
custom [1]   82/10
cut [3]   9/7 49/2 49/25
cuts [2]   48/23 92/17

## D

DAHL [15]   1/16 3/16 3/20
4/13 5/22 6/9 32/10 32/13
32/16 35/14 36/7 36/17 38/24
39/6 65/6
Dahl's [1]   32/18
date [16]   11/14 12/7 12/17
12/18 12/19 12/20 12/21 13/1
13/3 15/10 16/18 16/18 75/10
75/11 77/2 77/13
Daubert [1]   90/17
Davis [2]   67/23 98/3
Daw [1]   65/18
day [4]   52/1 101/7 105/10
105/16
days [1]   104/12
de [1]   34/4
de-burden [1]   34/4
deal [2]   89/18 102/10
dealt [2]   97/5 100/3
Dean [2]   3/19 4/1
debate [1]   103/2
decades [2]   21/1 54/12
deceased [1]   6/12
decide [5]   23/21 23/22 55/24
96/2 96/16
decided [6]   22/14 24/4 26/9
28/23 32/16 66/18
decision [2]   20/6 64/18
67/21
decisions [3]   19/14 20/2
20/9
decline [1]   61/2
deemed [2]   81/4 82/25
deep [1]   47/23
defend [3]   84/3 100/20 102/6
defendant [11]   8/13 33/24
45/12 46/19 56/3 66/21 67/1
79/23 81/9 87/24 88/1
defendant's [5]   44/19 44/21
45/3 45/22 46/18
defendants [36]   1/7 1/16
3/18 4/13 4/18 5/8 5/13 5/23
6/14 34/21 35/2 35/4 40/13
43/22 44/4 44/13 47/2 51/1
51/16 51/20 61/7 74/23 74/25
76/13 76/21 76/22 77/16
79/12 80/6 83/22 83/23 93/22
94/22 97/17 97/19 104/20
defendants' [2]   40/21 80/25
defense [12]   24/22 42/19
63/10 65/24 71/13 85/12

## D

**defense [6]** 19/21 19/24 79/19
101/11 101/20 101/21 103/4
**deferred [1]** 14/7
**deficit [2]** 28/18 29/24
**definition [1]** 69/9
**degree [2]** 18/5 72/13
**delay [2]** 95/6 95/7
**delegate [1]** 68/11
**deliberate [4]** 28/3 31/7
32/1 53/3
**deliberately [1]** 30/1
**demonstrating [1]** 71/14
**denied [5]** 51/5 76/20 77/14
80/3 102/9
**deny [2]** 81/13 84/21
**department [50]** 1/6 1/19 3/4
4/10 4/19 6/7 6/12 11/22
20/8 21/5 21/15 21/22 24/4
26/14 26/21 27/3 27/9 33/2
34/12 40/2 44/5 47/19 48/10
48/14 48/17 51/19 51/24
68/14 68/16 68/19 68/23 71/3
71/6 71/13 72/22 73/1 73/3
73/7 73/19 74/1 74/10 74/14
74/21 81/15 82/6 83/14 84/4
84/11 87/25 105/9
**Department's [2]** 33/22 73/10
**departments [2]** 48/19 49/9
**depending [2]** 16/12 102/17
**deposed [1]** 103/14
**deposition [2]** 91/2 96/14
**depositions [1]** 87/4
**deprived [1]** 79/22
**describe [2]** 37/16 48/15
**described [1]** 38/7
**describing [1]** 38/19
**designation [1]** 73/24
**destroy [1]** 30/17
**destroying [1]** 69/19
**detail [2]** 44/8 62/2
**detain [1]** 56/22
**detective [4]** 87/16 87/19
88/2 88/12
**detention [16]** 11/19 15/12
55/16 56/17 56/24 56/25 57/2
57/14 58/6 58/11 58/12 60/11
60/13 75/7 75/17 75/21
**determination [5]** 39/15 43/5
44/22 79/24 101/25
**determinative [1]** 72/12
**determine [2]** 77/2 94/19
**detrimental [1]** 9/20
**develop [5]** 46/22 46/24
85/11 91/14 94/4
**developed [2]** 93/7 93/12
**dictates [1]** 82/19
**did [19]** 9/2 17/12 19/6
20/25 22/4 22/13 26/10 34/24
53/7 58/3 59/9 60/7 61/2
61/8 78/17 79/2 88/22 90/7
99/16
**didn't [23]** 12/2 12/10 18/4
22/4 22/5 22/15 26/19 30/19
36/4 39/18 43/10 43/14 47/25
59/24 62/2 67/3 79/10 88/13
88/19 88/21 88/23 95/10 99/6
**difference [4]** 7/23 50/9
71/21 71/22
**differences [1]** 104/9
**different [27]** 13/7 15/4
15/6 27/16 29/9 31/3 31/16
32/14 38/1 38/5 42/18 43/9
50/24 51/3 51/11 53/4 59/8
63/2 66/5 67/11 67/16 67/23
69/10 69/15 69/17 76/5 84/19
**differently [1]** 14/19
**differing [1]** 101/5
**difficult [1]** 69/9

**dignity [2]** 20/15 69/1
**diligence [1]** 36/25
**dire [1]** 27/17
**direction [2]** 48/23 89/11
**directly [3]** 24/18 84/11
85/21
**disagree [3]** 8/24 61/23 62/4
**disagrees [2]** 84/6 102/19
**disbarred [1]** 64/9
**discharge [1]** 47/4
**disclose [1]** 47/6
**disclosed [2]** 38/11 46/13
**disclosure [1]** 80/2
**discovered [6]** 36/24 36/24
62/22 87/10 96/25 103/21
**discovery [67]** 6/24 46/21
46/23 53/1 79/25 81/17 82/7
83/16 85/1 85/22 86/3 86/5
86/22 87/1 87/5 89/4 89/5
89/6 89/14 89/16 90/2 90/12
90/15 90/19 90/20 90/23
90/24 91/6 91/9 91/17 91/20
91/21 91/23 92/5 92/16 93/1
93/3 93/10 93/11 93/21 94/7
94/12 94/16 94/23 94/24
94/24 95/20 95/22 100/4
100/7 100/8 100/11 101/2
101/2 101/12 101/13 101/18
101/19 101/20 101/21 102/13
102/13 102/21 102/23 103/1
103/24 104/5
**discuss [8]** 4/21 55/14 67/9
71/4 79/11 95/21 96/13 103/2
**discussed [5]** 37/11 49/6
49/18 71/20 74/19
**discussion [3]** 52/23 71/8
104/10
**dismiss [25]** 4/16 4/16 7/7
7/17 7/19 13/5 15/23 15/25
34/3 35/3 44/22 70/13 70/16
76/22 76/23 78/9 79/8 83/8
83/19 85/3 85/5 85/10 90/11
91/13 92/1
**dismissal [6]** 11/23 16/18
65/14 65/15 75/4 75/6
**dismissed [8]** 6/19 34/1
51/14 57/10 76/3 79/13 80/7
96/2
**disposal [1]** 46/21
**disposed [1]** 77/10
**dispositive [3]** 20/19 20/20
40/5
**dispute [6]** 35/24 44/17
52/25 54/11 60/20 82/23
**disputed [1]** 39/12
**disputes [2]** 19/19 103/8
**disputing [4]** 39/23 49/12
50/16 52/6
**distinction [2]** 74/13 75/14
**distinguish [1]** 75/13
**distress [2]** 76/24 77/3
**district [15]** 1/1 1/1 1/10
2/2 10/15 14/10 14/11 19/23
26/11 55/4 66/22 73/1 81/16
105/4 105/4
**Ditta [2]** 72/3 72/7
**divide [2]** 5/16 5/17
**DIVISION [1]** 1/2
**Dixon [1]** 20/7
**do [48]** 4/7 4/17 15/22 22/22
23/12 23/18 24/2 26/1 28/4
30/17 32/13 32/18 34/9 34/11
35/1 35/12 38/3 39/6 45/19
46/21 46/24 47/10 52/21 53/4
57/15 60/21 66/9 66/12 66/14
66/16 67/25 68/11 70/9 74/10
74/18 75/5 79/6 82/21 83/13
92/7 97/16 97/17 98/7 100/11
100/12 105/12 104/8 105/5

**docket [1]** 13/3
**doctrine [2]** 44/15 82/19
**document [52]** 6/25 7/25 7/25
11/4 17/4 17/16 30/19 36/5
36/5 36/20 36/20 36/23 37/17
37/23 38/19 38/23 39/2 39/2
39/22 40/11 40/20 41/3 42/5
44/20 44/23 46/8 46/13 47/1
47/5 61/16 61/18 61/25 62/25
63/5 63/22 63/23 80/13 81/8
85/8 87/9 88/11 90/18 91/15
96/9 98/17 98/25 99/9 99/12
100/19 101/4 101/17
**documents [5]** 17/7 37/13
95/13 99/4 101/22
**does [29]** 30/6 30/8 33/10
33/13 34/14 43/6 45/5 48/23
50/9 50/13 52/5 56/14 64/17
66/14 66/25 71/17 73/18
73/21 73/24 74/21 75/13
78/24 80/20 81/9 84/9 84/15
85/10 85/22 85/22
**doesn't [20]** 11/5 15/13
16/17 17/8 23/11 26/20 33/12
49/2 49/25 49/25 56/2 56/6
60/23 63/20 63/21 67/15 69/7
70/1 82/23 91/22
**doing [5]** 15/24 46/5 46/7
70/25 91/5
**dollars [1]** 100/21
**don't [65]** 5/16 11/4 17/12
19/12 19/19 20/3 22/4 22/11
22/16 23/17 23/22 25/25 27/6
27/16 32/25 34/16 35/19 36/8
39/9 40/4 44/6 44/16 45/18
46/5 46/14 46/18 46/19 46/19
47/6 47/7 47/19 50/2 52/25
53/12 54/7 54/13 55/3 56/15
58/20 60/25 63/19 67/4 67/9
67/10 67/20 68/3 70/16 71/14
71/20 73/11 75/12 87/13 90/8
90/13 92/24 92/24 93/5 93/8
98/4 101/15 102/3 102/6
102/19 102/20 104/4
**Donald [1]** 4/5
**done [6]** 6/21 8/5 17/17
28/12 62/1 91/25
**Donelson [2]** 1/16 3/16
**door [1]** 43/25
**down [6]** 3/21 12/11 17/13
62/7 62/15 101/9
**dozens [1]** 10/25
**draw [2]** 27/15
**dredge [2]** 22/3
**Dretke [1]** 37/14
**drop [1]** 97/3
**due [6]** 36/25 53/24 54/1
54/17 60/19 79/23
**DUKE [2]** 1/17 3/17
**dunk [1]** 25/24
**during [9]** 38/15 53/22 56/24
60/2 60/8 61/20 87/10 91/9
92/1
**duties [1]** 33/23
**duty [1]** 84/2
**Dynamics [2]** 18/15 66/23

## E

**each [2]** 53/1 81/8
**earlier [4]** 6/11 49/19 63/6
94/19
**early [4]** 16/10 16/10 16/14
94/8
**easier [1]** 69/9
**easy [3]** 27/24 55/7 69/8
**ECF [1]** 7/1
**economy [1]** 71/23
**Edwards [3]** 51/2 51/2 51/4
**effect [1]** 62/9

**E**

effectively [5]   12/25 59/15
 65/24 73/6 84/2
efficient [1]   89/18
effort [1]   45/14
either [12]   16/12 38/17
 58/25 60/10 62/7 71/15 71/25
 74/2 85/18 89/20 100/7
 104/12
element [4]   29/11 62/17
 62/19 62/20
elements [7]   19/20 19/21
 35/7 35/11 53/1 62/12 62/13
eleventh [42]   6/2 18/4 18/11
 18/18 18/20 18/22 19/10
 20/13 22/10 22/18 22/19
 22/21 23/6 23/12 23/14 24/20
 24/25 25/3 25/6 25/7 25/16
 25/17 26/12 27/17 47/8 48/4
 48/24 49/23 65/10 65/14
 66/13 66/16 66/19 66/25
 67/16 68/6 71/4 71/7 72/5
 72/23 74/15 74/21
eleventh-hour [1]   22/19
elicits [1]   100/8
Elkhart [1]   76/24
else [8]   35/21 50/6 60/23
 61/4 63/17 68/12 103/7
 104/15
elucidated [2]   14/14 14/15
emergency [1]   91/24
emotional [2]   76/23 77/3
emphasize [1]   27/22
employee [5]   33/19 33/20
 48/20 84/3 84/15
employees [1]   82/20
employment [1]   33/20
enable [1]   80/21
enacted [1]   26/16
end [8]   4/22 52/1 90/23 94/8
 94/17 94/23 94/24 102/22
enforce [3]   26/21 49/2 73/14
enforcement [2]   34/8 36/14
enforcing [4]   27/5 27/8 49/6
 49/9
engaged [1]   9/19
enjoy [1]   25/8
enough [2]   16/2 29/6 29/10
 31/4 65/6 86/25 89/8 93/6
 93/11 96/18 96/20 102/6
entered [3]   33/18 97/23
 97/25
entertain [1]   22/19
entire [2]   95/23 100/20
entirely [4]   9/20 13/15
 13/17 53/13
entirety [2]   35/3 87/8
entitled [2]   72/5 72/23
entity [6]   19/8 34/15 72/5
 72/13 73/19 82/20
entrenched [1]   31/11
episode [1]   15/16
equal [5]   5/9 5/12 5/14 5/19
 20/21
equated [1]   76/9
ESQUIRE [10]   1/12 1/13 1/13
 1/16 1/17 1/19 1/20 1/20
 1/21 1/23
essential [1]   78/10
essentially [6]   10/18 12/6
 44/12 46/8 60/9 100/20
establish [5]   78/25 82/3
 82/8 85/9 95/18
established [12]   7/17 7/18
 31/11 33/5 33/19 37/2 53/19
 68/8 79/21 80/2 84/19 86/10
establishing [4]   73/4 80/1
 82/22 87/8
estate [2]   4/2 4/14

estopped [3]   9/13 77/17
 79/15
estoppel [3]   77/18 78/8
 79/17
et [3]   1/6 3/4 105/9
Evans [2]   9/5 64/6
even [31]   5/1 9/7 12/22
 13/11 18/6 21/20 22/19 23/22
 36/17 37/18 37/22 43/19 45/9
 45/13 46/12 51/7 51/8 56/25
 65/7 66/1 67/1 67/5 67/15
 78/7 81/3 83/10 83/14 92/25
 93/13 93/23 94/11
event [2]   88/14 97/16
events [4]   27/14 40/9 53/16
 96/4
eventual [1]   13/16
eventually [1]   6/18
ever [1]   43/5
every [4]   6/20 15/21 26/20
 99/10
everybody [1]   103/25
everyone [1]   44/4
everything [1]   97/3
evidence [40]   37/12 38/8
 40/12 48/12 52/16 53/16
 55/23 56/1 56/11 56/22 57/4
 57/16 58/23 58/25 59/2 59/4
 59/11 59/19 59/21 60/1 60/2
 60/5 60/7 60/16 62/22 64/11
 69/19 73/3 77/6 78/11 79/22
 80/23 81/21 82/4 82/4 84/18
 95/18 96/17 101/16 103/16
evidentiary [2]   100/16
 102/15
Ewing [1]   81/5
exactly [3]   39/11 43/15
 95/11
example [4]   34/7 59/10 60/6
 60/19
examples [4]   53/25 54/15
 54/15 55/10
except [2]   11/24 70/25
exception [2]   35/10 44/5
exceptions [1]   70/17
exclusively [2]   20/3 86/9
exculpatory [4]   77/6 78/11
 78/17 79/21
excuse [2]   25/18 42/21
exercise [1]   68/14
exercises [2]   25/21 72/13
exhibit [4]   13/4 40/21 41/10
 42/3
exist [4]   20/25 47/3 55/3
 60/23
existence [1]   6/23
exists [1]   39/2
exonerations [3]   54/10 54/11
 54/22
expansive [1]   94/15
expected [1]   12/9
expert [23]   85/9 88/16 89/15
 90/6 90/9 90/14 90/15 90/19
 91/8 91/9 91/20 91/24 101/2
 101/3 101/6 101/15 101/21
 101/24 102/18 103/6 103/13
 103/14 103/15
experts [6]   87/7 90/16 96/3
 96/10 99/11 99/13
expire [1]   57/24
explain [2]   44/7 68/7
explains [3]   24/19 24/21
 56/5
explains the [1]   24/19
explicit [1]   71/16
explicitly [1]   53/13

explode [1]   87/3
expounded [1]   75/17
express [1]   77/20
extend [3]   64/13 74/10 92/20
extending [1]   75/10
extends [1]   83/2
extension [1]   56/15
extensive [1]   92/16
extent [15]   33/23 45/21
 46/11 46/25 53/14 61/8 67/6
 72/16 83/16 85/5 90/2 90/14
 90/16 90/22 90/23
extra [1]   83/1
extremely [2]   41/25 87/5

**F**

F.2nd [1]   72/4
F.3d [4]   18/15 19/2 64/7
 65/19
F.3rd [8]   23/1 23/2 71/10
 72/10 76/8 76/25 77/22 79/20
F.Supp [1]   20/8
fabricate [1]   64/11
fabricated [5]   55/25 56/11
 58/25 60/17 85/8
fabricating [3]   52/16 69/20
 82/4
fabrication [3]   12/6 55/23
 85/3
fabrication-based [1]   12/6
Fabrizio [1]   28/25
fact [24]   10/19 20/25 27/8
 27/11 27/25 30/1 37/23 39/23
 50/22 51/7 55/20 58/6 68/13
 68/22 68/25 85/7 85/10 85/21
 89/1 94/10 99/8 101/1 101/25
 103/16
fact-based [2]   85/7 85/10
factor [11]   25/21 27/10
 47/20 48/7 48/22 48/25 49/11
 69/3 72/11 72/20 73/15
factors [15]   20/21 20/22
 25/19 40/7 47/24 50/1 69/2
 72/7 72/12 72/17 72/21 73/22
 73/23 73/24 78/21
facts [35]   10/22 10/23 21/1
 28/1 28/11 28/17 37/25 44/7
 45/11 45/16 46/12 46/20
 46/22 46/24 50/20 51/3 51/11
 55/11 62/17 63/3 63/4 78/23
 79/25 80/24 82/3 82/13 83/16
 85/9 85/11 92/21 92/25 94/21
 100/7 100/8 103/21
factual [18]   29/4 29/5 29/15
 38/2 38/6 43/14 43/18 43/21
 43/24 44/22 45/6 77/24 78/1
 78/19 79/1 86/2 90/2 98/16
factually [6]   8/19 11/4 63/8
 63/9 78/16 94/11
fail [1]   76/13
fails [2]   27/21 33/11
failure [21]   7/9 14/6 14/18
 14/23 15/14 28/6 28/8 30/13
 30/14 30/25 31/7 31/24 51/15
 52/11 52/14 65/15 76/6 76/9
 76/11 76/18 80/7
fair [3]   15/19 19/13 79/23
fairly [3]   28/23 49/21 94/13
faith [10]   7/13 7/16 9/25
 10/5 10/10 78/5 78/9 78/25
 79/1 79/7
false [13]   12/14 12/23 13/9
 17/1 17/2 30/18 30/20 58/6
 58/10 58/21 69/20 75/15
 75/19
familiar [1]   27/4
far [6]   4/22 25/18 31/7 53/7
 55/10 68/18
fashion [1]   16/10

**F**

Faulk [3]   81/15   81/19
fault [3]   10/7 43/5 62/8
favor [8]   26/3 26/4 26/5
56/4 57/5 58/4 59/6 73/15
favorably [1]   77/11
Fayette [1]   17/13
FCRR [1]   2/1
federal [11]   11/16 11/17
19/22 20/10 23/10 25/8 32/24
72/6 73/21 82/17 83/19
feel [2]   93/12 100/18
fees [1]   100/21
fell [1]   100/12
few [1]   65/5
fighting [1]   93/20
fights [2]   90/24 101/13
figure [1]   27/17
file [21]   38/11 38/14 38/16
38/20 50/10 63/8 85/2 86/22
89/4 89/8 89/12 94/22 95/16
95/17 96/7 99/11 100/5
100/15 102/5 102/7 103/18
filed [5]   69/13 70/4 93/2
93/7 94/11
filing [2]   57/24 89/16
Finally [1]   83/20
find [12]   11/14 22/7 25/10
68/3 68/6 70/22 71/19 73/11
75/12 76/18 79/6 82/17
finding [10]   40/10 43/15
43/18 48/23 58/2 61/24 62/8
65/25 74/13 79/15
findings [1]   62/12
finds [10]   71/9 75/22 76/11
77/12 78/7 80/16 81/3 81/9
81/22 103/14
fine [3]   11/8 89/2 89/12
finish [1]   59/22
firm [1]   100/3
firmly [1]   31/11
first [33]   5/8 5/20 5/22
6/23 7/8 7/15 9/1 23/13
27/15 29/14 56/21 61/15
65/10 70/14 72/8 78/8 81/11
84/1 84/14 87/2 89/5 89/13
90/6 92/23 93/22 95/6 95/8
95/12 100/10 101/14 101/14
103/4 103/11
five [2]   29/18 53/25
Floor [1]   1/14
focus [8]   35/14 37/4 70/9
87/1 89/13 89/13 93/22 93/25
focused [1]   75/21
focuses [5]   75/20 82/2 83/6
84/12 85/7
follow [1]   64/2
follows [2]   42/7 76/19
force [2]   31/12 31/12
forced [1]   100/20
Ford [1]   4/4
foregoing [1]   105/11
foremost [1]   9/1
forged [7]   87/8 91/15 98/18
98/18 98/22 98/23 100/19
forgery [2]   87/18 99/12
forging [1]   87/16
form [1]   23/6
forth [8]   8/5 8/7 28/5 28/17
40/18 41/1 59/16 72/25
forward [3]   11/13 68/24
94/12
found [12]   10/13 20/18 20/24
26/11 31/4 51/23 53/10 71/18
79/17 82/5 98/25 102/18
four [16]   13/24 14/1 14/2
14/4 19/17 25/18 32/21 47/20
47/24 49/22 74/18 75/5 76/5
76/6 76/20 77/12

**four-factor [1]**   47/20
**four-part [3]**   19/17 49/22
70/22
Fourth [31]   8/6 8/8 9/5
10/12 10/16 18/15 18/16 19/7
20/16 24/21 26/8 53/10 55/6
55/7 64/11 64/21 65/13 65/19
65/22 66/24 71/10 71/15
71/17 72/4 72/7 72/11 76/8
76/8 77/23 78/4 79/20
Francis [3]   33/16 34/7 84/7
frankly [2]   13/12 42/14
fraud [6]   89/25 90/18 90/25
91/4 101/4 101/17
Freedom [1]   99/3
fresh [1]   80/23
front [5]   23/18 23/19 23/23
24/3 102/22
fronts [1]   94/20
fulfilled [1]   80/1
fully [4]   21/24 95/15 95/23
102/14
functions [1]   73/10
further [3]   46/23 61/18
105/11
futile [1]   64/23
future [1]   77/10

**G**

gain [3]   78/3 78/17 100/7
gaining [1]   78/23
Garner [1]   20/5
GARRETH [3]   1/3 3/13 105/8
gave [3]   16/10 17/1 40/14
GAYLE [2]   1/12 3/7
general [7]   15/7 18/14 21/11
26/17 29/7 66/23 68/7
generally [4]   21/16 22/18
25/8 72/11
generated [2]   58/24 60/2
gentlemen [1]   54/12
George's [4]   26/23 27/3 76/7
77/1
get [15]   9/22 15/8 22/5 32/9
36/16 44/9 55/11 62/2 88/18
91/3 91/4 94/23 96/1 101/21
103/21
gets [2]   14/7 21/23
getting [3]   14/17 54/5 100/9
Gioia [5]   41/15 41/17 41/19
42/23 61/20
Gioia's [1]   62/24
give [12]   5/8 5/18 24/6
24/15 44/6 46/19 46/19 46/25
70/3 80/9 85/25 103/23
given [13]   4/22 20/18 20/20
51/7 55/10 68/14 69/3 69/3
80/12 91/7 95/24 97/2 97/4
gives [1]   38/4
giving [1]   72/19
globally [1]   91/5
go [19]   5/8 5/17 5/19 5/22
6/8 15/13 17/23 19/6 33/7
40/23 41/2 47/7 55/17 74/18
89/23 94/14 101/14 102/17
104/15
goals [1]   81/2
goes [9]   15/9 31/7 38/9 42/4
50/23 69/16 90/25 90/25
101/13
going [24]   35/24 45/21 46/25
56/19 59/12 67/10 67/20 86/1
86/4 87/6 89/23 90/23 90/24
91/3 91/4 95/4 96/1 96/2
97/24 100/5 101/8 101/14
102/5 102/16
gone [3]   17/14 36/9 41/23
good [8]   3/9 3/10 3/12 3/14
3/15 4/6 49/8 85/20

**Gordon [3]**   3/18 3/22 3/25
got [4]   38/14 43/15 90/11
99/24
governed [1]   75/23
government [8]   33/21 34/13
34/14 49/16 49/17 70/21 80/5
84/13
governmental [1]   34/15
governments [1]   80/21
gracious [1]   65/6
graft [1]   55/2
grant [4]   4/2 4/3 63/21 64/3
granted [2]   6/18 43/2
granting [2]   15/20 40/25
Great [1]   6/8
Greenbelt [2]   1/5 2/3
gross [1]   31/25
grounds [3]   18/6 65/14 66/19
group [2]   45/13 81/13
guess [5]   9/14 9/24 16/8
19/3 23/16 26/19 27/7 45/2
45/4 67/2 85/4
guidance [1]   70/3
guilty [1]   10/14
gun [2]   7/3 47/6
guns [3]   7/3 30/18 69/19
guys [1]   90/8

**H**

H-O-R-N [1]   3/7
ha [1]   99/9
had [68]   8/4 8/7 8/19 8/20
9/15 10/1 10/13 10/15 10/17
11/3 12/9 16/16 17/17 21/13
26/12 28/13 29/12 31/12
31/23 31/24 33/6 34/22 36/8
36/23 38/21 39/14 40/11
42/13 42/14 42/14 42/14 43/7
47/11 47/25 50/4 51/4 51/5
51/7 51/12 53/9 56/1 57/4
57/10 58/8 58/17 60/14 61/8
61/18 61/24 61/25 62/1 62/12
63/22 65/7 66/1 73/3 79/16
79/23 80/3 80/24 81/17 88/23
93/3 99/16 99/17 103/15
103/16 105/6
hadn't [4]   51/9 51/13 53/19
67/3
Hagee [1]   4/14
Hall [1]   28/25
hand [1]   92/17
handled [2]   35/13 94/8
hands [4]   36/13 37/19 40/2
46/9
handwriting [2]   41/6 42/6
happen [2]   53/16 87/4
happened [9]   39/11 51/6 51/9
51/13 54/20 54/21 61/25 88/7
95/11
happening [2]   90/23 101/12
happens [1]   94/19
happy [1]   89/20
hard [2]   52/20 52/21
Harris [1]   29/7
Harter [1]   72/10
has [66]   6/19 6/21 9/5 9/9
9/10 14/5 14/11 19/7 20/2
21/25 22/13 24/13 24/12
24/13 26/18 30/16 31/8 32/2
32/5 33/1 33/25 34/12 35/20
37/20 41/6 41/23 41/25 42/5
42/6 47/24 48/25 49/8 49/12
49/24 55/6 55/7 57/18 64/19
65/13 65/22 66/9 68/25 69/21
70/6 71/13 71/14 73/7 74/19
79/17 81/16 82/25 85/10
87/15 92/16 93/3 93/5 93/6
93/11 97/22 97/23 97/25
100/4 100/25 101/9 102/17

**H**

**has... [1]**  103/13
**have [159]**
**haven't [2]**  47/11 100/2
**having [7]**  9/18 14/17 14/18
37/12 37/12 48/4 104/7
**he [74]**  6/17 8/12 10/1 10/17
13/16 13/17 13/18 17/1 26/18
34/24 34/24 38/10 41/22
41/23 41/24 42/4 42/5 42/5
42/9 42/13 42/21 50/23 50/24
55/22 55/22 56/1 56/23 57/1
57/4 57/10 57/11 57/12 57/13
58/13 58/25 59/4 60/12 60/17
60/19 63/13 65/8 68/9 76/1
77/20 78/17 81/17 81/19
88/10 88/10 88/12 88/13
88/14 88/15 88/19 88/22
88/23 88/23 88/24 88/25 91/5
98/19 98/20 98/23 99/2 99/2
99/6 99/6 99/7 99/20 99/23
99/24 101/3 101/9 102/1
**he's [8]**  17/3 39/8 41/20
42/9 87/17 88/11 101/9
101/16
**head [2]**  26/17 89/9
**Health [1]**  24/4
**hear [8]**  34/16 47/25 89/17
89/21 96/17 97/23 99/16
102/3
**heard [9]**  18/8 27/18 52/17
60/11 61/3 86/6 97/20 97/24
98/1
**hearing [12]**  1/9 3/5 4/16
4/22 40/18 41/1 41/2 41/4
61/21 100/16 102/15 105/7
**heavily [1]**  37/4
**Heck [10]**  11/11 11/17 13/12
13/13 14/3 55/14 56/6 56/15
57/1 59/8
**held [7]**  12/5 29/4 30/23
58/13 74/9 75/24 76/1
**help [2]**  23/7 94/19
**helpful [2]**  25/11 53/17
**her [5]**  47/25 52/18 52/22
61/23 84/15
**here [34]**  3/4 4/15 4/17 16/9
22/6 24/12 27/2 31/6 32/9
45/14 50/9 51/3 52/10 52/12
54/14 56/14 56/20 68/1 69/12
71/4 73/2 75/25 77/5 78/7
79/2 80/12 80/24 82/14 86/15
86/17 87/6 87/7 95/5 96/16
**here's [1]**  67/14
**hereby [1]**  105/5
**hereto [1]**  105/15
**hey [3]**  47/5 47/5 90/8
**high [5]**  32/4 32/5 32/5
52/18 55/8
**highlighted [1]**  12/10
**highlights [1]**  101/1
**highly [1]**  69/5
**hijacked [1]**  101/9
**hijacking [2]**  96/21 102/24
**him [13]**  34/23 56/22 57/17
57/25 58/18 59/1 59/3 60/4
78/12 84/15 88/9 91/3 91/4
**himself [2]**  43/19 87/19
**hinges [1]**  79/14
**hire [3]**  48/20 101/15 101/23
**his [36]**  9/20 10/10 13/16
13/18 13/18 34/23 38/10 41/6
42/6 42/6 56/4 56/24 56/25
57/3 57/5 57/8 58/14 59/1
59/5 59/6 60/11 60/13 60/18
60/19 61/20 64/9 76/2 77/9
77/19 78/12 86/8 88/15 89/1
89/1 98/24 99/5
**historically [1]**  19/11

**history [1]**  97/2
**hold [5]**  58/18 59/3 64/16
90/4 97/7 97/25
**holding [1]**  64/21
**Hollander [7]**  19/4 19/13
20/4 22/2 22/8 22/12 28/23
**Holliday [1]**  1/21
**homicide [1]**  6/16
**honestly [1]**  37/6
**Honor [82]**  3/7 3/12 3/15 4/9
5/21 6/4 6/10 7/14 8/24 10/3
11/25 18/1 18/11 20/22 21/9
21/21 23/18 25/10 26/6 27/11
32/15 34/6 34/18 35/23 36/11
37/9 38/6 38/18 38/24 39/16
41/9 41/12 41/17 42/11 43/13
43/17 44/11 45/15 46/3 50/7
50/15 52/13 53/21 54/24
55/18 56/18 58/9 58/19 59/18
61/1 61/6 61/11 61/14 62/4
65/3 65/5 65/9 65/11 67/6
67/17 69/21 85/16 87/22 88/4
89/11 89/22 90/4 91/18 95/1
95/8 96/5 97/6 97/14 97/19
98/2 98/10 98/11 98/14 99/16
100/14 100/23 104/18
**HONORABLE [1]**  1/9
**Hope [1]**  20/5
**HORN [11]**  1/12 3/7 34/17
61/10 61/16 64/3 89/21 91/11
93/19 102/16 103/14
**Horn's [2]**  61/15 64/22
**Horton [1]**  4/3
**hour [1]**  22/19
**how [23]**  4/22 5/16 7/16
11/13 17/15 23/5 30/16 31/8
35/12 35/12 35/21 36/8 36/9
43/15 44/7 49/11 56/14 58/11
68/19 72/15 76/16 85/9 92/24
**However [6]**  32/17 65/19 66/4
66/24 82/17 88/1
**hum [1]**  12/25
**hump [1]**  55/12
**hundred [2]**  65/21 65/22
**hurdle [5]**  32/4 32/5 32/5
52/19 55/8
**Hutto [4]**  65/17 65/20 71/9
71/16

**I**

**I'd [5]**  28/21 33/7 61/14
97/8 103/9
**I'll [7]**  5/7 5/18 5/22 7/8
22/17 35/5 104/6
**I'm [46]**  4/9 9/24 11/22 14/1
15/14 15/22 16/2 16/8 19/3
22/15 23/5 23/12 24/24 26/15
26/19 26/19 27/4 27/7 29/19
29/23 36/7 39/9 40/20 41/14
42/13 42/20 45/2 45/4 46/2
59/7 62/7 67/2 68/16 86/18
89/3 89/22 95/4 96/21 97/1
97/1 97/2 97/15 99/8 100/13
102/16 104/4
**I've [6]**  27/18 48/12 66/8
100/1 100/2 100/3
**idea [3]**  85/14 91/6 102/24
**ideal [2]**  70/7 103/25
**ideally [1]**  94/24
**identified [1]**  28/13
**identifies [3]**  50/21 50/22
50/22
**identify [5]**  3/5 28/11 29/15
30/12 55/5
**identifying [2]**  7/5 53/2
**IL [1]**  1/25
**Illinois [1]**  1/15
**imagine [1]**  95/8
**immune [2]**  17/3 71/7

**immunities [1]**  74/9
**immunity [56]**  8/8 18/11
18/21 19/9 20/13 20/13 22/6
22/10 22/22 23/7 23/10 23/16
24/20 24/22 25/4 25/5 25/8
26/13 33/1 33/10 33/14 33/23
33/25 34/12 47/19 48/4 48/24
49/23 49/25 50/6 64/13 65/10
66/10 66/15 66/19 66/20 68/6
71/5 71/12 72/6 72/23 73/15
73/20 74/15 74/21 79/11
79/14 79/18 79/24 83/24 84/1
84/2
**impact [2]**  20/19 74/1
**impeached [1]**  42/15
**imperative [1]**  92/2
**implicitly [3]**  62/5 62/5
62/6
**implicitly and [1]**  62/5
**importance [1]**  72/16
**important [9]**  36/2 70/11
72/8 78/4 86/25 96/17 96/19
97/9 103/24
**importantly [1]**  42/2
**impose [1]**  85/6
**improper [5]**  9/19 29/3 39/5
51/23 81/13
**impugn [2]**  56/8 57/6
**imputed [3]**  36/14 37/18 40/3
**inadequate [1]**  28/9
**incarceration [4]**  8/2 13/14
78/13 80/16
**incident [1]**  82/14
**incidents [10]**  29/18 29/20
51/4 51/8 53/15 53/15 53/19
53/23 53/24 82/12
**include [2]**  72/12 95/18
**included [1]**  82/11
**includes [1]**  83/5
**including [6]**  42/1 49/18
53/2 74/15 78/21 82/13
**inconsistencies [1]**  43/21
**inconsistency [2]**  68/19
78/20
**inconsistent [4]**  43/24 69/17
77/25 78/1
**incorporate [1]**  100/6
**incredible [1]**  87/18
**incredibly [1]**  15/17
**indemnification [6]**  33/1
33/8 49/18 83/20 84/17 84/20
**indemnifies [1]**  33/24
**indemnify [1]**  84/3
**independence [1]**  21/6
**independent [2]**  9/6 64/18
**indicate [1]**  101/4
**indicates [2]**  7/16 24/12
**indication [1]**  43/4
**indicia [1]**  78/9
**indictment [2]**  57/12 64/18
**indifference [4]**  28/3 31/7
32/1 53/3
**indifferent [1]**  30/1
**indisputable [1]**  21/14
**individual [15]**  3/18 4/13
4/18 5/22 6/14 35/4 40/21
45/11 55/4 75/24 81/8 81/12
97/16 97/18 104/19
**individuals [1]**  83/3
**indulge [2]**  40/7 55/14
**indulgence [1]**  99/7
**infer [2]**  35/15 53/13
**inference [3]**  62/15 82/9
83/13
**infliction [2]**  76/23 77/3
**information [12]**  17/8 34/22
36/13 36/20 37/18 40/1 48/21
89/8 93/6 93/11 99/3 102/6

**I**

initially [1] 55/20
injuries [1] 80/19
injury [2] 80/11 80/12
innocence [18] 7/1 7/22 9/15
17/10 35/25 38/15 39/21
40/17 43/2 43/4 59/1 62/13
62/21 70/19 77/19 86/11
98/24 99/10
innocent [1] 79/3
insist [1] 43/14
install [1] 26/17
instance [3] 51/20 75/17
103/11
instances [1] 49/14
instead [2] 8/3 82/24
instruction [1] 64/2
instructions [1] 104/7
instructive [1] 51/19
insufficient [2] 16/11 29/2
integral [1] 70/23
intentional [3] 35/17 76/23
77/3
intentionally [1] 78/2
interest [1] 71/23
interests [1] 14/16
interpret [2] 35/12 39/10
interpretation [1] 15/21
interrogatories [1] 96/11
interrupt [1] 59/24
interspersed [1] 71/3
intervene [9] 14/6 14/18
14/23 15/15 76/7 76/10 76/11
76/13 76/18
interview [1] 88/19
interviewed [1] 99/21
interviewing [1] 42/1
intimate [1] 88/13
intimately [2] 14/20 14/21
intimidation [1] 7/5
intracorporate [2] 44/15
82/19
introduction [1] 85/25
investigate [3] 51/8 51/25
52/4
investigation [9] 6/21 14/22
41/5 41/25 51/12 54/4 60/2
60/8 81/19
investigations [1] 80/22
investigatory [1] 30/15
involved [13] 6/21 8/21
14/20 14/21 35/19 44/8 55/20
57/25 72/14 87/17 88/2 88/12
100/21
involvement [1] 83/10
involves [1] 34/19
Iqbal [1] 69/14
iron [1] 104/8
irrelevant [1] 61/17
is [397]
isn't [16] 9/18 9/22 10/7
11/10 14/23 15/22 38/10
39/13 46/1 50/13 50/14 65/21
69/18 86/18 96/19 96/20
issue [78] 6/2 14/12 18/8
22/13 27/17 27/18 29/17
30/21 33/6 39/12 40/5 55/10
55/14 59/11 64/21 68/4 69/18
70/14 70/14 71/2 71/5 71/11
71/16 74/1 74/24 80/5 81/14
81/25 82/2 83/20 83/22 85/7
85/13 86/4 86/5 86/25 87/2
89/8 89/13 90/5 90/13 90/19
90/25 91/1 91/23 92/2 92/4
92/5 92/14 93/4 93/12 93/16
94/5 94/18 94/25 95/9 96/15
96/18 96/20 96/20 96/22
96/24 97/11 97/21 97/25
100/2 100/3 100/16 101/1

101/2 101/25 102/13 102/14
102/1 103/3 103/6 104/3
issued [4] 19/13 30/9 55/19
84/23
issues [26] 4/17 4/23 4/24
4/24 5/11 5/12 5/25 16/3
67/25 70/11 71/4 84/22 89/18
92/13 93/10 93/22 94/7 96/12
101/14 103/1 103/2 103/6
103/24 104/6 104/14 104/16
issuing [1] 99/3
it [268]
it's [85] 7/18 8/3 9/1 10/3
11/22 13/7 13/13 13/15 13/15
13/17 13/20 15/15 15/17
15/18 16/12 17/20 21/5 21/7
21/14 21/22 22/9 22/21 22/22
23/10 23/25 24/9 24/9 24/11
24/16 26/5 27/10 27/24 29/6
33/16 35/8 35/16 36/16 37/20
38/7 38/11 41/4 45/9 49/11
49/24 52/18 52/18 52/20
52/21 55/7 56/6 58/12 62/14
62/15 63/12 65/22 65/25 66/3
66/3 66/4 67/11 67/20 68/3
70/20 83/6 85/6 88/13 88/25
89/24 90/2 91/12 92/10 93/23
94/11 95/4 95/14 96/17 97/14
97/21 99/25 100/4 100/11
100/19 101/25 102/7 102/8
items [1] 34/3
its [6] 10/13 28/9 35/3
35/21 62/10 68/14
itself [3] 39/22 79/2 83/7

**J**

Jean [1] 8/8
Jefferson [1] 4/3
Jennifer [1] 4/2
jettisoning [1] 48/1
job [2] 8/4 40/1
John [1] 4/4
Johnson [3] 33/16 34/7 84/7
join [1] 32/18
joined [1] 3/16
joint [1] 104/11
Joseph [6] 3/19 4/1 4/3 4/4
16/25 17/1
judge [12] 1/10 19/4 19/13
19/23 20/6 20/6 20/9 20/25
28/23 28/23 82/5 98/5
judges [1] 86/16
judgment [5] 33/18 71/1
72/10 73/5 73/25
judgments [2] 26/2 48/6
judicial [25] 7/8 7/12 7/19
10/8 10/20 11/5 35/4 35/6
35/7 35/9 38/25 39/1 39/4
39/7 40/8 43/22 44/14 44/19
68/22 70/19 71/23 77/15
77/23 78/6 79/8
judicially [3] 9/12 77/17
79/15
July [3] 6/16 24/4 91/5
July 16 [2] 6/16 91/5
July 25 [1] 24/4
jump [1] 35/2
June [2] 75/2 80/15
June of [2] 75/2 80/15
jurisdiction [19] 14/6 18/12
22/23 23/21 25/14 49/3 49/3
51/7 65/12 65/16 66/1 67/11
67/24 68/2 68/2 71/11 71/18
71/25 73/13
jurisdictional [7] 18/11
18/17 22/17 22/22 24/22
47/15 67/14
jury [3] 42/14 90/16 102/1

just [58] 3/23 4/7 15/7 16/1
16/5 17/9 18/6 21/13 21/16
26/22 26/24 27/21 27/4 27/10
28/2 30/3 30/13 31/15 32/3
37/7 37/7 42/22 44/16 45/8
47/13 54/16 55/3 56/6 56/6
59/19 61/11 63/17 65/5 67/4
67/13 67/18 68/20 69/11
85/25 88/12 91/2 91/13 92/5
92/18 92/20 93/23 95/2 95/4
95/6 96/2 97/2 98/15 98/16
101/1 101/25 102/19 102/23
102/24
JUSTIN [1] 1/21

**K**

Kamionski [1] 1/23
KARA [5] 1/19 4/9 6/4 98/9
98/9
KATHERINE [1] 1/13
Katie [1] 3/12
Kato [6] 11/19 12/21 13/12
14/16 15/13 75/14
Kaufman's [2] 19/23 20/9
keep [3] 36/2 37/10 65/7
keeping [2] 81/2 81/22
Kevin [1] 4/4
killer [1] 34/22
Kimberly [2] 3/19 4/1
kind [6] 40/10 50/12 54/13
90/3 93/7 97/3
kinds [2] 46/22 46/24
knew [8] 31/9 34/21 46/16
46/17 46/18 58/7 58/23 60/15
know [36] 5/6 5/16 11/5
11/11 19/4 22/3 22/4 22/5
25/24 29/8 31/17 35/1 35/19
39/19 47/22 49/7 49/16 49/20
50/2 52/17 54/7 56/24 60/11
60/22 62/24 67/22 69/3 70/6
81/18 86/20 88/19 91/1 92/25
97/7 102/19 102/20
knowledge [2] 28/15 29/25
known [2] 6/20 83/3
Kyles [3] 36/13 37/1 40/4

**L**

labels [1] 50/24
lack [4] 30/2 65/16 73/25
83/11
LaHue [1] 17/3
laid [3] 75/12 86/17 103/7
Lane [1] 2/2
language [1] 57/18
large [2] 27/12 70/15
largely [2] 70/22 72/1
Laslett [1] 4/5
last [2] 49/11 78/3
late [2] 13/20 17/20
later [9] 6/17 10/16 34/4
34/8 34/20 38/12 71/24 90/10
98/19
law [42] 1/19 8/10 8/11
12/24 14/2 14/4 14/5 15/2
16/15 16/15 16/21 17/21 20/3
20/9 21/1 21/17 21/19 25/23
25/24 27/22 27/24 31/12
31/12 32/24 33/1 33/9 33/11
33/11 36/14 37/2 40/4 47/11
49/7 49/12 52/7 68/13 68/20
72/7 72/16 73/20 79/7 82/18
lawfulness [1] 56/16
laws [16] 21/10 21/10 21/12
26/14 26/15 26/16 26/21 27/5
27/5 27/8 49/2 49/9 68/7
68/11 73/14 80/7
lawyers [1] 67/25
laxness [1] 29/8
lay [3] 45/17 84/19 96/8

| | | |
|---|---|---|

**L**

**laying [1]**  100/11
**lays [1]**  57/24
**lead [3]**  22/13 83/12 84/20
**leadership [1]**  31/16
**leads [2]**  49/22 69/4
**leapfrog [1]**  90/20
**least [11]**  4/23 18/8 54/18
70/22 76/19 77/12 78/22
80/19 90/8 91/12 100/7
**leave [4]**  46/11 64/2 64/4
64/23
**led [1]**  63/1
**left [1]**  17/23
**legal [4]**  12/20 57/19 58/13
80/19
**less [1]**  47/22
**let [12]**  16/4 22/25 25/4
29/25 44/1 63/17 85/12 89/21
91/11 97/7 97/12 97/20
**let's [7]**  11/6 51/6 61/9
70/2 95/11 95/12 104/12
**letter [9]**  4/20 5/3 70/4
80/14 85/1 85/23 86/17 86/20
93/15
**letting [1]**  57/24
**level [3]**  7/10 62/2 81/21
**LGTC [1]**  16/4
**LGTCA [4]**  13/4 16/5 16/25
50/5
**liability [10]**  9/8 14/24
14/25 19/16 31/5 36/18 64/13
76/9 76/10 82/9
**liable [1]**  8/2
**liberal [1]**  12/23
**life [3]**  12/11 70/7 92/20
**light [3]**  1/17 28/15 29/25
**lightly [1]**  67/24
**like [28]**  5/19 10/21 23/25
30/17 32/10 33/7 39/19 40/6
53/2 54/18 55/13 56/1 59/13
61/5 61/14 62/6 66/2 69/19
85/16 88/14 88/15 89/5 90/1
91/20 92/7 97/8 100/22 102/1
**likelihood [1]**  93/20
**likely [5]**  12/4 78/23 95/25
102/8 104/11
**limitation [1]**  32/19
**limitations [14]**  11/7 11/16
11/20 11/23 11/24 13/23
14/13 15/2 55/25 61/3 74/24
75/4 75/10 76/4
**limited [6]**  11/7 33/23 35/1
85/21 86/3 93/24
**limits [1]**  73/13
**line [5]**  20/17 40/3 41/24
41/24 42/14
**lines [4]**  42/7 76/16 77/11
93/8
**linked [1]**  48/17
**Lisa [4]**  2/1 105/3 105/19
105/20
**list [1]**  97/16
**listed [1]**  51/22
**listen [1]**  96/10
**literally [1]**  42/22
**litigated [1]**  93/13
**litigation [5]**  36/16 57/19
57/22 78/1 85/3
**little [5]**  32/7 87/14 89/19
99/8 104/10
**live [4]**  96/1 96/3 96/17
101/22
**LLP [1]**  1/23
**loathed [1]**  15/1
**local [20]**  21/10 25/22 26/8
26/16 33/21 34/13 34/14
48/25 49/3 49/15 49/17 68/7
68/11 68/13 70/21 72/14

73/10 80/5 80/21 84/13
**Loevy [2]**  1/12 1/12
**long [3]**  40/23 50/1 87/24
**longer [6]**  13/24 20/19 20/20
32/17 69/25 75/3
**Longtin [1]**  77/1
**look [16]**  17/4 17/6 22/17
22/25 35/21 38/13 48/2 53/6
53/6 63/22 69/13 72/19 95/10
95/12 95/19 99/17
**looked [3]**  63/23 88/10 95/9
**looking [9]**  17/11 23/3 23/12
36/3 41/14 59/10 67/4 73/22
77/4
**looks [4]**  30/22 54/18 88/14
88/15
**loose [1]**  99/8
**lose [1]**  27/25
**lot [4]**  27/2 31/6 65/11
69/25
**low [1]**  44/9
**Lowery [3]**  10/12 10/20 10/21
**LYNCH [9]**  1/19 4/10 6/4 18/2
47/9 53/12 65/4 97/22 98/7

**M**

**machine [2]**  105/5 105/13
**made [24]**  5/2 9/5 22/2 28/14
35/3 38/16 39/14 40/10 43/5
43/18 45/20 47/15 51/22
61/19 62/12 63/11 63/13
69/12 71/21 74/22 78/4 79/2
79/25 86/25
**maintains [2]**  88/15 88/24
**make [22]**  10/2 16/1 16/5
28/2 28/11 37/5 38/3 38/4
44/22 50/9 61/9 68/21 68/22
83/25 84/9 91/14 91/22 94/25
94/25 95/23 101/24 103/17
**makes [5]**  17/9 27/8 53/12
71/21 79/13
**making [5]**  30/18 32/12 59/16
94/13 95/15
**malicious [15]**  8/2 12/3 12/6
14/7 14/22 15/9 16/15 16/16
16/20 32/11 50/17 51/10
75/16 75/20 76/14
**man [2]**  96/18 99/14
**manner [1]**  82/21
**Manuel [5]**  55/14 58/2 58/14
60/18 61/3
**many [3]**  34/25 74/20 97/5
**March [9]**  13/2 13/19 19/14
41/2 56/25 57/8 90/9 91/25
95/8
**March 23 [1]**  13/2
**March 23rd [1]**  13/19
**March 3 [1]**  41/2
**March of [1]**  19/14
**Mariner [1]**  27/15
**Maritime [1]**  20/11
**MARYLAND [20]**  1/1 1/5 1/18
1/22 2/3 12/24 33/17 62/23
68/10 72/3 73/1 73/17 73/18
73/19 74/3 77/2 81/6 81/16
84/8 105/5
**material [6]**  7/23 29/5 29/15
40/1 41/24 78/11
**materials [3]**  70/15 70/17
103/12
**matter [37]**  3/2 8/7 9/8
10/18 11/5 13/7 14/15 14/25
18/12 22/23 23/21 25/14
27/22 31/25 31/25 32/1 33/11
36/4 36/18 37/15 37/17 65/11
65/16 65/25 67/11 68/1 68/2
71/11 71/18 71/25 72/15
78/14 79/7 80/20 90/15 93/24
97/21

**mattered [1]**  36/25
**matters [2]**  27/9 36/18
**May [9]**  22/17 22/20 63/13/11
33/17 40/2 47/5 55/4 58/17
63/2 70/2 70/3 71/21 72/17
73/12 74/10 79/25 83/16
83/25 85/25 89/19 92/16 93/6
95/1 95/20 97/6 98/2 98/11
100/23 102/18 103/8
**maybe [10]**  11/21 22/4 60/23
67/9 85/18 89/6 96/11 96/13
96/14 103/25
**Mayor [3]**  48/21 73/16 74/16
**McDonough [20]**  12/4 32/16
55/19 55/20 55/23 55/24 56/1
56/5 57/5 57/18 58/2 60/22
61/1 75/1 75/9 75/13 75/13
75/16 76/17 76/18
**McDougal [1]**  28/22
**McDowell [1]**  28/22
**me [35]**  3/17 16/4 16/7 21/18
22/2 22/25 23/7 23/13 23/18
23/19 23/25 24/3 24/6 24/15
25/4 25/18 27/19 36/8 37/25
40/7 42/21 44/1 45/3 46/19
55/14 59/23 61/22 70/25
85/12 85/16 89/21 91/11 97/7
97/12 102/11
**mean [25]**  9/21 17/10 20/3
21/16 31/19 37/21 39/11
39/20 46/3 47/1 48/9 50/23
52/1 56/14 58/19 58/20 59/9
66/12 86/15 88/21 89/22 94/7
96/25 97/1 100/2
**meaning [2]**  44/22 65/25
**means [4]**  8/14 11/3 39/5
47/2
**meant [2]**  35/9 35/10
**mechanical [1]**  2/5
**mechanisms [1]**  34/9
**meet [5]**  43/22 44/9 69/14
94/3 103/10
**member [1]**  82/25
**memorializes [1]**  84/23
**mention [2]**  29/19 67/15
**mentioned [1]**  4/14
**mentions [1]**  81/8
**merits [4]**  25/15 86/19 87/14
89/23
**met [5]**  33/25 34/13 35/8
77/24 78/8
**microphone [2]**  85/19 95/2
**might [7]**  5/2 50/25 64/1
64/3 78/21 83/24 94/18
**millions [1]**  100/21
**mind [3]**  36/2 98/4 98/6
**minor [1]**  104/8
**minute [3]**  70/2 96/14 96/14
**minutes [2]**  5/16 17/23
**minutia [1]**  27/23
**mis [1]**  24/1
**mis-cited [1]**  24/1
**misconduct [4]**  37/16 37/22
79/4 99/19
**misleading [2]**  35/17 68/3
**misled [6]**  9/10 10/14 10/15
64/15 64/19 78/2
**missing [4]**  19/11 29/14
31/13 67/2
**mistaken [1]**  15/14
**mistrial [2]**  55/21 55/22
**moment [2]**  61/11 98/3
**Monell [16]**  6/1 19/16 27/7
27/19 27/21 28/1 48/5 52/9
52/20 53/2 55/2 69/7 69/8
81/25 82/9 82/15
**Monroe [1]**  1/24
**month [1]**  58/12
**months [1]**  90/10

**M**

**more [16]** 7/3 9/4 12/23
12/23 23/12 29/8 53/6 61/8
83/9 86/18 91/4 98/11 102/1
102/1 102/4 104/10
**morning [9]** 3/9 3/10 3/12
3/14 3/15 4/6 85/20 86/6
86/14
**most [10]** 27/5 28/9 42/1
45/10 54/23 72/8 78/22 78/23
93/25 103/24
**motion [49]** 4/15 4/16 4/21
4/24 5/25 7/17 7/18 13/5
15/23 28/21 32/18 44/10
44/21 67/7 70/6 70/13 70/16
71/1 74/23 76/20 77/13 79/10
80/3 81/13 84/21 85/2 86/1
86/19 86/22 87/11 89/4 89/8
89/13 89/17 90/21 91/13
92/24 93/2 93/7 94/23 95/16
95/17 95/19 96/7 100/5
100/15 102/5 102/10 103/18
**motions [11]** 1/9 3/4 4/16
5/1 5/5 53/9 70/16 71/1
84/23 92/1 105/7
**mountains [1]** 21/1
**move [13]** 7/8 11/6 12/2
27/16 62/23 68/4 76/21 76/22
80/6 84/25 93/9 94/12 104/1
**moved [7]** 4/22 4/23 11/18
11/25 16/9 63/6 79/12
**moving [3]** 5/7 5/22 15/25
**MPIA [1]** 38/16
**Mr [15]** 3/20 6/8 32/10 32/13
32/16 32/18 36/17 38/24 39/6
42/14 42/20 62/24 81/16
97/12 97/13
**Mr. [37]** 3/8 3/11 4/13 4/14
7/6 35/14 36/7 36/23 38/14
41/15 41/17 41/19 42/15
42/21 42/23 43/1 43/3 43/19
51/14 54/3 54/13 60/6 61/17
63/4 63/11 65/6 75/25 77/9
77/16 78/10 78/24 79/15 81/1
83/9 98/3 98/18 100/25
**Mr. Burgess [2]** 42/15 60/6
**Mr. Dahl [4]** 4/13 35/14 36/7
65/6
**Mr. Davis [1]** 98/3
**Mr. Gioia [4]** 41/15 41/17
41/19 42/23
**Mr. Hagee [1]** 4/14
**Mr. Nathan [1]** 100/25
**Mr. Parks [16]** 3/8 3/11 7/6
36/23 38/14 42/21 43/19
51/14 61/17 63/4 63/11 75/25
77/9 77/16 79/15 98/18
**Mr. Parks' [8]** 43/1 43/3
54/3 54/13 78/10 78/24 81/1
83/9
**Ms [12]** 8/15 34/17 39/8
39/22 42/24 61/16 64/3 64/22
65/4 89/21 91/11 93/19
**Ms. [10]** 8/18 18/2 47/9
53/12 61/10 61/15 97/22 98/7
102/16 103/14
**Ms. Costley [1]** 8/18
**Ms. Horn [3]** 61/10 102/16
103/14
**Ms. Horn's [1]** 61/15
**Ms. Lynch [5]** 18/2 47/9
53/12 97/22 98/7
**much [5]** 42/23 56/15 75/19
98/19 104/21
**Mueller [28]** 3/19 4/1 6/24
7/9 7/20 7/21 8/13 16/25
17/1 37/13 38/9 38/14 41/5
42/11 43/6 52/5 77/18 77/21
79/16 86/8 86/9 86/13 88/2

multiple [2] 5/11 100/9
municipality [3] 33/83
30/10 17/12 17/18 28/3 33/18
52/3
murder [2] 34/21 81/19 88/18
murderer [2] 63/18 87/15
must [16] 20/20 23/22 28/1
28/10 29/11 31/9 34/1 34/13
63/16 69/2 80/9 80/11 84/10
84/13 84/18 87/18
my [21] 4/12 10/11 17/25
19/5 31/18 32/12 55/1 58/4
58/24 60/7 60/17 65/20 88/15
97/15 99/10 101/17 102/23
105/6 105/13 105/14 105/15

**N**

**name [2]** 4/12 105/16
**named [1]** 16/25
**names [2]** 4/7 51/21
**narrative [3]** 30/18 30/20
69/20
**NATALIE [1]** 1/20
**Nathan [5]** 1/23 1/23 4/12
97/14 100/25
**National [1]** 72/3
**naturally [1]** 93/21
**nature [5]** 28/11 28/20 71/12
91/7 92/15
**nebulous [1]** 30/13
**necessarily [8]** 10/4 15/15
19/12 34/6 53/18 62/5 78/14
78/24
**necessary [6]** 62/16 78/8
80/17 95/20 95/22 96/13
**need [17]** 7/7 10/7 11/11
46/21 46/23 67/9 69/13 70/9
84/14 85/22 85/22 90/12 93/1
93/16 94/12 99/10 102/15
**needed [5]** 31/17 59/1 90/3
95/18 96/17
**needs [2]** 94/9 103/16
**negligence [2]** 31/25 32/1
**negotiate [1]** 104/5
**NEIL [2]** 1/17 3/16
**neither [2]** 54/14 64/15
**never [7]** 16/19 21/23 21/24
87/19 88/19 98/4 98/5
**new [12]** 6/18 14/10 14/12
24/10 24/11 47/12 47/12
60/22 62/23 63/6 100/7
104/12
**newly [1]** 36/23
**next [3]** 42/7 68/4 81/23
**Nine [7]** 13/24 14/2 32/21
75/5 76/5 76/21 77/14
**no [59]** 1/3 4/25 11/12 12/13
13/24 14/4 14/5 14/11 16/21
16/21 20/19 20/20 29/14
32/17 34/6 38/20 40/12 40/17
48/13 48/13 50/7 51/23 53/18
58/8 58/18 58/20 58/22 59/18
59/24 60/14 60/20 61/6 61/24
62/14 64/12 69/3 73/3 75/3
78/5 79/6 79/17 85/13 87/10
87/17 88/10 88/22 88/23 89/4
92/19 98/9 98/9 98/10 99/16
99/17 100/21
**Nobody [1]** 39/23
**nol [2]** 12/7 16/18
**nonfatal [2]** 6/16 42/15
**normally [3]** 59/10 94/17
101/19
**Northern [2]** 14/10 14/11
**not [186]**
**notably [3]** 8/7 74/3 79/2
**notion [1]** 38/22

**note [8]** 8/14 38/25 39/2
41/23 47/1 71/17 71/20 74/7
42/23 47/1 71/17 71/20 74/7
34/14 118/1 105/126
**notereading [1]** 2/5
**notes [4]** 32/12 73/2 83/8
105/13
**nothing [8]** 17/17 24/12
29/21 66/9 66/12 66/16
104/17 104/19
**notice [35]** 7/19 13/4 16/10
16/11 16/17 16/25 17/18
17/19 28/13 29/12 29/22
30/11 30/24 31/23 31/23
38/25 39/1 39/4 44/20 50/10
50/21 50/21 51/6 51/22 68/22
70/19 70/21 80/8 80/9 80/11
80/17 80/18 81/1 99/6 99/9
**notion [2]** 84/12 84/16
**notionally [1]** 5/15
**notoriously [1]** 10/25
**notwithstanding [1]** 62/24
**now [27]** 3/2 13/18 16/1
22/11 22/14 22/25 23/13
26/24 35/15 35/16 38/3 38/5
46/21 47/22 54/1 70/3 70/9
70/13 71/24 74/25 83/5 83/18
84/5 86/22 93/19 99/11 100/5
**number [10]** 3/3 4/17 48/19
50/22 50/23 51/20 78/20 87/1
87/1 105/9
**numerous [2]** 82/7 86/13
**NW [1]** 1/17

**O**

**oath [1]** 68/9
**Oberg [1]** 20/17
**objections [1]** 101/13
**obligation [1]** 47/4
**obligations [2]** 52/14 80/2
**obtaining [1]** 84/14
**obvious [1]** 27/24
**obviously [7]** 5/18 50/10
84/18 86/20 94/15 103/3
103/8
**occur [3]** 26/14 84/17 103/5
**occurred [11]** 13/8 51/12
53/24 54/2 54/2 54/3 54/12
54/22 80/19 80/24 100/5
**occurring [1]** 82/13
**occurs [1]** 86/23
**October [4]** 57/9 57/10 76/15
77/13
**October 9 [2]** 76/15 77/13
**off [5]** 7/15 9/7 84/1 89/9
92/24
**offer [2]** 5/7 60/12
**offered [3]** 38/2 42/2 84/7
**Office [3]** 26/12 30/24 99/22
**officer [33]** 6/12 6/20 8/1
8/1 16/24 30/17 36/9 36/14
37/19 37/23 38/9 40/11 41/5
42/2 42/4 42/11 42/16 52/5
64/16 64/19 76/21 77/16
79/12 79/21 80/6 80/25 83/22
84/10 88/4 88/6 99/18 99/21
101/23
**officer's [2]** 8/4 79/3
**officers [23]** 7/3 8/20 8/20
9/3 9/10 9/16 9/18 9/21
16/24 17/17 17/19 29/6 37/7
38/1 45/7 46/13 64/14 77/22
78/15 80/1 81/18 82/20 87/24
**officers' [1]** 81/12
**official [4]** 105/3 105/6
105/12 105/20
**officials [1]** 68/10
**often [1]** 92/10
**oh [2]** 32/23 99/8
**okay [46]** 4/6 4/11 4/15 5/24

**O**

okay... [42] 10/5 6/8 47/6
11/19 12/1 12/8 12/12 13/6
16/1 16/1 16/8 17/22 18/24
24/6 24/15 31/21 33/3 34/16
40/23 41/21 42/12 42/22 47/7
50/8 52/9 54/25 61/4 61/7
63/15 63/25 64/1 64/24 67/12
67/19 89/2 89/21 95/4 97/15
100/1 100/2 102/3 104/21
**old [6]** 14/20 34/19 45/25
58/24 92/22 94/10
**omission [2]** 28/14 29/13
**once [4]** 93/6 93/15 103/12
103/16
**one [45]** 5/3 6/11 7/3 7/8
7/12 11/16 12/2 16/14 18/2
19/4 19/17 21/5 25/20 28/5
33/6 35/15 36/15 39/25 40/7
49/16 56/1 56/16 61/9 63/13
65/7 69/3 75/3 75/12 77/12
80/12 80/21 83/6 83/14 85/10
87/1 87/10 87/17 92/17 93/10
96/11 96/22 97/21 98/11
100/11 100/16
**one-year [1]** 80/21
**ongoing [2]** 56/9 56/12
**only [21]** 11/16 16/24 20/20
24/5 33/23 36/16 40/2 57/19
61/10 62/17 63/3 63/4 63/13
73/15 86/16 91/2 93/22 94/11
96/15 96/20 97/23
**opened [1]** 62/10
**opening [3]** 18/5 21/20 22/15
**operated [1]** 21/8
**operating [1]** 21/5
**operative [2]** 53/23 54/3
**opinion [3]** 9/5 24/18 25/5
**opinions [1]** 19/23
**opportunity [9]** 5/10 47/11
52/3 52/4 55/13 66/1 86/19
99/17 101/22
**opposed [1]** 40/11
**opposite [1]** 52/19
**opposition [2]** 40/17 42/24
**order [17]** 8/18 27/25 28/4
28/10 35/6 40/14 40/14 40/15
40/24 62/10 63/23 68/5 84/23
95/18 95/23 97/7 104/4
**ordered [1]** 93/23
**ordinarily [3]** 70/16 84/25
92/8
**ordinary [1]** 90/20
**original [1]** 60/11
**Oriole [1]** 27/14
**other [49]** 4/6 5/7 5/19
13/23 14/5 15/7 16/3 16/21
19/20 19/21 20/21 20/22
21/13 22/7 23/6 28/24 34/9
35/18 38/8 39/7 40/7 48/14
50/2 50/12 53/24 58/7 61/5
68/9 68/12 69/21 70/24 71/15
73/24 83/3 85/6 89/9 89/23
91/1 92/5 94/12 95/18 99/5
100/14 101/16 101/20 101/23
103/1 103/15 104/16
**others [1]** 52/5
**otherwise [4]** 6/21 70/23
74/17 92/13
**our [32]** 10/4 10/6 11/18
12/11 13/5 16/13 20/5 20/23
25/17 26/3 26/5 28/21 28/22
33/16 39/17 41/3 46/9 49/20
50/19 51/16 52/23 58/19
58/22 60/9 60/10 87/5 89/15
96/7 96/8 101/5 101/15
101/23
**out [30]** 12/22 13/1 15/10
15/13 23/7 27/17 37/25 43/25

45/17 56/14 60/21 63/17
69/12 72/7 75/12 83/12 84/19
86/1 87/22 88/18 91/01 93/20
93/20 94/21 96/8 97/6 98/19
103/7 104/8 104/12 104/14
**outlier [2]** 19/6 19/12
**outright [1]** 18/6
**outset [2]** 18/3 27/22
**outside [3]** 68/15 70/17
83/14
**outweigh [1]** 73/24
**over [27]** 5/17 10/25 15/8
37/21 39/9 39/19 39/25 41/23
43/6 43/8 45/18 46/8 46/15
46/16 46/19 47/5 55/11 58/13
59/3 63/10 72/18 85/24 90/24
93/9 93/20 96/22 101/13
**overall [2]** 91/14 92/19
**overlap [1]** 31/6
**overturned [1]** 57/9
**Owens [15]** 8/6 26/8 52/19
52/20 53/5 53/6 53/7 53/7
53/8 54/16 55/7 69/7 69/11
69/12 69/15
**own [5]** 25/9 35/21 41/6
80/22 101/15
**owns [2]** 68/16 68/17

**P**

**page [11]** 7/2 23/3 24/17
25/4 28/21 28/21 40/19 41/8
41/14 41/23 81/8
**pages [5]** 10/25 28/16 41/15
87/4 105/11
**paid [1]** 26/2
**painstakingly [1]** 10/24
**paint [1]** 8/18
**papers [5]** 11/18 17/25 20/24
69/22 70/12
**paragraph [5]** 24/19 24/21
25/6 38/9 42/7
**paragraphs [2]** 38/13 54/6
**parallel [1]** 57/22
**parallels [1]** 76/10
**paramount [1]** 69/1
**paraphrasing [1]** 39/10
**pardon [1]** 63/21
**Parish [2]** 76/24 77/4
**Park [2]** 27/14 72/4
**PARKS [23]** 1/3 3/3 3/8 3/11
3/13 3/19 4/1 7/6 36/23
38/14 42/21 43/19 51/14
61/17 63/4 63/11 75/25 77/9
77/16 79/15 81/16 98/18
105/8
**Parks' [8]** 43/1 43/3 54/3
54/13 78/10 78/24 81/1 83/9
**part [15]** 6/25 19/17 23/13
37/24 41/16 44/5 45/4 49/22
54/23 61/22 70/10 74/18
77/17 99/19 102/21
**partially [1]** 42/5
**participated [1]** 9/4
**particular [12]** 32/23 48/1
52/5 72/20 73/23 78/17 81/10
82/14 83/11 89/7 91/3 91/20
**particularly [7]** 7/24 14/19
19/6 73/25 78/2 81/20 82/11
**particulars [1]** 99/7
**parties [12]** 5/6 5/8 85/23
92/10 92/11 93/20 94/3 94/16
102/25 103/5 103/9 104/11
**parts [3]** 89/9 90/18 94/16
**party [6]** 43/18 67/5 77/24
78/2 87/21 99/15
**pass [2]** 26/10 90/17
**passed [2]** 21/10 21/11
**past [2]** 44/10 55/10
**path [1]** 9/22

**pattern [1]** 53/18
**Paul [2]** 3/19 4/1
**pause [1]** 1101 1126
**paying [2]** 72/9 73/5
**payment [1]** 73/25
**pays [1]** 48/5
**pending [4]** 3/2 5/1 57/11
70/6
**people [1]** 27/12
**people's [1]** 30/2
**per [4]** 8/15 39/8 39/22
97/21
**perceived [1]** 20/24
**percent [2]** 65/21 65/22
**perhaps [4]** 32/4 75/17 89/9
96/4
**period [6]** 30/6 53/23 54/3
57/13 57/15 75/21
**perjury [1]** 11/1
**permissible [1]** 81/5
**permit [1]** 46/11
**perpetrator [3]** 58/23 60/4
60/15
**persistent [1]** 31/11
**person [4]** 37/22 57/25 88/17
88/20
**personal [2]** 4/2 64/13
**personally [1]** 8/1
**perspective [1]** 49/20
**persuasive [1]** 73/11
**Peters [1]** 28/25
**petition [24]** 7/1 7/21 9/15
9/15 17/9 17/14 35/13 35/13
37/10 37/11 40/16 42/3 62/11
62/13 62/21 63/24 70/18
77/19 77/20 78/15 79/2 86/10
98/24 99/10
**Pfeiler [1]** 4/3
**phase [1]** 35/14
**Phelps [1]** 4/4
**picture [1]** 95/23
**pieces [1]** 84/19
**pin [3]** 23/4 58/24 64/7
**place [3]** 16/23 80/11 85/22
**placed [1]** 47/23
**places [1]** 86/13
**plainly [1]** 9/9
**plaintiff [46]** 1/4 1/12 3/8
3/11 3/13 6/17 6/19 8/12
8/17 9/1 9/2 9/12 9/25 10/4
10/9 10/13 10/15 10/23 14/5
14/10 15/20 28/10 29/1 31/1
31/9 33/12 33/17 34/9 35/20
36/10 44/16 51/4 68/18 75/18
80/9 82/23 84/10 84/12 85/24
86/3 86/7 89/15 96/14 100/8
103/3 104/17
**plaintiff's [12]** 6/25 7/11
7/20 7/21 13/4 27/21 41/10
44/20 86/12 91/2 93/13 96/10
**plaintiffs [11]** 5/9 28/5
29/19 33/7 33/9 34/8 55/5
61/8 75/8 94/1 103/24
**plan [1]** 4/24
**Planning [1]** 72/4
**plausibility [1]** 7/10
**plausible [6]** 28/2 28/2
28/11 32/3 32/4 82/8
**played [1]** 81/18
**plead [7]** 7/9 9/2 10/16
27/25 52/20 53/14 55/8
**pleaded [6]** 9/2 9/10 15/17
54/19 76/19 82/16
**pleading [13]** 9/13 10/10
10/14 39/5 48/13 53/4 54/15
55/3 69/8 69/9 79/5 81/13
82/9
**pleadings [5]** 20/5 29/12
32/7 69/13 78/25

## P

**please [3]** 3/15 3/20 8/16
**pled [3]** 58/11 55/11 101/10
**plug [1]** 92/18
**pockets [1]** 47/23
**point [37]** 15/19 23/13 26/1
31/17 32/10 35/14 53/17 58/7
58/17 60/24 60/25 71/23 73/6
79/18 79/19 80/4 80/20 83/18
83/25 84/6 85/15 86/7 89/3
89/7 93/15 93/18 94/21 97/22
98/8 98/17 100/6 102/20
102/20 102/23 103/18 103/19
104/5
**pointed [1]** 60/16
**points [5]** 48/3 61/9 64/2
65/5 93/19
**police [76]** 1/6 3/4 4/10 6/6
6/12 8/1 8/1 8/4 9/3 9/7
20/8 21/5 21/15 26/14 26/20
27/3 33/2 33/22 34/11 36/5
36/19 37/2 37/19 37/23 38/7
40/2 40/11 42/2 42/15 42/16
46/13 47/18 48/10 48/14
48/16 48/18 48/19 49/9 51/19
51/24 52/2 62/1 64/5 64/10
64/14 68/14 68/14 68/16
68/19 68/23 71/3 71/5 71/13
72/22 72/25 73/3 73/7 73/9
73/10 73/19 74/10 74/14
74/20 77/22 78/15 79/3 79/21
80/1 81/15 82/6 83/14 84/3
87/24 87/25 99/5 105/8
**policy [4]** 14/15 15/12 28/9
57/21
**policymaker [5]** 29/16 30/1
30/10 53/3 55/5
**policymakers [3]** 28/12 29/12
31/9
**Ports [1]** 20/11
**position [14]** 10/4 10/6
10/17 27/20 32/14 35/16
43/24 58/22 75/1 77/25 78/1
81/18 93/14 102/19
**positioned [1]** 14/19
**positions [1]** 10/10
**possibility [4]** 42/18 43/8
63/1 77/10
**possible [8]** 13/16 13/17
15/21 28/2 32/3 44/5 64/12
104/2
**post [3]** 25/11 36/22 100/10
**post-argument [1]** 25/11
**post-conviction [1]** 36/22
**postdate [1]** 29/20
**postdates [1]** 30/5
**potential [6]** 11/13 50/24
73/5 80/10 94/2 94/5
**potentially [4]** 10/1 34/3
81/21 94/22
**power [2]** 63/21 63/21
**powers [3]** 21/12 68/14 68/15
**practical [1]** 93/24
**practice [9]** 19/22 31/10
31/15 31/20 31/22 52/11
52/15 82/4 82/10
**pre [3]** 34/12 82/7 89/16
**pre-conditions [1]** 34/12
**pre-discovery [1]** 82/7
**pre-filing [1]** 89/16
**precedent [1]** 20/16
**precise [1]** 81/23
**precludes [1]** 44/15
**preconditions [1]** 33/24
**predated [1]** 16/19
**predecessor [2]** 39/13 39/17
**predicates [1]** 84/16
**predominant [1]** 25/20
**preeminence [1]** 69/3

**preface [2]** 47/10 47/14
**prefers [1]** 89/12
**prejudice [3]** 57/9 57/10 1/20 7/22
102/9
**prejudicing [1]** 5/2
**preliminarily [1]** 87/2
**preliminary [1]** 100/10
**premature [6]** 33/25 81/2
83/25 102/7 102/8 102/10
**prepared [5]** 5/25 70/12
95/17 96/7 104/4
**preparing [1]** 95/16
**prescriptive [1]** 50/14
**present [3]** 42/4 56/10 90/16
**presentation [2]** 61/20 62/25
**presented [2]** 59/4 88/9
**presenting [1]** 32/17
**pressured [3]** 9/11 64/15
64/20
**presumably [1]** 54/20
**pretrial [2]** 56/22 58/12
**pretty [1]** 27/4
**prevailed [2]** 10/18 36/10
**prevalent [1]** 78/22
**prevented [1]** 29/9
**prevents [1]** 70/25
**primacy [2]** 47/22 72/19
**primarily [3]** 73/8 73/11
86/8
**primary [2]** 6/23 76/12
**Prince [4]** 26/23 27/3 76/7
77/1
**principal [1]** 7/8
**principle [1]** 15/8
**prior [8]** 30/9 31/2 54/3
54/20 77/7 77/25 78/18 82/12
**priorities [1]** 103/2
**priority [1]** 103/3
**prison [4]** 34/25 54/12 63/18
88/18
**probable [7]** 29/3 58/8 58/20
58/22 60/14 60/15 75/8
**probably [1]** 94/1
**problem [6]** 50/13 63/19
67/13 67/18 85/13 94/2
**problems [2]** 57/19 81/21
**proceed [7]** 81/23 82/1 89/20
94/20 96/6 96/7 102/12
**proceeded [1]** 75/25
**proceeding [8]** 44/16 57/20
70/20 77/17 78/18 87/22 88/1
88/8
**proceedings [15]** 2/5 34/23
56/3 56/9 56/11 56/12 57/7
57/11 58/3 59/5 59/14 104/22
105/6 105/12 105/14
**proceeds [1]** 90/20
**process [12]** 12/20 53/24
54/1 54/17 58/13 60/20 75/24
76/1 79/23 86/15 86/17 94/9
**produce [1]** 37/13
**produced [2]** 2/5 37/12
**production [1]** 96/12
**proffer [2]** 61/19 85/14
**proffers [1]** 85/8
**program [2]** 28/15 29/17
**promptly [1]** 14/17
**prong [1]** 43/22
**prongs [1]** 78/8
**proof [2]** 57/1 57/2
**proper [3]** 30/15 39/12 51/5
**properly [3]** 27/25 93/13
101/10
**proposal [1]** 100/14
**propose [3]** 92/23 103/5
103/22
**proposed [2]** 4/21 104/12
**proposition [1]** 47/18
**pros [2]** 12/7 16/18

**prosecute [1]** 57/17
**prosecuted [1]** 34/20
**prosecuting [3]** 26/14 26/15
57/25
**prosecution [22]** 8/3 11/13
12/3 12/7 14/8 14/22 15/9
16/15 16/16 16/20 32/11
50/17 51/10 51/12 54/4 54/5
75/16 75/20 75/22 76/14
77/10 80/15
**prosecutor [55]** 8/3 8/4 9/3
9/6 9/11 9/11 9/12 11/1 11/3
17/16 35/15 36/4 36/14 36/21
37/3 37/5 37/8 37/17 37/19
37/20 38/11 38/14 38/21
39/14 39/17 39/18 39/25 40/3
40/10 44/6 44/7 45/6 45/12
45/18 45/25 46/9 46/14 46/14
51/13 61/25 62/18 63/5 63/10
64/5 64/9 64/10 64/15 64/17
64/20 78/15 78/19 79/17
79/22 82/24 83/6
**prosecutor's [6]** 38/16 38/20
40/1 62/8 63/8 64/18
**prosecutorial [3]** 37/15
37/21 83/9
**prosecutors [2]** 64/5 77/21
**protect [2]** 20/14 20/14
**protection [2]** 23/10 69/1
**prove [11]** 36/23 52/21 53/1
55/9 59/1 60/18 60/19 60/19
93/16 93/17 97/1
**proven [1]** 28/18
**provide [2]** 25/12 54/15
**provided [5]** 8/22 52/4 53/25
73/3 80/18
**proving [2]** 53/3 69/8
**proximate [1]** 9/9
**public [6]** 14/15 21/10 26/16
68/6 68/11 68/13
**publication [1]** 24/13
**pull [3]** 85/19 92/18 95/2
**pulled [2]** 17/14 103/12
**purportedly [1]** 101/17
**purpose [2]** 20/12 64/12
**purposes [15]** 19/9 23/16
36/3 36/15 37/19 39/24 48/4
49/17 50/11 54/14 68/8 71/24
73/20 78/14 82/22
**purse [1]** 20/14
**pursuant [6]** 25/23 25/24
58/13 73/16 75/24 76/1
**pursue [5]** 33/18 84/11 91/16
91/19 101/10
**pursued [1]** 94/13
**pursuing [9]** 13/24 18/4 18/9
18/10 52/10 52/13 52/14
52/15 97/12
**purview [1]** 27/9
**put [8]** 10/23 28/5 28/17
30/10 63/4 68/24 92/11 94/7

## Q

**qualified [5]** 64/13 79/11
79/14 79/18 79/24
**question [10]** 9/14 25/15
32/9 50/8 53/20 72/6 85/4
85/21 90/5 98/20
**questions [8]** 5/6 5/18 6/1
50/3 65/11 69/21 91/3 91/4
**quick [1]** 103/22
**quickly [2]** 103/22 104/2
**quite [6]** 8/12 9/9 10/3
26/19 70/7 92/22

## R

**raise [6]** 18/4 22/15 33/7
85/13 92/2 92/6
**raised [6]** 22/23 42/20 44/12

## R

**raised [3]** 50/4 62/22
83/23
**raises [1]** 35/14
**Ram [2]** 72/3 72/7
**Randall [1]** 76/7
**rather [7]** 34/10 35/10 72/14
84/12 97/9 100/9 104/7
**Ray [1]** 4/4
**RDR [1]** 2/1
**reach [1]** 103/10
**read [6]** 17/15 47/11 65/8
65/24 67/3 86/20
**reading [2]** 8/15 20/16
**reaffirmed [1]** 74/13
**real [4]** 34/22 58/23 60/3
60/15
**reality [1]** 70/8
**really [20]** 9/24 36/2 38/1
39/6 40/12 43/10 44/6 46/21
48/3 50/4 50/12 53/5 55/6
68/7 86/18 90/19 96/1 96/2
96/24 102/11
**rearguing [1]** 100/13
**reason [14]** 4/25 12/24 27/1
38/20 42/21 43/1 49/8 83/8
92/18 92/19 92/24 93/6
100/22 104/13
**reasonable [1]** 80/3
**reasonably [3]** 16/22 16/22
17/16
**reasoning [3]** 72/24 75/12
77/11
**reasons [9]** 7/7 8/25 15/12
40/18 40/25 41/1 56/21 81/14
97/4
**rebut [1]** 96/11
**rebuttal [2]** 5/10 61/9
**received [2]** 29/6 99/4
**receiving [1]** 17/4
**recent [5]** 9/4 64/21 70/4
75/2 83/9
**recently [4]** 8/5 8/7 28/23
67/23
**recess [2]** 70/2 70/5
**recited [1]** 13/3
**recognize [4]** 26/10 52/6
56/13 93/4
**recognized [1]** 49/9
**recollection [3]** 88/11 88/14
88/23
**recommendation [1]** 101/18
**record [9]** 3/6 4/7 4/8 5/21
35/22 39/19 62/7 81/20 81/22
**recorded [1]** 2/5
**recover [1]** 84/13
**reexamine [1]** 22/13
**refer [1]** 28/21
**reference [2]** 17/9 51/15
**referenced [5]** 30/5 44/20
52/22 70/22 74/17
**references [1]** 24/25
**referencing [1]** 88/4
**referred [1]** 6/13
**referring [5]** 41/13 42/9
42/10 54/6 54/9
**refers [1]** 82/15
**regarding [8]** 4/20 47/15
74/23 78/19 79/11 84/7 103/6
103/16
**regardless [3]** 43/20 47/21
94/18
**Regional [1]** 67/8
**reinstated [1]** 8/10
**reiteration [1]** 24/21
**reject [1]** 18/6
**rejected [2]** 49/8 68/24
**rejects [2]** 80/25 84/9
**related [1]** 62/17

**relates [2]** 13/21 16/13
**relating [4]** 77/18 96/9
96/21 96/25
**relatively [1]** 94/8
**release [4]** 8/13 13/2 56/25
78/24
**released [3]** 8/16 60/12
99/14
**relevant [3]** 53/23 67/4 69/6
**relied [4]** 31/1 40/8 43/23
76/25
**relies [1]** 86/12
**rely [1]** 59/9
**relying [5]** 22/9 49/23 90/14
91/8 101/3
**remain [2]** 83/22 95/17
**remainder [2]** 32/19 60/16
**remains [2]** 8/11 78/10
**remember [1]** 88/21
**removes [1]** 48/17
**renders [1]** 83/17
**RENEE [2]** 1/13 3/10
**renew [1]** 93/15
**renewed [1]** 16/19
**repeatedly [1]** 52/22
**replead [3]** 46/11 46/25 64/4
**reply [3]** 28/22 40/13 40/22
**report [35]** 6/24 7/9 7/20
7/21 8/13 8/15 9/19 30/4
30/6 30/8 30/9 37/13 38/14
39/9 39/21 41/6 42/3 42/16
43/6 43/7 55/9 77/19 77/21
78/17 79/16 82/12 82/14 86/9
86/9 86/13 87/17 88/8 88/9
96/3 104/11
**reported [5]** 14/9 20/6 53/8
54/16 105/5
**reporter [5]** 2/1 3/20 105/1
105/3 105/20
**reports [13]** 9/22 89/15 90/7
90/9 90/15 91/9 91/25 95/7
95/21 99/5 101/4 101/6
101/23
**represent [9]** 3/17 4/13 6/11
16/24 17/12 87/25 97/16
97/17 97/18
**representative [2]** 4/2 99/23
**representing [1]** 97/22
**represents [1]** 41/4
**reprieves [1]** 63/22
**request [3]** 38/16 64/23 99/3
**requests [1]** 96/12
**require [4]** 58/2 95/25
101/15 104/10
**required [5]** 25/19 40/7
54/16 57/13 60/10
**requirement [1]** 80/21
**requirements [4]** 7/13 50/14
55/3 81/10
**requires [1]** 43/23
**requisite [1]** 7/10
**resist [1]** 94/1
**resolve [2]** 90/5 100/17
**resolved [2]** 70/11 102/17
**resources [1]** 102/10
**respect [10]** 28/20 29/11
30/12 30/15 32/6 32/18 33/8
75/7 81/12 98/5
**respectfully [1]** 8/24
**respectively [1]** 28/24
**respond [1]** 95/1
**responded [2]** 18/7 88/12
**response [4]** 14/10 15/25
41/3 53/20
**responsible [4]** 29/16 72/9
73/5 78/16
**rest [2]** 17/25 93/8
**rests [1]** 28/8
**result [8]** 34/24 42/18 43/11

63/2 74/12 75/1 80/20 103/18
**resulting [1]** 78/12
**retaliation [1]** 21/24
**retired [1]** 6/11
**Retirement [1]** 71/10
**retrial [1]** 57/12
**retried [1]** 55/22
**reveal [2]** 79/25 83/16
**review [1]** 65/12
**reviewed [1]** 101/5
**Riddick [1]** 4/4
**right [11]** 14/12 17/13 26/24
32/21 42/23 42/25 66/17
85/15 95/10 99/1 102/7
**rights [4]** 29/14 30/3 46/18
79/23
**ripe [4]** 75/23 80/20 92/25
100/4
**ripen [1]** 89/19
**RMR [1]** 2/1
**road [1]** 101/9
**robbery [1]** 34/20
**ROCHE [3]** 1/13 3/13 67/7
**Rockwell [1]** 74/15
**role [2]** 79/3 81/18
**roughly [1]** 5/9
**round [3]** 100/10 100/11
103/4
**rounds [1]** 100/9
**rule [16]** 5/1 12/23 14/7
15/5 15/6 15/10 15/11 24/18
35/11 55/12 62/23 64/17
70/12 70/18 70/24 72/1
**ruled [1]** 100/1
**ruling [6]** 22/5 59/15 67/25
95/24 98/5 102/8
**rulings [1]** 84/24
**run [3]** 11/14 56/2 75/11
**running [1]** 21/4
**Russell [3]** 20/4 20/25 28/24

## S

**said [48]** 9/22 17/1 20/12
21/1 28/8 29/7 39/22 41/4
46/14 46/18 53/8 53/13 54/22
55/7 55/7 55/24 62/7 63/19
64/11 65/7 65/22 66/6 67/23
68/18 71/14 74/6 86/21 87/19
88/9 88/10 88/23 89/4 90/8
92/8 92/16 95/10 95/11 95/12
99/23 99/24 99/24 100/3
101/1 101/3 102/12 105/10
105/12 105/14
**salaries [1]** 48/20
**same [33]** 4/13 14/7 15/10
15/11 15/12 22/18 31/16
36/15 56/22 57/2 57/3 57/16
58/1 59/2 59/3 59/8 59/20
60/4 60/7 60/18 67/22 68/9
72/2 75/11 76/12 76/19 77/11
82/13 82/20 92/19 94/9 95/14
103/25
**sanction [2]** 85/3 85/6
**Sansone [1]** 42/24
**satisfy [1]** 81/9
**save [2]** 6/2 101/5
**saw [2]** 95/8 95/12
**say [31]** 5/12 15/12 17/8
21/6 21/7 31/19 36/1 36/1
39/8 42/4 44/4 45/5 46/10
47/2 47/17 49/24 51/6 52/5
52/17 54/7 64/22 68/1 69/7
89/23 89/25 90/11 90/22
98/21 99/16 101/6 104/12
**saying [23]** 21/17 22/5 35/18
44/18 45/2 45/8 49/1 58/5
59/19 66/3 66/3 67/14 88/24
91/19 91/22 96/21 97/1 97/2
98/18 98/20 98/24 99/11

S

**saying [1]** 100/12
**says [35]** 8/14 13/2 13/23
17/9 24/18 35/25 35/25 36/13
37/15 39/8 40/15 40/24 41/18
41/22 41/23 41/24 42/13
42/21 42/22 42/25 47/5 52/2
52/19 52/20 53/14 56/9 57/5
63/23 69/8 87/17 88/14 88/19
99/2 99/6 99/7
**scene [4]** 6/20 13/8 14/19
88/13
**schedule [16]** 92/9 92/9
92/10 92/12 93/17 94/4 100/3
102/25 103/5 103/7 103/9
103/22 104/5 104/9 104/9
104/13
**scheduling [2]** 104/4 104/14
**SCHNEUR [1]** 1/23
**scope [4]** 23/17 33/20 89/18
96/8
**search [2]** 59/12 59/13
**searches [1]** 29/3
**seated [2]** 3/17 97/11
**second [7]** 25/6 26/7 29/11
48/7 62/17 62/19 62/20
**secondly [3]** 7/2 9/4 64/1
**Section [8]** 7/24 9/8 68/13
71/7 72/24 74/4 76/6 80/9
**see [9]** 16/3 17/6 25/4 31/21
67/4 69/13 92/24 92/24 94/1
**seeing [2]** 24/24 96/15
**seek [1]** 64/18
**seeking [2]** 8/13 85/2
**seem [2]** 23/11 93/1
**seemed [2]** 32/9 54/7
**seems [4]** 23/25 85/6 87/14
87/18
**seen [1]** 48/12
**seizure [1]** 13/8
**seizures [1]** 13/8
**selected [2]** 24/13 24/14
**self [1]** 42/19
**self-defense [1]** 42/19
**sense [2]** 91/22 103/17
**sensitive [1]** 102/23
**sent [3]** 16/17 80/14 85/23
**sentence [1]** 7/2
**separate [4]** 5/3 48/11 82/21
91/13
**separately [2]** 4/25 94/6
**September [3]** 1/6 105/10
105/16
**sequence [2]** 89/6 93/21
**series [1]** 82/12
**serious [2]** 11/3 95/14
**seriously [1]** 82/23
**serve [2]** 49/4 49/7
**served [1]** 54/12
**services [1]** 27/14
**serving [1]** 63/18
**set [12]** 8/5 8/7 10/22 40/18
41/1 48/20 51/11 72/7 72/25
93/17 100/2 100/2
**sets [1]** 76/22
**setting [1]** 48/15
**seven [1]** 58/12
**seven-month [1]** 58/12
**Seventh [1]** 76/25
**several [3]** 7/5 7/7 28/5
**shared [1]** 95/20
**she [11]** 42/25 46/18 47/11
47/15 47/16 51/5 53/13 53/14
54/7 54/9 64/4
**shift [1]** 20/3
**Shneur [2]** 4/12 97/14
**shooter [2]** 7/6 11/2
**shooting [2]** 6/16 42/15
**short [4]** 13/20 13/21 32/8

103/20
**shorthand [2]** 105/6 105/13
**should [7]** 5/15 16/10 17/21
17/23 22/14 22/19 39/10
44/19 47/19 49/22 71/22 75/5
77/2 77/16 86/25 87/1 89/12
91/16 93/14 94/7 94/8 94/17
94/20 96/6 96/7 96/25 102/22
**show [7]** 21/2 28/10 28/18
31/9 32/12 45/6 86/1
**shown [2]** 31/8 34/3
**shows [7]** 29/21 30/5 32/2
80/13 81/20 99/9 101/17
**side [4]** 5/16 5/19 37/6
85/12
**sides [5]** 5/13 18/8 76/22
86/21 93/1 93/4 93/12 93/25
102/10
**sight [1]** 27/25
**signature [7]** 42/6 88/10
88/15 88/15 89/1 89/1 99/24
**significance [1]** 72/17
**significant [6]** 42/17 44/9
63/1 72/13 73/7 93/19
**similar [6]** 26/13 53/15
53/23 72/24 81/14 82/8
**similarly [1]** 89/17
**simply [11]** 21/2 29/10 31/13
49/1 49/24 55/3 58/10 64/6
83/2 83/22 90/21
**since [9]** 5/11 19/6 19/15
20/2 20/9 32/8 32/15 35/3
74/13
**sitting [2]** 26/24 99/5
**situation [3]** 9/18 11/10
14/3
**six [2]** 17/23 90/10
**Sixteen [1]** 6/17
**slam [1]** 25/24
**slow [1]** 3/20
**small [1]** 65/5
**Smith [4]** 12/5 32/16 75/2
82/5
**smoking [1]** 47/6
**so [154]**
**so-called [2]** 6/24 88/8
**softer [1]** 8/10
**Solicitor [2]** 80/14 97/10
**some [60]** 5/5 5/9 16/10
16/11 17/7 18/5 22/7 23/6
29/23 30/13 35/2 37/5 40/10
45/5 45/13 47/8 47/25 48/8
48/15 50/24 55/5 57/18 57/21
68/18 70/3 70/7 70/17 71/8
73/12 73/13 81/20 83/21 85/6
85/21 86/3 86/4 86/16 88/3
89/7 89/9 90/2 91/1 91/12
91/14 91/15 92/11 92/17 93/1
93/7 93/15 94/9 94/21 95/19
95/25 99/6 99/19 99/22 100/6
103/23 104/13
**somebody [1]** 47/5
**somehow [5]** 9/19 40/14 48/13
49/7 51/22
**someone [5]** 14/17 14/20
63/17 99/22 102/24
**something [13]** 25/11 32/2
45/3 50/6 59/12 62/9 65/23
71/17 91/1 91/16 102/17
102/21 102/22
**sometimes [2]** 27/24 92/12
**somewhat [5]** 21/18 38/1
87/18 90/13 92/16
**soon [2]** 75/24 92/8
**sooner [2]** 36/24 98/15
**sorry [9]** 14/1 26/15 29/23
37/10 39/17 42/20 57/9 68/16
97/15
**sort [8]** 25/24 30/13 34/2

37/5 45/8 45/13 48/15 99/19
**sound [2]** 39/19 70/1
**sounding [1]** 22/21
**sounds [6]** 21/18 66/2 89/5
90/1 91/20 102/1
**South [2]** 20/11 71/9
**SOUTHERN [1]** 1/2
**sovereign [24]** 18/16 18/18
18/21 19/9 20/13 20/15 23/7
23/10 23/16 24/22 25/5 33/1
33/10 33/13 33/25 34/12
47/19 66/10 66/14 66/19 69/1
71/12 83/24 84/1
**sparingly [1]** 35/10
**speak [3]** 17/11 47/14 61/15
**speaking [2]** 8/19 41/15
**speaks [2]** 38/9 39/22
**Special [3]** 33/15 74/8 84/8
**specific [6]** 16/22 44/6
45/16 47/14 47/15 50/3
**specifically [6]** 7/2 41/14
50/17 51/22 52/18 74/4
**spell [1]** 83/12
**SPENCE [2]** 1/13 3/10
**spent [2]** 34/25 47/8
**spheres [1]** 36/18
**spin [1]** 56/14
**spins [1]** 60/21
**stack [1]** 99/4
**stage [10]** 7/17 7/19 39/5
39/12 39/18 53/5 54/15 78/9
79/6 104/8
**stance [1]** 77/25
**stand [3]** 3/23 70/3 95/5
**standard [8]** 31/15 59/8
65/12 69/14 82/9 84/25 92/9
104/6
**standing [1]** 33/12
**standpoint [1]** 104/15
**start [4]** 5/5 35/5 35/11
92/22
**started [2]** 27/2 35/4
**starting [3]** 38/7 40/4 42/13
**state [90]** 10/22 14/2 14/4
16/15 16/15 16/21 17/21 19/8
19/9 19/15 19/18 19/18 20/11
20/19 21/4 21/8 21/11 21/12
21/13 21/13 21/15 22/9 25/19
25/22 25/23 25/24 26/7 26/15
26/15 26/21 26/21 27/5 27/8
32/24 33/1 33/9 36/12 37/1
37/1 37/2 37/11 37/12 40/18
41/4 41/7 41/23 41/25 43/10
43/12 43/18 48/7 48/11 48/13
48/22 49/1 49/2 49/7 49/10
49/12 49/13 49/15 49/24
65/15 67/1 67/5 68/8 68/9
68/12 68/20 69/5 71/6 72/6
72/9 72/14 72/16 73/4 73/8
73/14 73/18 73/19 73/20 74/2
74/5 74/9 80/7 82/18 83/19
84/1 87/12 87/15
**state's [13]** 8/16 20/14
26/11 26/12 30/23 41/20 43/7
61/20 63/19 63/20 69/1 69/4
99/22
**stated [4]** 6/10 18/16 74/4
74/18
**statement [6]** 11/3 20/18
38/8 38/10 38/10 39/20
**statements [6]** 36/1 37/9
43/21 60/3 60/3 69/18
**states [8]** 1/1 1/10 2/2 12/5
25/7 39/21 39/23 105/4
**statewide [4]** 27/9 72/15
73/11 74/1
**stating [3]** 14/6 19/14 80/10
**status [1]** 104/11
**statute [21]** 11/6 11/15

## S

**statute** [19] 11/20 11/23
11/24 13/23 14/12 15/2 32/19
50/13 55/25 61/2 62/21 74/24
75/4 75/10 76/3 80/8 80/17
81/3 81/10
**statutes** [2] 21/2 73/20
**stenography** [1] 2/5
**step** [1] 81/23
**steps** [1] 30/15
**still** [23] 9/16 9/22 10/1
23/5 24/24 40/3 44/9 44/23
45/23 46/15 47/3 47/23 51/25
57/10 57/11 57/12 59/7 69/10
69/12 75/5 75/9 75/23 80/23
**story** [5] 17/15 24/3 25/1
25/3 25/14
**Stovall** [3] 10/12 10/20
10/22
**straightforward** [1] 49/21
**strange** [2] 87/14 98/20
**stray** [1] 73/12
**Street** [4] 1/17 1/21 17/13
17/14
**stretch** [1] 13/1
**stretching** [1] 12/22
**strict** [1] 81/4
**strictly** [1] 80/8
**Strohman** [1] 20/23
**strong** [2] 87/5 101/17
**stronger** [1] 10/19
**strongly** [3] 62/5 86/12
100/18
**structure** [4] 90/12 90/22
91/23 92/12
**structured** [1] 89/16
**structuring** [1] 91/6
**stuck** [1] 50/12
**subject** [24] 12/20 13/12
13/13 17/2 18/12 19/15 22/23
23/21 25/14 27/6 57/12 65/11
65/16 65/25 67/11 68/1 68/2
71/11 71/18 71/25 74/14 75/4
75/6 93/11
**submit** [4] 49/14 69/21
104/11 104/12
**submitted** [2] 70/24 85/2
**suborned** [1] 11/1
**Subpart** [1] 24/18
**subscribed** [1] 105/15
**subsection** [1] 25/5
**subsequent** [2] 31/2 80/16
**subsequently** [4] 6/19 8/9
55/21 56/2
**substantial** [9] 42/18 43/8
50/19 51/17 51/24 52/2 52/7
63/1 81/4
**substantially** [1] 80/8
**succeed** [2] 78/23 79/18
**successful** [1] 53/9
**such** [11] 12/11 13/24 22/7
28/24 55/5 75/15 77/6 85/7
89/7 92/2 92/15
**sudden** [1] 90/10
**suddenly** [1] 98/25
**sued** [3] 17/20 19/24 21/23
**sufficient** [6] 52/8 53/11
55/11 82/3 82/8 93/3
**sufficiently** [2] 81/23 82/16
**suggest** [3] 32/17 47/25 93/9
**suggested** [1] 38/24
**suggesting** [2] 40/14 101/9
**suggests** [2] 47/22 48/11
**suit** [10] 6/19 18/17 34/15
56/7 56/8 56/8 57/25 71/7
72/23 74/22
**Suite** [2] 1/21 1/24
**suits** [2] 25/8 74/11
**sum** [1] 53/9

**summarized** [1] 80/15
**summary** [1] 71/1
**summation** [1] 27/3
**Supp** [1] 73/1
**supply** [1] 12/23
**support** [4] 45/11 46/12
83/13 86/2
**supported** [2] 29/12 42/19
**suppose** [2] 41/15 45/20
**supposed** [2] 15/22 39/25
**suppress** [1] 38/8
**suppression** [1] 59/11
**Supreme** [16] 12/5 20/10
20/16 20/18 21/17 28/7 29/7
30/23 32/15 37/14 47/21
55/19 61/2 67/22 68/25 75/2
**sure** [20] 3/22 3/25 11/22
16/1 16/5 22/16 26/19 29/19
36/7 41/9 41/17 44/3 44/11
46/2 47/10 51/17 53/21 68/5
94/13 97/3
**surpassed** [1] 53/7
**surprising** [1] 88/25
**surreply** [1] 18/7
**swoop** [1] 100/12
**Systems** [1] 71/10

## T

**Tabeling** [4] 30/4 30/8 55/9
82/12
**table** [1] 97/11
**take** [15] 5/3 5/24 30/14
38/25 39/1 39/4 44/19 68/10
68/21 70/2 85/22 89/5 92/4
97/11 101/13
**taken** [6] 10/11 10/17 17/13
77/25 91/7 105/13
**takes** [2] 38/10 68/9
**taking** [1] 35/16
**talk** [3] 5/25 70/4 92/8
**talked** [2] 47/16 86/13
**talking** [4] 38/19 66/21
75/13 101/16
**talks** [4] 55/20 57/18 57/21
102/1
**tape** [1] 105/14
**Taylor** [1] 79/19
**TDC** [3] 1/3 3/3 105/9
**TDC-18-03092** [2] 1/3 105/9
**TDC-18-3092** [1] 3/3
**teed** [1] 93/4
**Telephone** [1] 23/9
**tell** [5] 22/1 27/19 36/8
37/25 61/22
**tells** [1] 45/18
**ten** [1] 70/2
**ten-minute** [1] 70/2
**tend** [1] 87/3
**tender** [1] 90/7
**tendered** [1] 89/14
**tension** [1] 83/10
**tenuous** [1] 28/10
**term** [2] 18/21 76/9
**terminated** [4] 56/3 57/4
58/4 59/6
**terms** [5] 11/13 31/16 81/7
84/5 103/6
**test** [11] 14/13 14/15 19/10
19/20 19/22 35/8 47/20 48/1
48/2 48/3 49/22
**testifies** [1] 60/6
**testify** [2] 11/2 88/22
**testimony** [8] 17/2 17/2
42/16 85/9 96/1 96/3 101/23
105/7
**tests** [1] 19/17
**than** [17] 10/20 15/7 25/12
34/10 35/10 35/18 38/2 48/14
59/8 61/8 66/5 69/25 72/14

75/19 89/23 100/9 104/7
**thank** [13] 6/10 18/2 34/18
61/23 65/1 65/9
69/23 69/24 70/4 89/22
104/21
**that** [759]
**that's** [60] 10/12 11/2 11/8
11/18 13/9 13/20 14/13 15/24
17/1 18/15 19/10 19/17 19/19
20/8 20/12 25/11 25/25 28/16
29/14 31/14 32/3 32/4 33/4
33/5 33/9 33/16 33/21 35/9
36/2 36/12 39/11 40/7 41/3
44/20 53/3 54/8 54/10 54/13
55/6 56/15 58/14 60/4 60/7
60/18 65/24 70/7 79/1 86/10
90/15 90/18 91/16 92/13
93/10 95/11 95/20 96/21
98/19 103/4 103/17 103/25
**their** [20] 25/9 27/8 34/10
40/13 44/13 45/9 45/24 46/5
46/7 46/7 49/2 49/3 51/21
75/1 80/22 90/16 101/11
101/20 102/19 103/24
**theirs** [1] 101/24
**them** [13] 17/12 17/24 25/20
27/4 45/18 46/14 49/16 55/9
72/19 90/7 95/21 101/5 101/6
**then** [47] 5/9 5/18 5/24 8/1
8/4 8/9 11/9 20/17 24/15
25/6 25/15 28/17 30/19 33/7
34/3 34/16 38/17 42/4 42/7
42/21 44/23 45/9 45/22 50/8
52/10 53/25 54/21 55/21
58/16 64/1 67/15 70/3 84/5
84/25 89/13 89/19 92/20
93/17 94/22 100/10 103/8
103/12 103/17 103/19 103/22
104/14 104/15
**THEODORE** [1] 1/9
**theories** [3] 6/22 28/5 82/1
**theory** [21] 6/23 8/2 18/4
28/6 28/9 31/5 31/14 32/6
37/25 45/17 52/10 58/16
58/20 60/22 61/5 82/10 83/9
83/11 83/12 84/9 85/14
**there** [115]
**there's** [33] 4/17 4/25 7/16
8/14 11/12 13/8 16/2 16/21
21/1 24/12 24/20 29/14 29/21
38/20 43/8 44/14 47/21 56/7
56/9 59/11 59/12 61/9 65/12
68/18 68/22 73/12 85/8 85/8
92/9 92/12 92/18 100/21
103/15
**therefore** [11] 19/15 58/8
59/4 59/22 74/19 76/2 79/22
80/25 81/3 83/7 87/9
**these** [39] 4/24 5/3 8/23
9/22 10/22 11/12 15/8 17/18
17/19 22/7 45/7 46/12 46/20
47/12 47/24 49/23 54/11
54/14 54/15 54/19 55/2 55/8
73/22 73/23 78/9 82/12 84/24
85/9 87/3 91/24 93/8 93/22
94/7 95/13 96/4 96/12 99/13
103/21 104/1
**they** [84] 3/24 16/9 16/10
17/20 18/21 21/6 21/7 21/9
21/11 26/13 27/5 27/6 27/8
27/13 28/12 28/13 28/17
30/12 31/3 34/11 36/1 36/15
45/9 45/10 45/18 46/16 46/16
46/17 46/17 46/18 47/18
48/18 48/19 48/20 49/2 49/4
49/6 49/7 49/16 51/8 53/16
53/17 54/7 58/7 58/17 58/17
58/22 58/24 60/14 60/15
65/23 67/16 68/1 69/14 71/18

# T

**they** [29] 1:13 13/2 14/9
75/3 75/5 79/16 80/2 90/7
90/15 90/17 90/19 90/22 91/2
91/4 91/7 91/8 91/14 91/16
91/19 91/23 92/1 92/6 93/25
94/8 94/22 94/25 99/23
101/10 101/19 101/20
**they're** [6] 45/12 46/4 46/6
65/25 90/14 102/6
**they've** [4] 35/18 45/8 48/5
66/1
**thing** [12] 11/7 18/2 21/5
21/7 22/18 36/1 55/6 60/18
69/20 83/6 97/3 98/12
**things** [10] 5/3 5/7 15/8
30/17 35/13 53/2 61/10 69/19
85/7 98/5
**think** [91] 4/17 4/25 14/11
17/22 18/5 18/7 19/12 19/19
23/15 24/11 25/23 25/25
27/17 27/23 32/22 33/4 33/9
35/23 36/1 36/17 38/18 39/5
39/16 40/4 42/17 44/11 46/5
46/23 46/24 47/2 48/2 48/8
48/22 49/5 49/15 50/23 51/2
51/18 52/6 52/18 52/21 53/5
53/13 54/13 55/1 55/9 56/15
56/18 58/1 60/11 62/5 66/7
67/3 67/10 67/20 67/21 67/23
68/20 69/2 69/4 71/15 71/20
71/23 72/1 85/21 86/24 89/14
89/15 90/23 91/2 91/6 92/4
92/8 93/14 93/16 94/6 94/14
94/19 96/6 97/10 97/21 99/7
100/1 100/11 100/25 101/8
102/4 103/18 104/1 104/3
104/4
**thinking** [1] 5/15
**third** [4] 1/14 7/4 26/7
48/25
**this** [286]
**Thompson** [2] 28/7 69/16
**thorough** [2] 41/5 41/25
**those** [25] 6/13 12/3 13/25
20/2 20/22 21/12 28/24 29/1
29/20 30/20 33/24 34/3 38/3
46/22 46/24 47/14 51/8 54/2
56/12 72/17 72/21 81/14 83/8
90/9 101/6
**though** [10] 30/7 37/18 37/22
50/6 63/7 65/7 66/1 66/17
82/2 94/3
**thought** [2] 70/1 92/2
**Thousands** [1] 87/4
**three** [15] 6/22 11/18 11/24
12/14 13/10 13/11 32/21
32/24 35/7 55/18 75/5 75/7
76/3 77/24 81/8
**three-page** [1] 81/8
**threshold** [4] 70/14 71/2
90/17 92/13
**through** [11] 4/23 4/23 7/19
19/6 28/3 34/9 42/7 50/23
52/25 74/18 101/21
**throughout** [2] 34/23 71/4
**thrown** [1] 67/24
**thus** [2] 62/23 64/16
**ticks** [1] 99/9
**time** [55] 5/4 5/9 5/12 5/14
5/19 8/6 8/11 11/7 13/19
16/2 16/16 16/23 20/2 22/24
23/13 23/21 23/22 26/1 26/3
26/5 30/6 31/17 32/8 32/11
33/13 35/1 47/8 50/13 50/16
53/19 54/3 57/13 57/15 58/13
58/14 58/14 58/21 60/10
60/12 61/8 61/17 62/22 68/1
70/7 72/19 76/12 80/11 85/15

88/17 92/19 92/21 94/9 95/14
98/23 99/6
**timeframe** [3] 8/3 61/10
103/25
**timely** [1] 76/19
**times** [1] 94/15
**timing** [3] 50/9 50/14 86/18
**tinkering** [1] 104/10
**Title** [1] 67/25
**today** [6] 3/4 8/11 10/10
64/16 79/11 95/16
**Todd** [2] 3/19 4/1
**together** [7] 3/17 64/6 64/10
73/22 99/5 103/13 105/13
**Tom** [1] 4/3
**tomorrow** [1] 95/17
**Tony** [1] 61/20
**too** [5] 13/19 16/9 16/10
16/13 17/20
**took** [1] 10/23
**tort** [10] 33/21 34/13 34/14
49/16 70/21 76/12 77/6 80/5
80/10 80/22
**torts** [1] 73/20
**total** [1] 53/10
**towards** [3] 48/3 60/16
102/22
**track** [1] 76/19
**tracks** [1] 94/13
**train** [7] 28/6 28/8 30/14
30/25 31/7 52/11 52/14
**training** [14] 28/9 28/12
28/18 28/20 29/2 29/5 29/8
29/9 29/16 29/24 30/2 30/13
30/14 30/16
**transcript** [3] 1/9 2/5
105/12
**treasury** [4] 20/19 25/20
47/23 72/9
**treated** [2] 49/14 72/15
**treating** [1] 65/23
**trial** [19] 6/18 43/9 56/23
58/14 59/3 59/4 60/5 60/7
62/23 63/6 75/25 79/23 93/6
93/14 94/6 100/4 102/16
102/17 103/20
**triggered** [1] 22/1
**true** [4] 11/4 19/19 68/20
81/20
**try** [10] 5/18 35/3 39/4 90/8
91/16 92/11 94/1 94/4 103/10
103/10
**trying** [13] 12/17 12/19 16/3
16/8 23/5 27/7 45/4 46/10
55/2 55/24 59/7 85/14 88/18
**Tugya** [2] 3/19 4/1
**turn** [8] 37/20 39/9 39/19
39/25 45/18 46/15 46/18 71/1
**turned** [3] 43/8 46/8 63/10
**turning** [4] 43/6 46/16 47/4
65/9
**Twelve** [2] 83/21 84/21
**two** [25] 7/2 8/25 12/3 13/7
19/13 20/1 51/4 56/21 61/9
62/12 62/12 64/2 65/7 65/7
75/3 75/12 77/12 78/8 81/7
87/1 87/6 89/15 96/11 99/11
101/3
**two-sentence** [1] 7/2
**Twombly** [1] 69/14
**type** [9] 19/6 29/5 30/13
31/3 69/15 69/17 69/20 92/15
95/22
**types** [1] 87/3

# U

**U.S** [4] 10/15 20/12 27/2
75/14
**ultimate** [2] 43/11 78/16

**ultimately** [2] 37/20 43/20
**Um** [1] 12/25
**Um-hum** [1] 12/25
**unclear** [3] 65/13 66/3 66/4
**unconnected** [1] 21/18
**under** [53] 8/2 8/23 9/4 9/8
12/21 12/24 15/12 16/23
18/13 18/14 19/25 21/12 23/9
25/5 25/7 33/2 37/1 37/2
37/25 40/3 46/12 49/11 52/7
57/11 62/20 62/23 65/15
65/16 68/10 70/24 71/7 71/9
71/12 71/25 72/1 72/3 72/10
72/23 73/22 74/11 76/24
77/22 79/5 79/19 80/8 80/17
81/5 81/11 82/1 82/9 82/10
82/15 84/3
**underlying** [5] 10/18 50/20
51/11 59/13 80/24
**understand** [14] 13/22 16/9
23/5 27/7 45/15 59/7 63/25
86/16 89/2 90/13 95/15 95/23
97/8 100/13
**understanding** [4] 26/20
31/18 65/20 94/20
**understood** [1] 58/17
**unduly** [3] 9/11 64/15 64/20
**unequivocal** [1] 33/12
**unfair** [2] 78/3 78/18
**Unfortunately** [1] 27/1
**UNITED** [5] 1/1 1/10 2/2 12/5
105/4
**universe** [3] 36/17 36/22
47/3
**unjust** [1] 78/12
**unknown** [1] 83/3
**unlawful** [7] 11/18 15/12
55/16 56/24 57/2 57/14 60/13
**unless** [5] 9/9 33/18 59/15
64/19 69/21
**unpublished** [2] 24/9 66/22
**unrelated** [1] 79/4
**unreported** [2] 53/8 54/16
**untenable** [1] 57/23
**until** [21] 11/11 16/17 16/18
17/20 30/9 33/18 33/24 56/2
57/4 57/8 58/3 58/14 59/5
85/11 86/23 92/25 93/3 93/5
93/14 94/17 99/8
**untimely** [2] 76/2 81/1
**unusual** [3] 70/1 92/11 92/13
**up** [19] 17/13 22/3 22/3
22/11 30/18 48/15 67/1 88/21
88/23 89/16 90/21 90/23
91/24 92/4 93/4 93/8 97/22
98/5 98/15
**upheld** [1] 59/14
**upon** [8] 26/10 40/15 56/25
62/10 63/23 75/18 79/8 105/7
**urgency** [1] 90/10
**us** [11] 22/13 25/25 34/2
34/4 46/11 47/12 89/12 90/7
90/9 101/15 102/2
**use** [6] 7/19 18/21 27/13
45/24 79/1 86/16
**used** [8] 7/4 56/22 56/22
57/3 57/16 59/3 60/1 60/5
**using** [2] 57/19 78/18
**usually** [2] 104/3 104/8

# V

**vacate** [2] 9/17 87/11
**vacated** [6] 8/9 8/22 9/23
11/12 59/16 86/8
**validity** [5] 13/14 56/9
56/19 59/6 101/6
**Van** [4] 24/3 25/1 25/3 25/14
**various** [5] 51/16 81/18 82/1
84/24 84/24

**V**

**vary [3]** 89/19
 91/9, 91/19
**verdict [1]** 52/24
**Vernon [1]** 72/10
**version [3]** 40/9 45/22 45/24
**versus [33]** 3/3 18/14 20/7
 20/11 24/3 26/8 28/25 36/13
 37/14 48/25 51/18 66/23 67/8
 71/9 72/3 72/10 72/25 73/17
 74/8 74/15 75/1 75/14 76/7
 76/24 77/1 77/22 79/19 81/5
 81/14 82/6 84/4 84/7 105/8
**very [20]** 5/9 9/6 13/20
 13/21 17/15 27/4 42/23 50/14
 51/3 51/10 53/4 57/1 64/21
 67/16 72/24 92/8 92/21 92/21
 97/9 104/21
**vested [1]** 21/12
**vet [2]** 95/15 103/15
**via [1]** 61/1
**viable [5]** 9/16 44/23 45/23
 83/17 83/22
**victim [2]** 34/20 60/6
**view [3]** 19/5 73/18 87/6
**viewed [1]** 19/25
**views [2]** 19/18 101/5
**vigorously [1]** 89/24
**VII [1]** 67/25
**violated [1]** 79/23
**violating [2]** 30/2 46/17
**violation [13]** 28/4 28/14
 28/19 29/10 29/13 29/20
 29/23 29/25 31/4 36/12 36/12
 45/11 69/17
**violations [4]** 30/21 53/24
 54/2 54/17
**Virginia [1]** 67/8
**volume [1]** 70/15
**Vucci [3]** 3/18 3/22 3/25

**W**

**wait [5]** 11/11 93/5 93/14
 94/17 98/21
**waived [1]** 84/2
**waiver [2]** 47/13 84/1
**waives [1]** 33/22
**walked [1]** 17/13
**Wallace [8]** 11/19 12/21
 13/12 14/16 15/13 75/14
 75/15 75/23
**want [34]** 5/7 5/16 5/17 15/8
 27/22 35/1 35/11 47/10 47/13
 50/6 59/24 71/4 86/3 86/4
 86/21 87/13 89/3 90/16 90/22
 91/14 92/6 92/10 93/8 93/22
 93/25 94/22 94/25 97/23 98/4
 98/7 102/3 102/7 103/21
 104/1
**wanted [10]** 18/3 32/9 33/6
 50/5 85/4 95/15 95/21 96/6
 98/15 98/16
**wants [2]** 85/13 98/1
**was [193]**
**washed [1]** 46/9
**Washington [1]** 24/3
**wasn't [5]** 9/16 31/4 38/17
 98/14 99/19
**Waters [1]** 79/19
**Watson [2]** 4/5 52/1
**way [20]** 9/17 10/21 12/11
 16/11 26/3 35/21 54/18 57/8
 88/3 89/7 89/18 89/20 90/20
 91/15 94/14 94/19 94/21 96/6
 101/18 104/3
**ways [2]** 48/16 92/17
**we [166]**
**we'll [5]** 5/3 5/5 93/17
 101/5 102/12
**we're [19]** 3/4 4/15 15/24

27/3 32/8 35/24 38/19 38/19
 50/24 54/8 55/24 58/18 88/6
 91/22
**we've [10]** 46/9 53/7 71/20
 74/18 86/13 86/17 89/14
 90/11 96/7 101/5
**weighs [1]** 73/15
**weight [1]** 20/21
**weighting [1]** 73/23
**well [44]** 5/19 8/4 8/19
 11/15 11/21 12/14 16/12 17/2
 22/12 22/21 23/8 24/2 25/18
 27/10 29/14 33/5 35/5 37/2
 38/24 39/16 42/23 44/14 45/8
 46/2 46/4 50/4 51/6 52/23
 54/9 56/21 59/21 61/4 65/6
 66/18 67/6 82/15 86/5 86/6
 86/10 86/14 91/7 91/11 92/7
 97/20
**well-established [1]** 37/2
**went [2]** 8/17 69/25
**were [46]** 6/18 9/7 12/22
 17/7 17/19 17/20 19/25 28/22
 31/1 31/2 31/3 35/13 35/19
 37/9 40/25 45/7 46/5 46/7
 46/17 49/10 51/20 52/18 53/8
 53/22 53/23 54/7 54/10 54/17
 56/23 57/10 58/3 61/10 62/16
 64/5 70/15 78/8 78/16 80/20
 83/14 87/21 90/9 91/25 95/7
 95/16 99/13 99/15
**weren't [2]** 46/16 51/22
**West [1]** 67/8
**Westlaw [4]** 24/7 74/16 81/16
 82/6
**what [110]**
**what's [4]** 58/16 75/18 90/23
 93/21
**whatever [5]** 12/24 27/1 74/9
 78/21 103/18
**whathaveyou [1]** 88/20
**whatsoever [2]** 40/12 43/4
**when [34]** 3/24 5/12 8/12
 9/25 22/3 22/14 28/8 31/19
 34/21 36/2 36/16 39/8 50/11
 50/16 50/17 55/8 55/24 55/25
 56/24 61/3 68/3 77/2 77/23
 82/11 89/7 91/3 95/8 95/11
 95/12 98/18 98/21 99/13
 100/4 100/4
**where [38]** 9/3 9/18 10/21
 23/13 23/25 24/24 26/24
 27/12 36/22 38/3 41/13 41/15
 45/5 45/17 49/14 51/4 54/17
 56/1 56/7 56/8 62/6 64/8
 65/13 66/25 67/4 70/3 73/12
 79/17 81/20 83/9 84/6 86/17
 92/21 96/18 99/13 101/21
 102/4 103/4
**wherein [1]** 18/16
**whereof [1]** 105/15
**whether [40]** 9/24 25/21
 25/21 36/4 36/5 36/19 36/20
 43/20 47/21 48/25 50/9 55/11
 59/8 59/11 61/23 61/25 62/1
 62/25 65/14 67/11 71/22 72/5
 72/8 72/12 72/14 78/15 78/21
 81/8 82/2 84/5 85/7 88/21
 89/12 90/24 90/25 91/12
 96/13 101/25 103/13 103/14
**which [86]** 6/16 6/24 7/8
 9/10 9/12 11/11 11/14 11/17
 11/17 12/21 12/21 13/2 13/4
 14/3 16/12 20/5 20/7 20/23
 21/2 21/18 22/10 24/3 24/19
 26/8 26/9 26/23 28/5 28/12
 28/13 28/22 29/19 30/4 30/5
 31/1 31/22 31/24 32/6 32/24

33/22 34/9 34/10 37/25 38/1
 38/11 40/20 41/3 41/16 47/3
 48/19 49/20 51/19 54/20 55/15
 60/20 65/18 65/20 66/5 66/6
 66/7 66/9 69/19 70/21 70/25
 73/9 75/10 76/12 76/13 76/14
 76/25 80/2 80/16 81/5 81/19
 82/1 82/19 84/4 87/5 90/20
 94/17 96/7 99/6 102/1 102/4
 103/2 103/8 104/7
**whichever [1]** 89/11
**while [3]** 56/12 56/13 80/22
**Whitley [1]** 36/13
**who [43]** 3/17 5/19 6/3 6/13
 7/25 9/18 9/21 11/1 14/18
 14/20 16/5 16/25 27/12 29/16
 34/19 34/20 37/22 39/25
 41/19 42/2 42/9 43/5 45/7
 45/12 47/5 54/12 57/25 58/23
 60/15 61/17 61/24 64/9 64/14
 79/21 84/15 87/16 87/23
 87/25 97/23 97/24 97/25
 101/13 102/18
**who's [1]** 97/11
**whoever [2]** 9/25 85/12
**whole [6]** 15/16 23/20 77/17
 88/17 90/11 96/21
**wholesale [1]** 43/3
**whom [2]** 16/24 17/9
**why [32]** 4/25 11/10 15/4
 15/10 21/19 22/11 22/14
 22/16 22/19 27/7 27/16 34/16
 36/8 36/9 37/4 37/5 40/25
 43/1 47/7 50/13 56/16 63/5
 68/3 86/22 89/4 90/8 90/10
 95/20 96/19 96/21 97/4 98/14
**wider [1]** 83/1
**widespread [8]** 31/10 31/15
 31/19 31/22 52/11 52/15 82/3
 82/10
**width [1]** 93/24
**will [37]** 17/25 29/19 40/6
 55/13 70/18 70/20 70/23
 71/18 71/20 71/24 72/1 72/19
 74/22 76/3 79/8 80/3 81/13
 82/17 83/18 84/21 84/23 86/1
 86/3 87/7 89/25 90/22 92/20
 94/1 96/8 97/20 102/8 102/9
 102/21 102/21 103/4 103/23
 104/9
**Williams [1]** 20/7
**willing [2]** 25/12 103/23
**wise [1]** 100/11
**withheld [24]** 7/25 7/25 8/3
 17/8 17/8 17/16 34/22 36/4
 36/5 36/19 37/1 37/12 37/23
 59/1 60/4 61/18 62/1 63/5
 63/11 77/6 77/21 78/12 79/16
 79/21
**withholding [13]** 8/21 9/19
 37/17 52/15 53/16 54/1 54/19
 62/18 77/18 78/16 81/21 82/4
 87/16
**within [3]** 33/20 80/12 83/3
**without [14]** 5/1 29/2 36/25
 60/13 72/19 75/8 78/5 79/25
 83/3 84/13 89/16 96/3 99/23
 102/9
**witness [3]** 7/5 69/17 105/15
**witnesses [6]** 7/5 11/1 30/18
 42/1 60/3 96/4
**WL [1]** 24/16
**WL-3340656 [1]** 24/16
**wondering [1]** 19/3
**Woods [1]** 74/8
**word [1]** 67/24
**words [1]** 52/18
**work [2]** 27/12 103/23
**works [1]** 104/3

**W**

world **[2]** 7/23 7/24
worth **[1]** 102/11
would **[101]** 5/11 5/13 5/13
5/19 8/23 8/24 9/20 9/21
11/17 13/1 13/14 14/3 15/1
15/1 17/4 17/6 17/13 21/13
21/24 25/10 25/12 28/18
29/22 30/10 30/16 32/16 36/9
36/10 38/1 40/6 42/17 42/18
42/19 46/11 47/13 49/13
51/17 54/20 55/13 56/8 57/1
57/2 57/2 57/6 57/15 59/14
60/13 60/14 60/17 60/17
60/19 62/4 62/11 64/6 64/22
64/23 67/7 69/12 69/21 70/1
72/9 73/4 74/7 75/11 76/16
78/14 82/1 84/20 84/25 85/5
85/9 85/16 86/22 88/25 89/12
89/20 90/1 90/3 91/12 92/5
92/7 92/8 92/23 93/2 93/9
93/20 93/22 94/3 94/4 94/6
94/17 94/22 95/22 100/15
100/16 101/18 101/20 102/12
103/5 103/17 104/10
wouldn't **[6]** 8/21 15/10
15/11 87/19 89/5 95/25
writ **[25]** 7/1 7/21 17/10
35/25 37/10 37/11 38/2 38/15
39/14 39/18 39/20 39/24
40/16 40/16 40/25 43/1 43/3
62/11 62/13 62/21 70/19
77/19 86/10 98/24 99/10
writing **[2]** 39/3 80/10
written **[4]** 62/15 75/18 90/9
96/3
wrong **[4]** 17/17 46/5 46/7
62/1
wronged **[1]** 84/15
wrongful **[2]** 77/5 80/15
wrongfully **[1]** 34/24
wrote **[3]** 62/7 87/19 90/7

**Y**

yeah **[2]** 87/13 99/24
year **[9]** 14/20 19/5 34/19
58/24 64/7 80/12 80/21 94/11
99/7
years **[12]** 6/17 21/19 22/3
31/2 31/2 34/25 63/18 74/20
96/25 97/5 98/16 98/19
yes **[19]** 7/14 14/1 18/23
25/2 26/22 31/18 32/23 35/23
41/12 55/17 59/25 61/12
66/11 85/18 88/14 95/2 97/6
98/13 100/24
yet **[6]** 16/16 51/9 51/13
60/23 81/17 84/17
yield **[1]** 17/25
York **[2]** 14/10 14/12
you **[151]**
you'd **[2]** 61/4 97/8
you'll **[1]** 97/7
you're **[15]** 5/25 11/21 21/17
34/2 36/2 45/2 58/5 59/10
59/12 59/19 66/2 89/6 96/1
96/5 97/15
you've **[5]** 19/4 50/11 54/19
86/21 103/14
your **[114]**
yourself **[1]** 3/5

**Z**

zinkand **[2]** 77/22 78/5