IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GARY WASHINGTON,<br><br>  Plaintiff<br><br>  v.<br><br>BALTIMORE POLICE DEPARTMENT, *et al.*,<br><br>  Defendants | Case No. 1:19-cv-02473-GLR<br><br>Judge Stephanie Gallagher<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S SURREPLY IN OPPOSITION
TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW Comes Plaintiff, Gary Washington, and submits the below surreply:

**Introduction**

In their reply brief, the Defendants have made two new arguments in support of their motion for summary judgment: that the prosecutor broke the causal chain for Plaintiff's malicious prosecution claims when he interviewed Otis Robinson prior to Mr. Robinson's testimony before the grand jury; and that the Writ of Actual Innocence ("WAI") ruling did not address, let alone vacate, any finding made by the Post-Conviction ("PC") court about Mr. Robinson's allegations of coercion and fabrication. Both arguments rely on a misrepresentation of the operative facts and attendant law. For that reason, and those described below, neither of the Defendants' new arguments should be credited.

**Argument**

**I.   The Prosecutor Cannot Break the Causal Chain**

For the first time in their surreply, the Defendants argued that the Assistant State's Attorney's ("ASA") opportunity to interview Otis Robinson prior to the grand jury broke the

causal chain, dooming Plaintiffs' malicious prosecution claim. *See* Doc. 179 (Defs. Reply) at 13. The Defendants attempt to analogize this case to *Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012), but both the analogy and the argument fail.

In *Chalmers*, the Fourth Circuit explained that even where a prosecutor retains discretion to seek an indictment, police officers may be liable "when they have lied to or misled the prosecutor," "failed to disclose exculpatory evidence to the prosecutor" or "unduly pressured the prosecutor to seek the indictment." *Id*. at 647-48. *Chalmers* found that in that case, none of those circumstances were met because the plaintiffs "expressly allege that, from the outset, the officers candidly briefed [the prosecutor] as to the startling weaknesses in the case . . . ." *Id*. at 648.

This case stands in stark contrast: None of the Defendants admitted to any of the misconduct that Plaintiff has alleged in this case—fabricating Otis Robinson's and Rozetta Dorsey's statements, and withholding the circumstances under which they were fabricated. Doc. 166-27 (Finch Dep.) at 169-70, 175; Doc. 166 (Pl. Resp. Brief) at 7, 23-24. As such, far from a "candid[] brief[ing]," the Defendants here "misled" and "failed to disclose exculpatory evidence" to the prosecutor. *Chalmers*, 703 F.3d at 647-48.

For that reason, the Defendants cannot hide behind the ASA's opportunity to interview Otis Robinson. The only way Defendants could have broken the causal chain here was if they disclosed their misconduct to the ASA, which they did not do. *See Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001) ("If *officers* are not candid with prosecutors, then the prosecutor's decisions—although vital to the causal chain in a but-for sense—are not the important locus of action.") (emphasis added); *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988) ("[T]he jury could find that the defendants systematically concealed from the prosecutors, and misrepresented to them, facts highly material—that is, facts likely to influence the decision

whether to prosecute Jones and whether . . . to continue prosecuting him . . . ."). Indeed, the Defendants failed to disclose to the ASA how they coerced and "coached" Mr. Robinson into giving a fabricated statement inculpating Plaintiff's in the crime. *See Newsome*, 256 F.3d at 752; *Jones*, 856 F.2d at 993. Moreover, given that misconduct, it was foreseeable that Mr. Robinson would continue to repeat his false statement at the grand jury—a consequence that Mr. Robinson himself confirmed at his deposition, explaining that he was not ready to come forward until he spoke with his father and had his father's support. Doc. 166-9 (Robinson PC 1999 Test.) at GW000042-43.

## II.   Collateral Estoppel Does Not Apply

In their opening brief, in a relatively perfunctory argument that spanned all of two paragraphs, the Defendants alleged that Plaintiff was collaterally estopped from pursuing his claim that Otis Robinson's statement was fabricated by the Defendants based on a 1999 ruling in Plaintiff's post-conviction case. On reply, the Defendants' have not only misrepresented the facts in the state court proceedings below, but also (improperly) raised a new argument in defense of their claim that estoppel should apply.

It is undisputed that in 2018, the state court granted Plaintiff's Writ of Actual Innocence ("WAI") based largely on Mr. Robinson's testimony. Doc. 166-3 (WAI Ruling) at 5-6. That testimony included allegations that Mr. Robinson had been coerced by the Defendants—he described the Defendants as being "loud," threatening to charge him "with first degree murder if [he] didn't cooperate with him," and told he "would be taken away from [his] mother." Doc. 166-13 (Robinson WAI 2017 Test.) at GW001328; *see also id*. at GW001329-1332. It also included testimony by Mr. Robinson that he was "coach[ed]" by the police in what to say. *Id*. at GW001333:1-2 ("So now he basically coaching me from what I said and filling in."). The WAI

Court not only found Mr. Robinson's 2017 testimony credible, but also found compelling the fact that Mr. Robinson had "recanted his trial testimony on at least three occasions – when he was approximately 18 to 20 years old, in a statement to an investigator, when he was 24 years old, while under oath at Petitioner's post conviction [*sic*] hearing, and finally, when he was 42 years old, while under oath at Petitioner's actual innocence hearing." Doc. 166-3 (WAI Ruling) at 5. The WAI Court "grant[ed] relief based on the Robinson recantations . . . ." *Id*. at 6.

Given the foregoing, the Defendants' new argument on reply that the PC Ruling was not vacated and/or that the WAI Court did not address, let alone overturn the PC Court's findings, is meritless. Perhaps for that reason, the Defendants cite no legal authority to support such a claim.[1] The WAI Court expressly found "the Robinson *recantations*" credible and worthy of relief, including the 1999 recantation testimony on which the PC Court's ruling was based. Doc. 166-3 (WAI Ruling) at 6. It is axiomatic that where two rulings are in conflict, the later ruling governs. *See Hudgens v. NLRB*, 424 U.S. 507, 517-18 (1976) (later decision establishes legal rule); *see also* Restatement (2d) of Judgments § 15 (1982) ("When in two actions inconsistent final judgments are rendered, it is the later, not the earlier, judgment that is accorded conclusive effect

---

[1] The only citation the Defendants provide is, curiously, to the WAI ruling, which states exactly the opposite and found that Mr. Robinson's multiple recantations created a "substantial possibility of a different result" at Mr. Washington's criminal trial. *See* Doc. 179 (Defs. Reply) at 27; Doc. 166-3 (WAI Ruling) at 5-6. Nor are the generalized citations to *Douglas v. State*, 423 Md. 156 (2011) and *McGhie v. State*, 449 Md. 494 (2016) relevant on this point. *Douglas* concerned whether a WAI petitioner had the right to appeal and if so, whether the trial court's denial of petitioner's WAI because the affidavit of his grandmother was not "newly discovered" was in error. *Id*. at 164-65, 187-88. For its part, *McGhie* simply explains that the court should look back at the evidence at trial to see whether the newly discovered evidence would create the substantial possibility of a different result. *McGhie*, 449 Md. At 511. The WAI Court did just that—comparing "Robinson's recantations" with the evidence presented at trial in granting relief. Doc. 166-3 (WAI Ruling) at 5-6.

in a third action under the rules of *res judicata*."). In other words, the only ruling that could have estoppel effect is the one issued by the WAI Court. *Id*.

Indeed, that makes sense. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given to that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). As such, "the preclusive effect of a state court judgment in a federal case is a matter of state rather than federal law." *Brokaw v. Weaver* 305 F.3d 660, 669 (7th Cir. 2002); *see also Passaro v. Virginia*, 935 F.3d 243, 249 (4th Cir. 2019). Here, the PC Court's ruling did not have preclusive effect in the WAI proceeding; indeed, the WAI Court considered the 1999 Robinson recantation testimony and reached the very opposite conclusion the PC Court did. Doc. 166-3 (WAI Ruling) at 5-6; Doc. 161-29 (PC Ruling) at GW SAO Subpoena 000889-90.[2] If the PC Court Ruling did not have preclusive effect in a state court proceeding, then it cannot have preclusive effect in a federal proceeding; federal proceedings merely apply the laws of the state. *See*, *e.g.*, *Migra*, 465 U.S. at 81; *Jeffers v. Lyons*, 605 Fed. App'x 198, 199 (4th Cir. 2015) ("Because Jeffers' criminal judgment would have no preclusive effect in a subsequent civil matter in a Virginia court, it can have no such effect in federal court.").

## Conclusion

For all of the reasons stated above, this Court should grant Plaintiff leave to file this surreply and reject the new arguments the Defendants raised in their reply brief.

---

[2] For that reason, the Defendants' repeated statement that the WAI Court did not address the State's collateral estoppel argument misses the mark. The WAI Court did not need to address it because it found that estoppel did not apply and ruled accordingly on the "Robinson recantations . . . ." Doc. 166-3 (WAI Ruling) at 6.

Respectfully submitted,

**GARY WASHINGTON**

By: /s/ Gayle Horn
One of Plaintiff's Attorneys

Attorneys for Plaintiff
Jon Loevy*
Gayle Horn
Roshna Bala Keen*
Renee Spence*
LOEVY & LOEVY
311 N. Aberdeen St., Third Floor
Chicago, IL 60607
(312) 243-5900
roshna@loevy.com
*Admitted pro hac vice

## CERTIFICATE OF SERVICE

I, Gayle Horn, an attorney, hereby certify that I filed the foregoing document via the Court's CM/ECF system on February 3, 2023, and thereby served a copy on all counsel of record.

/s/ Gayle Horn
One of Plaintiff's Attorneys